**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ELLIOT MCGUCKEN,                                    Civil Action No.: 1:22-cv-00905-GHW

Plaintiff,

v.

SHUTTERSTOCK, INC., et al.,

Defendants.

**MOTION TO COMPEL DEFENDANT, SHUTTERSTOCK, INC., TO PRODUCE**
**DISCOVERY RESPONSES AND EVIDENCE**

## <u>TABLE OF CONTENTS</u>

I.  Introduction and Procedural History.........................................................................1

II.  Argument .................................................................................................................1

A.  Evidence and information relating to Shutterstock's Section 512 or DMCA defense ........3

B.  Evidence relating to damages, willfulness, and electronically stored information.............6

1.  Damages..................................................................................................................6

2.  Willfulness and ESI ...............................................................................................10

C.  The Shutterstock / Hane Street action in Minnesota..........................................................11

III.  Conlucsion ...........................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

Cases

*Bryant v. Media Right*,
  603 F.3d 135 (2d Cir. 2010) .......................................................................... 10

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
  69 F. Supp. 3d 342 (S.D.N.Y. 2014) ............................................................... 3

*BWP Media USA Inc. v. Polyvore, Inc.*,
  922 F.3d 42 (2d Cir. 2019) ............................................................................... 6

*Capitol Records, Ltd. v. Vimeo, Ltd.*,
  826 F.3d 78 (2d Cir. 2016) ............................................................................... 2

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
  844 F.3d 79 (2d Cir. 2016) ............................................................................... 4

*Feingold v. RageOn, Inc.*,
  472 F. Supp. 3d 94 (S.D.N.Y. 2020) ........................................................... 2, 5

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*,
  807 F.2d 1110 (2d Cir. 1986) ..................................................................... 6, 12

*Gucci Am., Inc. v. Guess?, Inc.*,
  858 F.Supp.2d 250 (S.D.N.Y. 2012) ............................................................. 13

*Mango v. Buzzfeed, Inc.*,
  970 F.3d 167 (2d Cir. 2020) ........................................................................... 11

*Mavrix Photographs, LLC v. Livejournal, Inc.*,
  873 F.3d 1045 (9th Cir. 2017) ......................................................................... 6

*Michael Grecco Prods., Inc. v. Valuewalk, LLC*,
  345 F. Supp. 3d 482 (S.D.N.Y. 2018) ............................................................. 2

*Myeress v. BuzzFeed Inc.*,
  2019 WL 1004184 (S.D.N.Y. Mar. 1, 2019) ................................................... 5

*RBH Energy, LLC v. Partners in Church Consulting, LLC*,
  2016 WL 6496362 (N.D. Tex.May 6, 2016) ................................................. 11

*Sauer v. Exelon Generation Co., LLC*,
  2011 WL 3584780 (N.D.Ill.2011) ................................................................. 13

*Stevens v. Aeonian Press, Inc.*,
  2002 WL 31387224 (S.D.N.Y. Oct. 23, 2002)............................................... 13

*Stevens v. Corelogic, Inc.*,
  899 F.3d 666 (9th Cir. 2018) ......................................................................... 11

*Viacom Int'l v. YouTube, Inc.*,
  676 F.3d 19 (2d Cir.2012) ................................................................................ 2

Statutes

17 U.S.C. § 504 .................................................................................................... 6, 12
17 U.S.C. § 512 .......................................................................................... 3, 6, 12, 14
17 U.S.C. § 512(c) .................................................................................................. 2, 5
17 U.S.C. § 512(c)(1)(A) ............................................................................................ 5
17 U.S.C. § 512(c)(1)(A)-(C), (2) .............................................................................. 3

17 U.S.C. § 512(c)(1)(B) ................................................................................................ 7

17 U.S.C. § 512(i) ........................................................................................................... 3

Rules

Fed.R.Civ.P. 26(b)(1)..................................................................................................... 13

Fed.R.Civ.P. 30(b)(6)................................................................................................... 4, 5

PLAINTIFF'S MOTION TO COMPEL

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION

### I.     Introduction and Procedural History

Plaintiff, Elliot McGucken ("McGucken"), respectfully seeks an order compelling Shutterstock, Inc. ("Shutterstock") to comply with its discovery obligations. Despite a lengthy meet-and-confer, pre-motion submissions, a hearing before this Court, and a directive from this Court after that hearing that it "expects that Defendant's supplemental production will be substantially completed no later than July 21, 2022[,]" (Dkt. #36), Shutterstock still has not discharged its discovery obligations. Its production, the most recent of which took place on August 1, 2022, remains woefully deficient.[1] As a result, McGucken has been forced to file this motion to compel.

McGucken served timely initial discovery requests and Shutterstock served responses on June 7, 2022. (Declaration of Scott Alan Burroughs, ¶3, Exs. 1-2.) McGucken served his meet-and-confer correspondence on June 27, 2022 (Burroughs Decl. ¶4, Ex. 3.) and counsel for the parties had a teleconference for approximately one hour on July 1, 2022 regarding Shutterstock's deficiencies. (Burroughs Decl. ¶5, Ex. 4.) The parties attended the pre-motion conference on July 13, 2022, after which the Court issued the Order directing Shutterstock to complete its production no later than July 21, 2022 and directing McGucken to file his motion to compel no later than August 3, 2022. Shutterstock's supplemental production, which remains incomplete, was last supplemented after business hours on August 1, 2022.

### II.    Argument

McGucken's motion must be granted. Shutterstock admits that it failed to obtain McGucken's consent to exploit the photography at issue and admits that it displayed and offered

---

[1] Given Shutterstock's late disclosure, McGucken has had only two days to review the supplemental material and bring this Motion. As such, he respectfully requests the opportunity to supplement this Motion if necessary.

McGucken's photography for licensing to its clients, including commercial publications. Liability for copyright infringement is all but established, but Shutterstock claims its infringement should be excused because it is entitled to immunity under the Digital Millennium Copyright Act of 1998 ("DMCA"). This is certainly false and McGucken must be allowed access to the evidence necessary to establish as much.

The DMCA "gives qualifying Internet service providers protection from liability for copyright infringement when their users upload infringing material on the service provider's site and the service provider is unaware of the infringement." *Feingold v. RageOn, Inc.*, 472 F. Supp. 3d 94, 101 (S.D.N.Y. 2020), citing *Capitol Records, Ltd. v. Vimeo, Ltd.*, 826 F.3d 78, 81 (2d Cir. 2016), citing 17 U.S.C. § 512(c)). In effect, the DMCA provides a safe harbor to "insulate[ ] service providers from liability for infringements of which they are unaware, contained in material posted to their sites by users, so as to make it commercially feasible for them to provide valuable Internet services to the public." Id. (citation omitted).

The material sought herein is crucial to challenging Shutterstock's affirmative defense under the DMCA. Shutterstock asserts that it is a "internet service provider" despite the fact that its business is the licensing of commercial photography. Shutterstock asserts that its users uploaded the infringing material to its site despite the fact that Shutterstock approves every photograph for content and quality before offering it on its site for licensing purposes. Shutterstock asserts that it was unaware of the infringement at issue despite the fact that it had notice of the infringement for a substantial period of time before removing the photography at issue from its and its partners sites. The evidence sought addresses each of these points.

Moreover, in order to receive protection under the DMCA safe harbor, Shutterstock "must meet a set of threshold criteria." *Viacom Int'l v. YouTube, Inc.*, 676 F.3d 19, 27 (2d Cir.2012). To do so, Shutterstock "(1) must meet the statute's definition of service provider; (2) must have adopted and reasonably implemented a policy for the termination in appropriate circumstances of users who are repeat infringers; and (3) must accommodate standard technical measures used by copyright owners to identify or protect copyrighted works." *Michael Grecco*

*Prods., Inc. v. Valuewalk, LLC*, 345 F. Supp. 3d 482, 509 (S.D.N.Y. 2018)(Woods, J.), citing 17 U.S.C. §§ 512(i). The evidence sought will prove that Shutterstock cannot make this showing.

If all of the above "requirements are satisfied, then the safe harbor additionally requires showings as to the service provider's lack of knowledge of infringement, its receipt of no direct financial benefit from the infringing activity, its compliance with DMCA takedown requests, and the designation of an agent for such requests." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 358 (S.D.N.Y. 2014), citing 17 U.S.C. § 512(c)(1)(A)-(C), (2). McGucken alleges that Shutterstock had knowledge of the infringement, profited from the infringement, and failed to comply with takedown requests, at the very least. The evidence sought will establish as much. It is respectfully submitted that the following be ordered:

A.     **Evidence and information relating to Shutterstock's Section 512 or DMCA defense**

Shutterstock has refused to produce documents and ESI relevant to its affirmative defense that it is a passive service provider whose infringement is excused by the "safe harbor" set forth in 17 U.S.C. §512. In response to Interrogatory Nos. 5 and 8, Shutterstock refused to identify any policies or describe the relevant licenses and Section 512 evidence, even in their supplemental responses. In response to Request No. 24, Shutterstock refused to produce the documents reflecting: "policies, effective as of the date on which YOU published the SUBJECT PHOTOGRAPHY, which apply to YOUR use of the copyrighted material of third parties, including photographs like the SUBJECT PHOTOGRAPHY, on shutterstock.com.'" And in response to Request Nos. 46 and 47, Shutterstock refused to produce evidence relating to its guidelines for responses to Section 512 infringement notices or the notices that it received regarding "Hane Street," the party that provided the infringing photography in both this case and the Minnesota Action (discussed below). This goes directly to the viability of its Section 512 defense, which required Shutterstock to delete the infringing material and, if other factors are

met, to remove Hane Street's access to its Shutterstock account. *EMI Christian Music Grp., Inc.*

*v. MP3tunes, LLC*, 844 F.3d 79, 88 (2d Cir. 2016)(for defense to apply, site must terminate

"repeat infringers."), citing17 U.S.C. § 512(i)(1)(A).

During the parties' teleconference, McGucken requested all policies relevant to the

photography at issue, such as <u>reviewer guidelines</u>, documents reflecting Shutterstock's approval

process for the initial upload of an image from a contributor, and any guidelines for Shutterstock

employees for removing images under DMCA claims. Shutterstock's Fed.R.Civ.P. 30(b)(6)

witness in another action against Shutterstock, *Steinmetz v. Shutterstock*, 1:21-cv-07100-AKH,

confirmed that internal review guidelines exist and those guidelines are referenced when

Shutterstock is deciding whether to approve a photograph for display on the site.[2]

Despite repeated request, and the existence of the policies and guidelines, they and other

relevant material have not been produced. This is wholly improper, especially because

Shutterstock's own website indicates that "all content is reviewed with consideration of the

following:

• Technical execution -- this includes factors like lighting, focus, and noise for

photo and video. For illustrations factors such as gradient and blend rendering, as well as path

construction are evaluated.

• **Metadata -- titles and keywords are reviewed for accuracy and relevance, as**

**well as compliance restrictions**.

• **Intellectual property** -- content is evaluated for potential trademark or

intellectual property violations, **as well as possible copyright infringements**.

---

[2] The transcript for this deposition is under review by the deponent and can be submitted to the court upon completion.

•      Releases - all content is evaluated for any necessary property or model release requirements and each release is reviewed for adherence to our release requirements.

•      **Policy** - submissions are monitored for **adherence to Shutterstock content policies**, like similar content and spamming." (emphasis added.) See https://support.submit.shutterstock.com/s/article/How-is-content-reviewed?language=en_US, last visited July 8, 2022.

Shutterstock further notes that its "reviewers are also thoroughly trained on Shutterstock technical and metadata standards as well as compliance policies." Id. These policies are highly relevant to Shutterstock's alleged safe harbor defense and McGucken's claims for willful infringement and must thus be produced.

Shutterstock's DMCA defense is also likely to fail because it did not remove the infringing material in an expeditious fashion. See *Feingold v. RageOn, Inc*., 472 F. Supp. 3d 94, 102 (S.D.N.Y. 2020)(holding that 18 and 23 days between notice and removal "cannot be considered expeditious."). The evidence sought will establish when, how, and per what guidelines Shutterstock removed, at least in part, McGucken's photography from its site and its partner sites.

Moreover, under 512(c)(1)(A), Shutterstock must demonstrate that it did not have "actual knowledge that the material" was infringing and that it was "not aware of facts from which infringing activity is apparent." *Myeress v. BuzzFeed Inc.*, No. 18-CV-2365 (VSB), 2019 WL 1004184, at *3 (S.D.N.Y. Mar. 1, 2019), citing 17 U.S.C. § 512(c)(1)(A). The evidence sought will establish when Shutterstock obtained knowledge that the material was infringing and what facts made it aware that it was committing copyright infringement on a massive scale.

Finally, the § 512(c) safe harbor is only available when the infringement occurs "by reason of the storage *at the direction of a user* of material that resides on a system or network

controlled or operated by or for the service provider." *BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42, 57–58 (2d Cir. 2019)(emphasis added by court, citation omitted). Here, the evidence sought will show that it was Shutterstock and not its users that reviewed, approved, and stored the infringing material on this platform, distributed that infringing material to third parties, and made it available after receiving notice of the infringement. Defendants must produce the evidence in dispute.

Request No. 63 seeks evidence relating to Shutterstock's ability to "supervise and control" the use of the photographs it licenses through its site. Request No. 35 seeks evidence of Shutterstock's selection, approval, modification, and editing of the photography at issue, which would defeat its Section 512 defense, which, as indicated above, requires Shutterstock to have no involvement in the selecting, supervising, approving, modifying, or editing of the photographs. *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1056 (9th Cir. 2017)(defense available only "if the service provider played no role in making that infringing material accessible on its site" or "carried out activities that were "narrowly directed" towards enhancing the accessibility of the posts."). All responsive material must be produced.

**B.      Evidence relating to damages, willfulness, and electronically stored information ("ESI")**

**1.      Damages**

McGucken has the right to recover statutory damages under 17 U.S.C. § 504. In setting the amount of those damages, juries consider, among other things, the financial benefit to the infringer, whether the infringer cooperated in providing records to assess the value of the material infringed and the likelihood the award will discourage the defendant from repeating its infringement. See *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986).

Shutterstock has failed to produce all responsive documents concerning any of these factors. First, it has refused to produce its agreements with third parties, including commercial partners, concerning McGucken's proprietary artwork. Request No. 28 seeks any agreements with third party websites publishing or linking the images at issue. This information is relevant as to scope of use and potentially identifying additional infringers. Shutterstock responded that "Shutterstock will produce a general report indicating the types of uses permissible under the licenses granted as to the photographs in suit." This is non-responsive. During the parties' meet-and-confer, Shutterstock indicated that its employees are generally unaware of when licenses are issued due to the alleged automated nature of its processes. Shutterstock maintained that producing a general report is sufficient. Shutterstock is incorrect, and the "general report" produced by Shutterstock is deficient.

For example, McGucken has produced evidence that his photography was licensed through Shutterstock through Shutterstock's partners, including TinEye and StockFresh. And his photography remains available through TinEye as of August 1, 2022. (Burroughs Decl. ¶6, Ex. 5.) The TinEye results for example, clearly state that they are "sponsored by" Shutterstock. Id. And they remain online as of August 1, 2022. Id.

Yet, to date, Shutterstock has failed to produce any agreements with TinEye or its myriad other partners. Moreover, the report produced by Shutterstock contains no mention of TinEye or StockFresh. This information is relevant to Shutterstock's alleged safe harbor protection defense.

These agreements are also germane to Shutterstock's DMCA defense. To avoid liability by asserting safe harbor protection, Shutterstock must prove that, if it had the right and ability to control the infringing activity, it did not receive a "financial benefit directly attributable to the infringing activity." 17 U.S.C. § 512(c)(1)(B). Shutterstock's contracts and its business relationships with third parties are relevant because McGucken asserts Shutterstock's contractual

agreements were used to facilitate the infringement, Shutterstock financially benefited from that infringement, and Shutterstock had the ability to stop the infringement pursuant to its improper licenses with third parties. Such agreements should be produced immediately.

Additionally, Shutterstock has failed to produce the licenses that it sold to its clients related to McGucken's photography. Shutterstock must produce copies of every one of the licenses that it granted allowing for third parties to exploit McGucken's proprietary photography. Request No. 65 seeks "[a]ll DOCUMENTs that refer to or reflect the SUBJECT PHOTOGRAPHY" but no such licenses have been produced. During the parties meet-and-confer, Shutterstock objected to this request as overbroad and duplicative of other demands but indicated that it would produce documents based on its interpretation of this request. However, Shutterstock's licenses pertaining to all of McGucken's photography remain outstanding.

Request No. 54 also seeks "DOCUMENTs reflecting or referring any licenses that YOU entered into for any of the SUBJECT PHOTOGRAPHY." This Request was not addressed during the meet-and-confer because Shutterstock agreed that it would "produce non-privileged documents found after a reasonable search pertaining to the licenses issued by the contributors via the Shutterstock platform for the images at issue." In light of this response, there was no need to meet and confer regarding this request. Yet, Shutterstock has failed to abide by its response and has failed to produce any of the licenses. Shutterstock's failure to produce the McGucken photography licenses fails to meet the obligations under Request Nos. 54 and 65.

Finally, all analytics information must be produced. Indeed, this information is relevant to scope and damages. McGucken's Request for Production No. 60 is straightforward and seeks evidence relating to Shutterstock's "Segment tracking system's tracking of the SUBJECT PHOTOGRAPHY and viewers thereof." Shutterstock refused to produce the material despite being ordered to do so in the Minnesota action. (Burroughs Decl. ¶ 7, Ex. 6.) Similarly,

McGucken's Request for Production Nos. 52 and 53 seek "DOCUMENTs reflecting the Google Analytics information for the URLs identified in PLAINTIFF'S First Amended Complaint" and "DOCUMENTs reflecting the Google Analytics information for all of YOUR URLs containing the SUBJECT PHOTOGRAPHY". This information is crucial to establishing which Shutterstock account holders accessed, licensed, and exploited the McGucken photography and at what times, including dates after Shutterstock had notice of McGucken's claims, which goes to willfulness.

The requested material must include information for the web pages at issue, along with the mobile versions of those pages, information for Shutterstock Editor, and information for Shutterstock's API partners. The requested material must also address the entire time frame at issue. Shutterstock has failed to produce sufficient information reflecting the analytics for the relevant time period and for all relevant uses.

Finally, Shutterstock has failed to produce the licenses and invoices that it improperly granted to third parties that allowed those third parties to use McGucken's photograph in books and other products and on websites. And it has failed to produce its communications with these parties. These documents are crucial to establishing damages as they include the amounts paid to Shutterstock and are crucial to establishing willfulness, as they likely include false statements as to Shutterstock's rights. Despite agreeing to produce the documents in its responses, it has made no production, essentially representing that no licenses or invoices exist. **This is demonstrably false.** These documents are known to exist because we have obtained a small number of them the licensees themselves, each of which was improperly charged by Shutterstock to use one of McGucken's photographs.  (Burroughs Decl. ¶9, Exs. 9 and 10.) In addition, Shutterstock has failed to abide by its agreement in Response to Request No. 56 to produce all responsive documents "reflecting or referring to YOUR communications with any parties to whom YOU licensed any of the SUBJECT PHOTOGRAPHY." This was not part of the meet and confer

because Shutterstock agreed to produce these communications. They failed to produce anything in this regard, representing that no such documents exist. But this is also **demonstrably false**. As previously noted, McGucken has obtained from these licensees responsive communications that indicate that Shutterstock is misrepresenting to these licensees that the licenses are valid. See id. Shutterstock must be ordered to produce all invoices, licenses and communications with these licensees, including any communications that advised the licensees of this dispute or the issues with the fraudulent licenses.

### 2. Willfulness and ESI

McGucken will establish that Shutterstock's infringement was willful. An infringement is "willful" when the infringer (i) knew its conduct was infringing, or (ii) engaged in infringing conduct as result of reckless disregard or willful blindness to the prospect that its conduct was infringing. *Bryant v. Media Right Prods*., 603 F.3d 135, 143 (2d Cir. 2010). McGucken seeks evidence in regard to each of these factors.

First, he has sought evidence relating to the digital photography files that Shutterstock obtained from its contributor, uploaded to its site, and offered for license to its customers. Shutterstock has not produced any files reflecting all metadata for the photography at issue **nor has it produced a single digital copy of any of photographs at issue**. In response to Request Nos. 17 and 22, Shutterstock refused to provide any ESI, including the "computer files and archived records containing images of the SUBJECT PHOTOGRAPHY" and evidence that reflects its "distribution, display, posting, or any other use of the SUBJECT PHOTOGRAPHY." This material establishes control over the content at issue and also goes to the scope of infringement, willfulness, and damages. Shutterstock's claim that it "is still waiting on the definition of 'ESI' […], which is needed to address RFP 22, RFP" (Dkt. #35) is similarly meritless. It is common knowledge that "ESI" is electronically stored information. Indeed, during the parties' July 1st teleconference, counsel for McGucken specifically requested the EXIF data for the photography at issue. (Burroughs Decl., ¶5, Ex. 4.) And Shutterstock appears

to track the metadata associated with each photograph based on the documents produced so far, and this document has yet to be produced.

The requested information is already specific and narrowly tailored. And it is highly relevant to McGucken's Section 1202 claims. Indeed, a "plaintiff can demonstrate actual or constructive knowledge by showing a past 'pattern of conduct' or 'modus operandi' that the defendant was aware of or had reasonable grounds to be aware and which put defendant on notice of the probable future impact of its actions." *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018). This knowledge requirement may also be met if the plaintiff can show that the defendant removed the CMI to conceal their own infringement. *Mango v. Buzzfeed, Inc.*, 970 F.3d 167, 172 (2d Cir. 2020) ("[A] defendant's awareness that distributing copyrighted material without proper attribution of CMI will conceal his own infringing conduct satisfies the DMCA's second scienter requirement."); *RBH Energy, LLC v. Partners in Church Consulting, LLC*, 2016 WL 6496362, at *1 (N.D. Tex.May 6, 2016). McGucken must be given access to the digital photography files so he can examine the metadata and ascertain whether Shutterstock removed his metadata and/or added its own false metadata. Shutterstock must thus produce the digital files and other material responsive to this request immediately.

Finally, Request No. 59 seeks "DOCUMENTs reflecting or referring to YOUR selection, approval, editing, modification, or approval of any of the SUBJECT PHOTOGRAPHY." In response to this request, Shutterstock stated that "at this time, no known documents exist pertaining specifically to the images at issue in its possession, custody, or control." Based on this response, McGucken did not specifically address this request during the parties' teleconference. But in light of the documents produced so far, and the Reviewer Guidelines highlighted above, this is demonstrably false. Shutterstock must thus supplement its response to this request and provide responsive documents.

### C.    The Shutterstock / Hane Street action in Minnesota

McGucken has sought discovery related to Shutterstock's evidence and legal positions in an uncannily similar case that is pending in Minnesota. Specifically, Request No. 48 seeks all

documents produced by Shutterstock "in *It[]asca Images LLC, et al. v. Shutterstock, Inc., et al.*,
0:21-cv-00287, United States District Court, District of Minnesota."[3] In that case, Shutterstock
was alleged to have unlawfully exploited over 100 copyrighted photographs without the author's
consent by obtaining them from the same account holder – Hane Street – who worked with
Shutterstock to infringe McGucken's rights over 100 copyrighted photographs in this case. See
*Itasca Images, LLC et al v. Shutterstock, Inc., et al*, 0-21-cv-00287 (D.MN). Shutterstock offered
for license and licensed the Hane Street photography in that case just like it did in this case. And
it claimed that its site and business operation is protected by the DMCA safe harbor set forth at
17 U.S.C. § 512, just as it did in this case.

To be sure, Shutterstock found the cases to be so similar that they served subpoenas on
McGucken and his lawyer Scott Alan Burroughs, Esq. to testify in the Minnesota action.
(Burroughs Decl. ¶8, Exs. 7 and 8.) Yet, here, Shutterstock has refused to produce any evidence
in relation to the Minnesota action, claiming a lack of relevance. But this evidence is highly
germane to not only the manner in which Shutterstock addresses infringement under the DMCA
but also how it addressed the exact contributor – Hane Street – who is at issue in this case.

The Minnesota action evidence is also germane to McGucken's right to statutory
damages under 17 U.S.C. § 504. In setting the amount of those damages, juries consider, among
other things, the likelihood the award will discourage the defendant from repeating its
infringement. See *Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1117 (2d Cir.
1986). Discouraging Shutterstock from further infringement will require substantial damages.
Shutterstock has been sued for copyright infringement *at least nine times* since 2019, which is
relevant to whether a particular damages amount will "discourage the defendant from repeating
its infringement." See *Tamara Williams v. Shutterstock, Inc., et al*; 1-21-cv-05784 (E.D.N.Y);
*Steinmetz v. Shutterstock, Inc., et al*, 1-21-cv-07100 (S.D.N.Y.); *Cavanaugh v. Shutterstock, Inc.*,
*et al*, 1-21-cv-03796 (S.D.N.Y.); *Itasca Images, LLC et al v. Shutterstock, Inc., et al*, 0-21-cv-

---

[3] Related request No. 49 similarly seeks "Any and all DOCUMENTs relating to any other claims of
copyright infringement against YOU, including YOUR case file for any claims concerning copyright
infringement filed against YOU." Shutterstock has flatly refused to provide any evidence from any of the
other cases, including the Minnesota Action.

00287 (D.MN); *Lickerish, Ltd. v. Shutterstock Inc*., 1-20-cv-05384 (S.D.N.Y.); *Penske Media Corporation v. Shutterstock, Inc*., 1-20-cv-04583 (S.D.N.Y.); *Grossman Enterprises LLC v. Hubbard Broadcasting, Inc., et al*., 1-20-cv-03023 (S.D.N.Y.); *Michael Grecco Productions, Inc. v. Rex Features, Ltd., et al.,* 2-20-cv-00787 (C.D.CA); *Michael Grecco Productions, Inc. v. Shutterstock, Inc*., et al., 2-19-cv-01153 (CD.CA).

In one of those actions, Shutterstock is alleged to have attempted to "exploit the COVID-19 pandemic to walk away from its contractual obligations" and infringed the plaintiff's rights in at least 2,300 photographs in doing so. See *Penske Media Corporation*, 1-20-cv-04583, Dkt. No. 29. In the Minnesota Action, Shutterstock was alleged to have unlawfully exploited over 100 copyrighted photographs by obtaining them from the same account holder – Hane Street – who worked with Shutterstock to infringe McGucken's rights over 100 copyrighted photographs in this case. See *Itasca Images, LLC*, 0-21-cv-00287. Evidence from the Minnesota Action is highly relevant to Shutterstock's knowledge, policies, DMCA defense, and the appropriate amount of statutory damages.

Courts regularly find evidence from similar cases to be discoverable. *Sauer v. Exelon Generation Co., LLC*, 2011 WL 3584780, at *3 (N.D.Ill.2011)(ordering defense to produce files from the other lawsuits that are "reasonably calculated to lead to the discovery of admissible evidence."), citing Fed.R.Civ.P. 26(b)(1). Moreover, when it comes to "trademark and copyright claims—a defendant's history of infringement is relevant in determining willfulness." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606628 (S.D.N.Y. 2018), citing *Gucci Am., Inc. v. Guess?, Inc*.,858 F.Supp.2d 250, 253 (S.D.N.Y. 2012) ("[C]ourts frequently consider prior judicial resolution of trademark disputes when discussing the alleged infringer's intent or bad faith."); *Stevens v. Aeonian Press, Inc*., 2002 WL 31387224, at *3 (S.D.N.Y. Oct. 23, 2002) (damages based on Defendants' "habit of reprinting works without permission from the copyright owners"). It is particularly true here given that Shutterstock collaborated with the same contributor, "Hane Street," in infringing both photographers' rights. This request is also

relevant to the Section 512 defense, as Shutterstock loses that defense if it did not terminate the account of a repeat infringer.

McGucken should have the opportunity to take limited discovery as to at least the Itasca matter, which includes the very same Shutterstock partner – Hane Street – as this case. And, mindful of the Court's directive to not seek an overbroad tranche of material, McGucken is limiting his request to only four of the many deposition transcripts at issue (and their exhibits). These witnesses likely testified about Shutterstock's relationship with Hane Street, when and where it first published the photography at issue in that case, when they investigated and/or terminated his account, and what due diligence they did regarding other Hane Street photography, such as the photographs at issue in this case. McGucken thus requests that the Court compel Shutterstock to produce the deposition transcripts and the exhibits for those transcripts, including without limitation any documents that Shutterstock produced in discovery, for Rachel Zussman, Sejal Patel, Shutterstock's 30(b)(6) witnesses, and Heather Shimmin. In an effort to compromise, McGucken will not seek any discovery or other files from any of the other Shutterstock infringement cases and will not seek the numerous pleadings and briefs in the Minnesota Action. It is respectfully submitted that this request be granted.

### III.    Conclusion

Shutterstock has refused to produce information within its possession, custody, and control that addresses crucial issues at the heart of this case, both as they pertain to scope of infringement and damages. McGucken respectfully requests that Shutterstock be ordered to withdraw its objections and produce full supplemental responses as requested above. MuGuckens also seeks sanctions for the time spent addressing this discovery dispute and Motion in an amount to be established after the Motion is decided.

Respectfully submitted,

Dated: August 3, 2022                    By:    */s/ Scott Alan Burroughs*
New York, New York                              Scott Alan Burroughs, Esq.
                                                Laura M. Zaharia, Esq.
                                                DONIGER / BURROUGHS

247 Water Street, First Floor
New York, New York 10038
scott@donigerlawfirm.com
lzaharia@donigerlawfirm.com
(310) 590-1820
Attorneys for Plaintiff
Elliot McGucken

PLAINTIFF'S MOTION TO COMPEL