**EXHIBIT 3**



Attorneys admitted in
California, New York,
Texas, Pennsylvania, and
Maine

Sender's contact:
scott@donigerlawfirm.com
(310) 590-1820

Doniger / Burroughs Building
603 Rose Avenue
Venice, California 90291

Doniger / Burroughs NY
247 Water Street, First Floor
New York, New York 10038

June 27, 2022

**DELIVERED VIA EMAIL**

Eleanor Lackman                Elaine Nguyen
eml@msk.com                    eln@msk.com

       **Case:**  *McGucken v. Shutterstock, Inc., et al.*
       **Case No.** 1:22-cv-00905-GHW

Counsel:

  This correspondence shall constitute Plaintiff Elliot McGucken's ("McGucken") meet and confer with respect to the insufficient and evasive responses and document production of Defendant Shutterstock, Inc. ("Shutterstock").

  As you are aware, parties have an obligation to respond to discovery in good faith and without making objections solely for purposes of delay and frustrating discovery. The scope of discovery is broad so parties can uncover evidence about which they may not previously have known. Even where an interrogatory is ambiguous or potentially overbroad, parties have an obligation to respond as best they can and within the objectively reasonable limits of permissible discovery. We find your responses to be deficient in several respects, discussed in detail below.

**RESPONSES TO INTERROGATORIES**

Response to Interrogatory Nos. 3, 4
  The above interrogatories seek identification of documents reflecting Shutterstock's communications with McGucken and permissions to license the photographs at issue. Shutterstock objected to Interrogatory No. 3 "because it is vague and ambiguous as to the phrases 'YOUR publication' and 'efforts by YOU'." But these boilerplate objections fail to provide a sufficient explanation of their legal and/or factual basis. See, e.g., *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 2008 WL 2783206,*1 (N.D. Cal. 2008) (court condemned practice of "boilerplate objections"). A party objecting to a discovery request must "particularize" its basis for each objection. *See Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589, 593 (W.D.N.Y. 1996) (holding that defendants did not meet their burden under Fed. R.Civ. P.33(a) of making a specific showing of reasons why documents should not be produced where they merely made conclusory objections); *Pulsecard, Inc. v. Discover Card Servs.*, 168 F.R.D. 295, 303 (D. Kan. 1996) (general objections do not satisfy specificity requirement of Fed. R. Civ. P. 33). Rule 33 requires that any objections be stated with specificity. Your client has not done so here; accordingly, any objections on these grounds are deemed waived.

Shutterstock also objected to both interrogatories as beyond the permissible scope of Local Rule 33.3. But this is demonstrably false. L.R. 33.3 permits interrogatories "seeking […] the computation of each category of damage alleged, and **the existence, custodian, location and general description of relevant documents, including pertinent insurance agreements, and other physical evidence, or information of a similar nature**." (emphasis added.) And the above interrogatories seek information regarding the existence of documents relevant to the parties' claims and defenses. Thus, the above interrogatories are within the scope of L.R. 33.3. Accordingly, Shutterstock must supplement its responses to these interrogatories immediately.

Response to Interrogatory No. 5

This interrogatory seeks any policies in place during the time period at issue that relate in any way to copyright, intellectual property, or the use of the creative content of non-employees. Shutterstock again provided boilerplate objections, which, for the reasons discussed above, are deemed waived. Shutterstock then responded "that it is willing to meet and confer on a more specific and narrowly tailored interrogatory."

The requested information is already specific and narrowly tailored. And it is highly relevant to McGucken's Section 1202 claims. Indeed, a "plaintiff can demonstrate actual or constructive knowledge by showing a past 'pattern of conduct' or 'modus operandi' that the defendant was aware of or had reasonable grounds to be aware and which put defendant on notice of the probable future impact of its actions." *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018). This knowledge requirement may also be met if the plaintiff can show that the defendant removed the CMI to conceal their own infringement. *Mango v. Buzzfeed, Inc.*, 970 F.3d 167, 172 (2d Cir. 2020) ("[A] defendant's awareness that distributing copyrighted material without proper attribution of CMI will conceal his own infringing conduct satisfies the DMCA's second scienter requirement."); *RBH Energy, LLC v. Partners in Church Consulting, LLC*, 2016 WL 6496362, at *1 (N.D. Tex. May 6, 2016). Shutterstock must thus provide supplemental responses immediately.

Response to Interrogatory No. 7

This interrogatory seeks identification of the custodian and location of all documents and other physical evidence relevant to the above-captioned action and/or the allegations in the Complaint. Shutterstock repeated its boilerplate objections, including objecting to this interrogatory as beyond the permissible scope of L.R. 33.3, vague and ambiguous, overbroad and unduly burdensome, and calling for legal conclusions. But, as discussed above, this interrogatory is within the scope of L.R. 33.3, and the remaining boilerplate objections fail and are deemed waived.

In response to this interrogatory, Shutterstock indicated that "relevant documents reside in Shutterstock's files and likely reside in the files of third parties." This response is wholly inadequate. Shutterstock must supplement its response to this interrogatory to specify what individuals or groups at Shutterstock are the custodians of the relevant documents and files, where this material is located (as Shutterstock publicly represents that it "has offices around the world and customers in more than 150 countries"[a]), what third parties it believes are custodians of the relevant documents, and where these third parties are located. Indeed, the requested information is relevant to either party's claim or defense and addresses the relative willfulness of the copyright infringement and the degree to which Shutterstock's business relies on taking the creative works of others as opposed to employing people to create original works. And as you are aware, if information sought is relevant to subject matter of litigation, it is generally discoverable unless privileged. *In re Penn Cent. Commercial Paper Litigation*, 61 FRD 453 (S.D.N.Y.1973). If a party fails to provide information as required by Rule 26(a), the party is not allowed to use that information to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. Fed.

---

[a] See https://www.linkedin.com/company/shutterstock, last visited June 27, 2022.

R. Civ. P. 37(c). Please provide supplemental responses immediately.

Response to Interrogatory No. 8

This interrogatory seeks a description of documents relevant to Shutterstock's defenses. Shutterstock again provided a number of boilerplate objections and then indicated that "[d]ocuments relevant to Shutterstock's defenses will be produced during the course of discovery." But Shutterstock has not indicated when it will produce responsive documents. Although discovery is ongoing, based on Shutterstock's responses, Shutterstock appears to be able to at least make an initial document production. Please provide supplemental responses and produce responsive documents immediately.

For the foregoing reasons, your client must supplement its responses to the above interrogatories.

## RESPONSES TO REQUESTS FOR PRODUCTION

Response to Request for Production No. 27

The above request seeks "[a]ll DOCUMENTs which constitute, show, or reflect any and all communication(s) between YOU and PLAINTIFF regarding the SUBJECT PHOTOGRAPHY." Shutterstock responded that "there are no responsive documents other than those already in Plaintiff's possession, custody, or control. Shutterstock reserves its right to not produce those documents." The requested information is relevant to willfulness and notice. And courts consistently find that this objection is meritless. See, e.g., *Charter Practices Int'l, LLC v. Robb*, No. 3:12CV1768 RNC, 2014 WL 273855, at *2 (D. Conn. Jan. 23, 2014) (holding that the objection that information is equally available to the questioner "is insufficient to resist a discovery request"); *National Academy of Recording Arts & Sciences, Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D.Cal. 2009) (overruling defendant's objection that interrogatory sought information equally available to plaintiff); *Fosselman v. Gibbs*, No. C 06–0375, 2008 WL 745122, at *4 (N.D.Cal. Mar. 18, 2008)("the objection that information is equally available to the questioner is not a proper objection"). And your production will make clear that the material is authentic and admissible for purposes of trial. Shutterstock must thus supplement its response and produce the requested material.

Response to Request for Production Nos. 10, 15, 16, 28, 61, 63, 65

The above requests seek information relevant to scope of use. For example, Request No. 10 seeks "[a]ll DOCUMENTS reflecting all copies or versions of the SUBJECT PHOTOGRAPHY (including but not limited to print, audio-visual, original uploads, thumbnails, resized versions, etc.) used by YOU to display or distribute the SUBJECT PHOTOGRAPHY." In response to this request, Shutterstock objected "as vague, ambiguous, and unintelligible" and "neither relevant to any party's claims or defenses nor proportional to the needs the case" but agreed to meet and confer regarding scope. Similarly, Request No. 65 seeks "[a]ll DOCUMENTs that refer to or reflect the SUBJECT PHOTOGRAPHY" and Shutterstock objected as overbroad and stated that it will agree to meet and confer regarding the scope of this Request. But it is unclear why these straightforward requests require a meet-and-confer from your client, as the requested information is relevant to scope of use and McGucken's infringement claims. Shutterstock's display and distribution of the photography at issue are "reasonably calculated to lead to the discovery of admissible evidence." See *Morse/Diesel, Inc. v. Fidelity & Deposit Co.*, 122 F.R.D. 447, 449 (S.D.N.Y.1988).

Request No. 61 also seeks "[a]ll DOCUMENTs referring or relating to YOUR display of the SUBJECT PHOTOGRAPHY after the filing of this case." Shutterstock objected to this request "because it calls for a legal conclusion and it assumes facts not in the record" and indicated that it "will produce non-privileged documents found after a reasonable search pertaining to any cache copies of thumbnails or other reference images[.]"

Shutterstock yet again improperly narrowed the scope of this request, and its response does not address each display of the photography at issue. Shutterstock must produce all documents relating to the displays at issue, not just the ones pertaining to cache copies of thumbnails or other reference images.

      Similarly, Request No. 16 seeks information regarding Shutterstock's use of the photographs at issue on its social media accounts. Shutterstock objected but indicated that it would "produce non-privileged documents found after a reasonable search sufficient to demonstrate any licenses granted to social media platforms to the images at issue, to the extent any such documents exist[.]" This is insufficient and ignores the full scope of the request. In addition to licenses with social media platforms, this request seeks information pertaining to whether Shutterstock displayed the photography at issue across its various social media platforms. Your response overlooks the entirety of this request. It cannot be reasonably disputed that Shutterstock's unauthorized exploitations of McGucken's photographs, in all their forms, across Shutterstock's websites and social media accounts, are relevant to his claims for copyright infringement.

      Additionally, Request No. 15 seeks the number of impressions or page views for **all** URLs containing our client's images. This information is not only relevant to scope of use but also damages. In response to this request, Shutterstock indicated it would only provide information for the URLs identified in the Complaint. This is wholly improper. Whether there are additional Shutterstock URLs containing McGucken's photography is a question that only Shutterstock can answer as the owner and operator of the websites at issue. Indeed, as illustrated in the Complaint, Shutterstock has displayed and made available the disputed photography in several sizes, which are located at different Shutterstock URLs. McGucken has limited access to Shutterstock's system and is not in a position to know or identify each variation of the URLs for the photography at issue. Given McGucken's limited access to Shutterstock's system, Shutterstock must investigate whether there are any other uses of McGucken's photographs across its platforms and confirm whether there are any additional exploitations of McGucken's images at URLs that have not been included in the Complaint.

      Request No. 28 seeks any agreements with third party websites publishing or linking the images at issue. This information is relevant as to scope of use and potentially identifying additional infringers. Shutterstock responded that "Shutterstock will produce a general report indicating the types of uses permissible under the licenses granted as to the photographs in suit." This is non-responsive. Shutterstock has asserted that it is entitled to safe harbor protection. To avoid liability by asserting safe harbor protection, Shutterstock must prove that, if it had the right and ability to control the infringing activity, it did not receive a "financial benefit directly attributable to the infringing activity." § 512(c)(1)(B). Shutterstock's business relationships with third parties are relevant because McGucken asserts Shutterstock's contractual agreements were used to facilitate the infringement, Shutterstock financially benefited from that infringement, and Shutterstock had the ability to stop the infringement pursuant to its improper licenses with third parties.

      Similarly, Request No. 63 seeks "[a]ll DOCUMENTs referring or relating to YOUR ability to supervise and control the use of the SUBJECT PHOTOGRAPHY by users of YOUR site." Shutterstock objected as "vague and ambiguous", "call[ing] for a legal conclusion", and "because it does not control contributors or actual or prospective customers and therefore cannot determine documents from the request." Shutterstock then responded that it would agree to meet and confer regarding the scope of this request. Shutterstock does not deny that it has the ability to supervise the use of the photography at issue by Shutterstock users. This information is related to willfulness and McGucken's claims of secondary infringement.

      McGucken is entitled to discovery of whether Shutterstock's contracts give it the right and ability to control infringing activity and that Shutterstock received financial benefit directly attributable to that activity. §

512(c)(1)(B); *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1045 (9th Cir. 2013). Additionally, the contracts may show the extent of any financial benefit to Shutterstock which may impact an award of statutory damages. 17 U.S.C. § 504(c); *Broad. Music, Inc. v. City & Country Tavern, LLC*, No. CV 15-3441 (JNE/BRT), 2016 WL 3566209, at *3 (D. Minn. June 27, 2016). In light of the above, Shutterstock must produce its agreements with third party websites concerning the images at issue.

Please withdraw your objections, supplement your responses to address the entirety of the above requests, and produce responsive documents immediately.

Response to Request for Production No. 11

This request seeks "[a]ll DOCUMENTS which constitute, show, or reflect artist attribution to the author of the SUBJECT PHOTOGRAPHY." Shutterstock objected as "overbroad and calls for a legal conclusion" and "vague and ambiguous, including as to the phrase 'artist attribution to the author'" and responded that it would "produce non-privileged documents found after a reasonable search sufficient to reflect information provided to it by the contributor of the images at issue, to the extent such documents exist[.]" This is non-responsive and does not address the entirety of the request. Indeed, any documents reflecting attribution to McGucken, including past cease-and-desist correspondence or the images themselves, fall within this request and must be produced. And Shutterstock must investigate whether any other categories of documents responsive to this request exist. Shutterstock must supplement its response and produce documents responsive to the above request in its current form, without any further narrowing of its scope.

Response to Request for Production Nos. 17, 22, 29, 35

The above requests seek information relevant to establishing a pattern of willfulness with respect to McGucken's work. For example, Request No. 17 seeks all ESI of the photography at issue and Request No. 22 seeks all ESI reflecting Shutterstock's use of the disputed photographs, as that information is highly relevant to McGucken's Section 1202 claims. Request No. 29 seeks information pertaining to your client's obtainment of any and all works from McGucken, which is relevant to Shutterstock's access and willfulness. And Request No. 30 seeks material reflecting Shutterstock's knowledge of McGucken's intellectual property rights, which directly addresses willfulness.

In response to these requests, Shutterstock again provided several boilerplate objections. For Request No. 17, Shutterstock objected that the request was "neither relevant to any party's claims or defenses nor proportional to the needs of the case" and responded that it "will agree to meet and confer regarding the scope of this Request." But this is a straightforward request, and it is unclear why this request requires a meet and confer. For Request No. 22, Shutterstock provided a number of boilerplate objections and indicated that it "will produce reasonable data regarding the uploading and removal or other disabling of the images at issue, found after a reasonable search and to the extent not already provided." But this is unresponsive, as the request seeks "[a]ll electronically-stored information that refers to or reflects YOUR distribution, display, posting, or any other use of the SUBJECT PHOTOGRAPHY." It is thus wholly improper for Shutterstock to narrow this request to only providing material concerning the uploading and removal or disabling of McGucken's photographs, particularly in light of McGucken's allegations that Shutterstock improperly licensed his artwork to third parties. Shutterstock must provide ESI reflecting all of its uses of the photography at issue.

Additionally, for Request No. 29, Shutterstock objected as "vague and ambiguous" and that "such documents are equally available to Plaintiff" but responded that it "will produce non-privileged documents found after a reasonable search concerning the uploading to Shutterstock's site of the images at issue, to the extent such documents exist in Shutterstock's possession, custody, or control." This response disregards the full

scope of the request, and Shutterstock must thus supplement its response to address this request in its entirety.

Finally, Request No. 35 seeks "[a]ny and all DOCUMENTs which constitute, show, reflect, refer to, mention, concern, or may provide evidence of, any modification or alteration by YOU of the images used in the DISPUTED USE before publishing or distribution of said DISPUTED USE." Shutterstock objected as "vague, ambiguous, and unintelligible" and "because the Request calls for legal conclusions, calls for speculation, and assumes facts not in the record." Shutterstock then indicated it will meet and confer regarding the scope of this request.

As noted previously the requested material is relevant to McGucken's claims, particularly regarding willfulness, access, and scope of use. Indeed, the requested material is relevant to whether Shutterstock had actual notice of McGucken's copyrights and will establish that Shutterstock removed or altered McGucken's CMI on the disputed photographs in violation of 17 U.S.C. 1202(b). The original files will also establish that the photographs were uploaded to Shutterstock's website with CMI and metadata that included copyright notices, author information, and contact information and that Shutterstock replaced these copyright notices with Shutterstock copyright notices. The requested production is plainly relevant as it may reveal alteration (or lack thereof) of CMI. § 512(c)(1)(A); § 1202(b). And at least one other court has required Shutterstock to produce this type of material in another copyright infringement action. See *Itasca Images, LLC v. Shutterstock, Inc.*, No. 21-CV-287 (JRT/DTS), 2021 WL 6849104, at *4 (D. Minn. Nov. 22, 2021) ("If Shutterstock does not possess the original files, which consist of the images and metadata together, Shutterstock shall produce the metadata that was attached to the original files and certify it does not possess [even in its deep servers] the original files as they were uploaded and that the metadata it produces is the metadata it removed from the original files.")

Shutterstock's objections thus fail. Please withdraw your objections, supplement your response, and produce responsive documents immediately.

Response to Request for Production Nos. 24, 46

These requests seek Shutterstock's intellectual property policies and your client again responded with several boilerplate objections and indicated it will meet and confer regarding these requests. The requested information is relevant to willfulness and statutory damages. If Shutterstock did not have any in place during the relevant time period, please indicate so. Please withdraw your objections, supplement your responses, and produce responsive documents immediately.

Response to Request for Production No. 47, 48, 55

Request No. 47 specifically seeks "[a]ll DOCUMENTs that constitute, show, or reflect all DMCA notifications received by YOU concerning any and all of the PERSONs who uploaded the SUBJECT PHOTOGRAPHY to YOUR website." This request is relevant to establishing Shutterstock's notice and whether the uploader(s) of the photography are repeat infringers. Shutterstock objected to this request as seeking information "neither relevant to any party's claims or defenses nor proportional to the needs of the case" and refused to produce responsive documents. But those objections fail, and the requested material addresses McGucken's claims and Shutterstock's alleged safe harbor defense. This information must be produced.

Request No. 55 seeks "[a]ll DOCUMENTs reflecting or referring to YOU providing notice of the infringement claims at issue to any parties to which YOU licensed any of the SUBJECT PHOTOGRAPHY." This is narrowly tailored and relevant to willfulness and McGucken's claims of direct and secondary infringement. Shutterstock objected to this request as "vague and ambiguous", "call[ing] for a legal

conclusion", and "seek[ing] documents that are neither relevant to any party's claims or defenses nor proportional to the needs of the case." Shutterstock also objected because the request allegedly "seeks documents equally accessible to Plaintiff[,]" though it is unclear how this information is available to McGucken. Shutterstock then responded that it would "produce non-privileged documents found after a reasonable search concerning the letter from Higbee to Shutterstock on or after December 30, 2020, to the extent such documents exist in Shutterstock's possession, custody, or control. Shutterstock disputes that any notice is required by Shutterstock." The documents that Shutterstock claims it will produce do not address the request. If Shutterstock does not have any responsive documents to Request No. 55 as written, it must specify so in its response. Please supplement your response accordingly.

Request No. 48 seeks "[a]ny and all DOCUMENTs produced by YOU in It[]asca Images LLC, et al. v. Shutterstock, Inc., et al., 0:21-cv-00287, United States District Court, District of Minnesota." Shutterstock objected to this request as "neither relevant to any party's claims or defenses nor proportional to the needs of the case." Shutterstock further objected to this request as "vague, ambiguous, and unintelligible", but given that you represent Shutterstock in the aforementioned case, these objections fail. This information is relevant to McGucken's Section 1202 claims and Shutterstock's alleged safe harbor defense. Indeed, a "plaintiff can demonstrate actual or constructive knowledge by showing a past 'pattern of conduct' or 'modus operandi' that the defendant was aware of or had reasonable grounds to be aware and which put defendant on notice of the probable future impact of its actions." *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018). This knowledge requirement may also be met if the plaintiff can show that the defendant removed the CMI to conceal their own infringement. *Mango v. Buzzfeed, Inc.*, 970 F.3d 167, 172 (2d Cir. 2020) ("[A] defendant's awareness that distributing copyrighted material without proper attribution of CMI will conceal his own infringing conduct satisfies the DMCA's second scienter requirement."); *RBH Energy, LLC v. Partners in Church Consulting, LLC*, 2016 WL 6496362, at *1 (N.D. Tex. May 6, 2016).

Information regarding Shutterstock's involvement in past copyright infringement suits is also relevant because such behavior is directly related to the issue of calculating statutory damages and willfulness. *See Lauratex Textile Corp. v. Allton Knitting Mills*, 519 F. Supp. 730, 733 (S.D.N.Y. 1981) (referring to the defendant's prior copyright litigation-an "indication that the business of encroaching upon others copyrights is not unfamiliar to the defendant"-telling in awarding statutory damages); *Boz Scaggs Music v. KND Corp.*, 491 F. Supp. 908, 914 (D. Conn. 1980). Shutterstock must thus withdraw its objections to the above requests, supplement its responses, and produce responsive documents immediately.

Response to Request for Production No. 40
This request seeks "[a]ll DOCUMENTs reflecting YOUR addition of the 'Shutterstock' logo to the SUBJECT PHOTOGRAPHY." Your client provided a number of boilerplate objections and indicated that it would produce documents "sufficient to show the automatic and automated placement of a Shutterstock watermark to all images uploaded to the Shutterstock platform." This is non-responsive. Shutterstock must address the full scope of this request, as this request is relevant to McGucken's Section 1202 claims. Please withdraw your objections and supplement your response.

Response to Request for Production No. 44
This request seeks "DOCUMENTs sufficient to show whether any PERSON who uploaded the SUBJECT PHOTOGRAPHY to YOUR website is a repeat infringer." Your client objected as "vague and ambiguous as to the phrase 'repeat infringer', which furthermore calls for a legal conclusion." Shutterstock further objected to this request as seeking documents allegedly "not in Shutterstock's possession, custody, or control, and/or equally available to Plaintiff." But these boilerplate objections fail. And Shutterstock indicated

that it would "produce non-privileged documents found after a reasonable search, concerning the contributor of the images at issue, to the extent such documents exist in Shutterstock's possession, custody, or control." Shutterstock yet again improperly narrowed the scope of the request, and its response does not address whether the information Shutterstock intends to produce will address the contributor's status as a repeat infringer. The above request is narrowly tailored and relevant to McGucken's claims of willful infringement and Shutterstock's safe harbor defense. Shutterstock must actually answer the request and either (i) indicate it will produce responsive documents to the above request, (ii) object and indicate that it will not produce documents, or (iii) state that it has undertaken a reasonable investigation and does not have any documents in its possession, control, or custody.

Response to Request for Production No. 52, 53, 60

The above requests are straightforward and seek Shutterstock's Google analytics information and Segment metrics for the photography at issue. Shutterstock provided a number of boilerplate objections and indicated that it was willing to meet and confer about the scope of these requests. The requested information is relevant to scope and McGucken is entitled to this information. Please withdraw your objections, supplement your response, and produce responsive documents immediately.

## LACK OF DOCUMENT PRODUCTION

Your client promised in several of its responses to "produce non-privileged documents responsive to this Request found after a reasonable search, to the extent any such documents exist." See, e.g., Response to Request No. 1. No such documents have yet been produced. And your client has not indicated when it would produce such information.

As discussed above, parties have an obligation to respond as best they can and within the objectively reasonable limits of permissible discovery. Also, the propounded requests are sufficiently clear and straightforward to allow meaningful response. All of your client's complete responsive documents must be provided immediately.

Accordingly, your client must immediately produce, inter alia, the documents referenced in its responses to:

- Request for Production Nos. 1-2
- Request for Production Nos. 6-9,
- Request for Production Nos. 12-15,
- Request for Production No. 21,
- Request for Production No. 23,
- Request for Production No. 25,
- Request for Production Nos. 31-32,
- Request for Production No. 34,
- Request for Production Nos. 38-39,
- Request for Production Nos. 41-43,
- Request for Production No. 45,
- Request for Production No. 51,
- Request for Production No. 54,
- Request for Production Nos. 56-58,

247 Water Street, First Floor / New York, NY 10038
Telephone: (310) 590-1820 / www.donigerlawfirm.com

- Request for Production No. 62, and
- Request for Production No. 64.

Such records must be offered "in a manner that permits the same direct and economical access that is available to the [responding] party." Id.; Adv. Comm. Notes to 1980 Amendment to FRCP 33(d); *U.S. ex rel. Englund v. Los Angeles Cnty.*, 235 F.R.D. 675, 680 (E.D. Cal. 2006). If compilations and summaries exist, these should be made available. *Id*. The interrogated parties are not permitted to foist massive records on the interrogatory when deciphering is feasible only for one familiar with records. *Compagnie Francaise d'Assurance Pour le Commerce Exterieur*, 105 F.R.D. at 44. Alternatively, Shutterstock must supplement its responses to the above requests to confirm that a search has occurred and that Shutterstock has no non-privileged responsive documents in its possession, custody, or control.

We request that you provide all responses and responsive documents to the above requests, as promised, and make yourself available to confer over the above-referenced deficiencies in your client's responses. I am free for a teleconference on June 30, 2022 at 11:00 am; if you are unavailable on that date and time, please propose an alternative time.

Regards,

By: _____
Scott Alan Burroughs
For the Firm

*SAB/lmz*

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing **PLAINTIFF'S MEET-AND-CONFER LETTER** upon attorneys for Defendant Shutterstock, Inc. by sending a copy of same via electronic mail, to:

Eleanor Lackman
eml@msk.com

Elaine Nguyen
eln@msk.com

*Attorneys for Defendant Shutterstock, Inc.*

Dated: June 27, 2022

**DONIGER / BURROUGHS**

By: */s/ Laura M. Zaharia*
Laura M. Zaharia, Esq.