**EXHIBIT 6**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Itasca Images, LLC, et al., | Case No. 21-cv-287 (JRT/DTS) |
| Plaintiffs, | |
| v. | **ORDER** |
| Shutterstock, Inc., et al., | |
| Defendants. | |

Plaintiffs Itasca Images, LLC and Tony Webster (collectively, "Itasca Images") brought this action alleging Defendant Shutterstock, Inc. engaged in copyright infringement by using, altering, distributing, or selling Itasca Images' photographs without authorization. Pls. Mem. 2, Dkt. No. 53. Shutterstock asserted several defenses including that it is not liable under the Digital Millennium Copyright Act's "safe harbor" provision because its website is a passive platform and it disabled licensing of the photographs upon notice of the infringement. Def. Mem. 2, Dkt. No. 82. Itasca Images argues the safe harbor protection does not apply to Shutterstock's business model, and even if it did apply, Shutterstock lost safe harbor protection because, despite notice of the infringement, it did not act expeditiously to cease its infringing activity. Pls. Mem. 3-10. Itasca Images moves to compel Shutterstock to respond fully to certain discovery requests. For the reasons discussed below, Itasca Images' motion is granted in part and denied in part.

**ANALYSIS**

"Parties may obtain discovery . . . that is relevant . . . and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). This rule contemplates a liberal scope of discovery, though this Court has considerable discretion to determine the need for, and form of, that

discovery. *Hill v. Sw. Energy Co.*, 858 F.3d 481, 484 (8th Cir. 2017); *In re Nat'l Hockey League Players' Concussion Injury Litig.*, 120 F. Supp. 3d 942, 949 (D. Minn. 2015). The proponent of the discovery must make a "threshold showing of relevance." *Hofer v. Mack Trucks, Inc.*, 981 F.2d. 377, 380 (8th Cir. 1992). "[E]ven if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome." *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (quotation omitted); *see* Fed. R. Civ. P. 26(b)(1). "The party opposing discovery bears the burden of showing that the discovery request is overly broad and burdensome by alleging facts demonstrating the extent and nature of the burden." *E.E.O.C. v. Schwan's Home Serv.*, 692 F. Supp. 2d 1070, 1087 n.12 (D. Minn. 2010) (quotation omitted); *see also Vallejo v. Amgen, Inc.*, 903 F.2d 733, 743 (8th Cir. 2018).

In a copyright infringement action, a service provider may assert a defense under the "safe harbor" provision of the Digital Millennium Copyright Act. *See* 17 U.S.C. § 512(c)(1). The provider must first show that the infringing material was stored "at the direction of the user." *Id.* If it meets that threshold requirement, the provider must then show that it lacked actual knowledge of an infringement and lacked knowledge of "facts or circumstances from which infringing activity is apparent," which is often referred to as "red flag" knowledge. *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1025 (9th Cir. 2013) (citing § 512(c)(1)(A)(ii)). Red flag knowledge "turns on whether the provider was subjectively aware of facts that would have made the specific infringement objectively obvious to a reasonable person." *Id.* (quotation omitted). To obtain safe harbor protection a provider that receives actual or red flag knowledge of infringement must demonstrate it acted "expeditiously to remove, or disable access to, the material."

2

§ 512(c)(1)(A)(iii). The provider must also show that, if it had the right and ability to control the infringing activity, it did not receive a "financial benefit directly attributable to the infringing activity." § 512(c)(1)(B).

A party asserting copyright infringement may elect to recover statutory damages of not less than $750 or more than $30,000 for each copyright infringed. *Pearson Educ., Inc. v. Almgren*, 685 F.3d 691, 693 n.3 (8th Cir. 2012) (citing 17 U.S.C. § 504(c)(1)). If the infringement is willful, the maximum recovery for each copyright infringed is $150,000. *Id.* (citing 17 U.S.C. § 504(c)(2)). When determining statutory damages in a copyright infringement action, district courts may exercise "wide judicial discretion" within the statutory range. *Broadcast Music, Inc. v. Country Tavern, LLC*, No. 15-3441, 2016 WL 3566209, at *3 (D. Minn. June 27, 2016) (quoting *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 232 (1952)).

## I. Interrogatory No. 2

Itasca Images seeks the identity of "all persons . . . displayed, given access to, or who received any of the Photographs" at issue in the lawsuit from Shutterstock. Flaherty Decl. Ex. 1, at 4, Dkt. No. 33-1. Shutterstock objects to the interrogatory as overbroad, vague, and ambiguous, and denied that it had the information (including IP addresses or visitor identifiers) in any event. *Id.*

Itasca Images argues the information is relevant because it may provide the identities of downstream infringers and shed light on the scope of the infringement. Pls. Mem. 19. It also contends that Shutterstock can obtain the requested information from Google Analytics. *Id.* at 16-17. Shutterstock concedes the information sought is relevant, Hrg. Tr. 20, Dkt. No. 90, and that it "may be able to provide some statistics on views from users who were logged in at the time of access, and perhaps even more limited statistics

3

for anonymous viewers." Def. Mem. 10. Shutterstock also admits that its tracking system called "Segment" could identify a visitor's path through Shutterstock's platform. *Id.* at 13. Nonetheless, Shutterstock asserts producing information would be "somewhat burdensome." *Id.* at 10.

The information sought is relevant because it goes to the scope of the alleged infringement. 17 U.S.C. § 504(c); *Broadcast Music, Inc.*, 2016 WL 3566209, at *3. It may bear on statutory damages because Itasca Images alleges Shutterstock distributed the photographs extensively and willfully. Compl. 18-39, Dkt. No. 93. If the information Itasca Images seeks establishes extensive or willful distribution, an award of statutory damages may be higher than if the photographs were distributed to only six licensees, as Shutterstock contends. Def. Mem. 6. Although Shutterstock argues obtaining the requested information would be "somewhat burdensome," Shutterstock has not provided the Court with facts demonstrating the extent and nature of the burden of obtaining the information. *Schwan's Home Serv.*, 692 F. Supp. 2d at 1087 n.12.

Because the information is relevant and Shutterstock has not shown that compliance would be unduly burdensome, Itasca Images' motion to compel Interrogatory No. 2 is granted. Shutterstock shall fully answer Interrogatory No. 2 and may do so under Federal Rules of Civil Procedure 33(d) if applicable. Specifically, Shutterstock's response shall include information from Segment and Google Analytics that is related to when a visitor "clicked" on a photograph at issue and information related to Shutterstock affiliates and licensees who gained access to the photographs. Shutterstock need not respond with information related to every visitor who viewed or visited its website.

4

## II.  Request for Production No. 2

Itasca Images' Request for Production (RFP) No. 2 requests "all copies or versions of the Photographs [at issue in the lawsuit], including without limitation any original uploads, resized versions, thumbnails, final versions, downloadable versions, distributed versions, or similar." Flaherty Decl. Ex. 2, at 4, Dkt. No. 33-2. Shutterstock objects to the request as overbroad, vague, ambiguous, and unduly burdensome. *Id.* Shutterstock also asserts that the residual thumbnails are not available because they were removed from its internal systems and it is unduly burdensome to produce the original images as they are stored in Shutterstock's "deep servers." *Id.* at 4-5.

Itasca Images argues that obtaining the original photograph files is important to show that Shutterstock had actual notice of the photographs' copyright and to show that Shutterstock removed or altered copyright management information (CMI) on the photographs in violation of 17 U.S.C. 1202(b). Pls. Mem. 20-23; Compl. 64. Itasca Images contends that the original files will establish that the photographs were uploaded to Shutterstock's website with CMI metadata that included copyright notices, artist information, and contact information and that Shutterstock replaced these copyright notices with Shutterstock copyright notices. *Id.* at 22. Shutterstock argues that "providing the metadata that was attached to the photographs, as opposed to providing the originals of the photographs, would be more straightforward and productive than searching its deep servers for the original photographs." Def. Mem. 16.

The production Itasca Images seeks is plainly relevant as it may reveal alteration (or lack thereof) of CMI. § 512(c)(1)(A); § 1202(b). In its briefing, Shutterstock appears to concede that it possesses the original photographs, but that it is unduly burdensome to produce them because they are contained within its "deep servers." Def. Mem. 16.

5

Shutterstock does not provide the Court with facts demonstrating the extent and nature of the burden to obtain the photographs. *Schwan's Home Serv.*, 692 F. Supp. 2d at 1087 n.12. Thus, Itasca Images' motion to compel RFP No. 2 is granted and Shutterstock shall produce the original files, which include the images and metadata together.

At the motion hearing, Shutterstock represented that it does not possess the original files as they were uploaded because Shutterstock separated the metadata from uploaded images when the files were "processed in order to work properly on the system." Hrg. Tr. 29. Shutterstock stated it could produce the metadata that had been attached to the images. *Id.* If Shutterstock does not possess the original files, which consist of the images and metadata together, Shutterstock shall produce the metadata that was attached to the original files and certify it does not possess (even in its deep servers) the original files as they were uploaded and that the metadata it produces is the metadata it removed from the original files.

### III.     Request for Production Nos. 17 & 18

Itasca Images' RFP Nos. 17 and 18 seek production of "all Contracts" between Shutterstock and two third-party websites, TinEye and HelloRF. Flaherty Decl. Ex. 2, at 10-11. Shutterstock objects to both RFPs as vague and ambiguous, unduly burdensome, and seeking confidential information. *Id.* It further objects to the HelloRF request as overbroad. *Id.* at 11. Shutterstock asks Itasca Images to explain the relevance of the TinEye request before it will respond and states it will not produce documents for the HelloRF request. *Id.*

Itasca Images argues that Shutterstock has business relationships with TinEye and HelloRF that facilitated the distribution of the photographs. Pls. Mem. 27-30. Itasca Images alleges that TinEye displayed search results advertising Itasca Images'

6

photographs for sale on Shutterstock and that HelloRF offered for resale Itasca Images' photographs with Shutterstock's logo watermark on them. *Id.* Shutterstock argues that the contracts are not relevant and has offered to produce its standard affiliate agreement. Def. Mem. 17-21. Shutterstock concedes that the contract with TinEye is not a verbatim standard affiliate agreement. *Id.* at 18.

To avoid liability by asserting safe harbor protection, Shutterstock must prove that, if it had the right and ability to control the infringing activity, it did not receive a "financial benefit directly attributable to the infringing activity." § 512(c)(1)(B). Shutterstock's business relationships with TinEye and HelloRF are relevant because Itasca Images asserts Shutterstock's contractual agreements were used to facilitate the infringement, Shutterstock financially benefited from that infringement, and the contracts give Shutterstock the ability to stop TinEye and HelloRF from infringing. Pls. Mem. 27-30; Hrg. Tr. 35. Itasca Images is entitled to discovery of whether Shutterstock's contracts give it the right and ability to control infringing activity and that Shutterstock received financial benefit directly attributable to that activity. § 512(c)(1)(B); *Fung*, 710 F.3d at 1045. Additionally, the contracts may show the extent of any financial benefit to Shutterstock which may impact an award of statutory damages. 17 U.S.C. § 504(c); *Broadcast Music, Inc.*, 2016 WL 3566209, at *3.

Shutterstock does not contend that producing the contracts will be unduly burdensome, but rather expresses its concern that sensitive business information may be disclosed to a competitor (Tony Webster) or publicly through motion practice. *Id.* Because Itasca Images has established the information it seeks to compel is relevant and because Shutterstock has failed to establish the lack of need or that production is overly broad or unduly burdensome, Itasca Images' motion to compel RFP Nos. 17 and 18 is granted.

7

*See* Fed. R. Civ. P. 26(b)(1). In light of Shutterstock's concern regarding confidentiality, Shutterstock may designate any document it produces in response to RFP Nos. 17 and 18 as "Confidential—Attorney's Eyes Only," pursuant to the Protective Order. Dkt. No. 24. Itasca Images' counsel shall not make documents designated as such available to its clients or the public.

## IV. Request for Production Nos. 22 & 23

Itasca Images' RFP Nos. 22 and 23 seek production of all documents regarding photographs "continuing to be displayed after a Shutterstock Contributor's account is terminated," including change requests, bug or defect reports, issue tickets, technical communications, commit messages, and improvements or fixes to Shutterstock's website. Flaherty Decl. Ex. 2, at 12-13. Shutterstock objects that the requests are overbroad and unduly burdensome but has offered to provide all such documents that apply specifically to the photographs in dispute, to which Itasca Images objects because Shutterstock's purported error impacted the entire website, not only the photographs at issue in this case. Def. Mem. 21-22; Pls. Mem. 35.

Itasca Images alleges that its photographs continued to be displayed on Shutterstock's website after Shutterstock had received Itasca Images' March 2020 cease-and-desist letter which, it argues, establishes that Shutterstock is not entitled to safe harbor protection. Pls. Mem. 8. Itasca Images argues that the information it seeks is relevant because Shutterstock has stated that continued display was the result of a glitch or error. Pls. Mem. 31-39 (citing 17 U.S.C. § 512(c)(1)). Itasca Images theorizes that Shutterstock's system's issue with removal of terminated accounts may actually constitute a willful design to avoid removal. Pls. Mem. 38. If so, it argues, Shutterstock may not avail itself of safe harbor protection. § 512(c)(1)(A)(iii). Assuming that

8

Shutterstock's use of Itasca Images' photographs was an infringement, that the March 2020 letter gave Shutterstock knowledge of that infringement, and that the photographs continued to be displayed on Shutterstock's website after March 2020, whether the continued display was inadvertent is relevant to safe harbor protection. *UMG Recordings, Inc.*, 718 F.3d at 1025. Though Shutterstock has offered to provide the documents that relate directly to the photographs in dispute, Itasca Images seeks a more general production regarding removal errors that have affected removal of content from the website generally. Pls. Mem. 35. This information is also relevant, though to a lesser extent.

Though Shutterstock alleges the burden of such a production "is obvious," it fails again to provide the Court with concrete facts demonstrating the extent and nature of that burden. *Schwan's Home Serv.*, 692 F. Supp. 2d at 1087 n.12. Because the documents sought are relevant and no undue burden is established, Itasca Images' motion to compel RFP Nos. 22 and 23 is granted to a limited extent. Shutterstock shall produce documents that apply to the photographs in dispute as well as documents that apply generally to removal of content from its website. It need not produce documents that apply to any specific contributor whose content was displayed after their account was terminated.

**V.     Request for Production No. 24**

RFP No. 24 seeks documents "regarding any criteria considered by Shutterstock when approving any Asset" for display on the website. Flaherty Decl. Ex. 2, at 13. Shutterstock objects to this request as overbroad but agrees to produce documents "arguably related to intellectual property aspects of any review that may have been applied to assets such as the Photographs at issue in this lawsuit." *Id.* at 13-14.

Itasca Images argues that the documents are relevant to establish Shutterstock uses "expert human mediation" to curate the content on its website and therefore the safe harbor protections do not apply. Pls. Mem. 39-40 (citing § 512(c)(1)). In other words, Itasca Images contends these criteria will establish that the alleged infringement was not "by reason of the storage at the direction of a user" and that Shutterstock had the "right and ability to control such activity." *Id.* Shutterstock concedes that humans review some of the content but argues that "in an intellectual property case, documents relating to intellectual property-related review is perfectly appropriate." Def. Mem. 24.

In *Viacom International, Inc. v. YouTube, Inc.*, the Second Circuit analyzed whether certain software functions occurred "by reason of the storage at the direction of a user." 676 F.3d 19, 39 (2d Cir. 2012). The court concluded that "the conversion (or 'transcoding') of videos into a standard display format, the playback of videos on 'watch' pages, and the 'related videos'" functions fell under the safe harbor protections. *Id.* at 39-40. The court reasoned, in part, that the "related videos" function fell under safe harbor because it was "fully automated and operates solely in response to user input without the active involvement of YouTube employees." *Id.* at 40. The court remanded with respect to a fourth software function that involved the third-party syndication of videos uploaded to YouTube. *Id.* The plaintiffs had argued that the business transactions did not occur "at the direction of a user" when they involve the manual selection of copyrighted material for licensing to a third party and the court remanded the issue for further fact-finding. *Id.*

Here, Itasca Images argues that Shutterstock is not protected under safe harbor because Shutterstock employees review content to determine whether it will be displayed. Pls. Mem. 39-40. Determining whether infringement occurs "by reason of the storage at the direction of a user" is a fact-based inquiry and Itasca Images is entitled to discovery

10

of those facts. *See Viacom*, 676 F.3d at 40. Itasca Images has shown a need for the documents and their relevance. Shutterstock has not established that limiting production to intellectual property-related documents is necessary to avoid undue burden. Therefore, Itasca Images' motion to compel RFP No. 24 is granted. Shutterstock shall fully respond and shall produce all policies and procedures related to Shutterstock's review, approval, and denial of contributors' content. While Shutterstock shall produce documents related to the application of its review procedures to the photographs at issue, it need not produce documents showing application of its review procedures to other contributors.

**VI.    Request for Production No. 26**

Itasca Images' RFP No. 26 seeks documents regarding differences in the rate of fraud or copyright infringement associated with particular countries or geographic regions. Flaherty Decl. Ex. 2, at 14. Itasca Images argues this information is relevant to whether Shutterstock had red flag knowledge and willfulness. Pls. Mem. 45. Shutterstock objects to the request as vague, overbroad, and unduly burdensome and further states that it has no documents responsive to the request. Flaherty Decl. Ex. 2, at 14.

The Court finds the information regarding fraud and infringement is not relevant and is not discoverable. Itasca Images has failed to demonstrate how the information tends to establish whether Shutterstock knew of "facts or circumstances from which infringing activity is apparent." Such information would not make it objectively obvious to a reasonable person that Itasca Images' copyrights were being infringed. *UMG Recordings, Inc.*, 718 F.3d at 1025. Additionally, Shutterstock has already stated it does not have responsive documents. Flaherty Decl. Ex. 2, at 14. Although Itasca Images contends Shutterstock is withholding responsive documents, this Court accepts Shutterstock's representation that it has fully produced all materials that are discoverable.

11

*Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 637 (D. Minn. 2000). Therefore, the motion to compel a response to RFP No. 26 is denied.

## ORDER

The Court, being duly advised in the premises, upon all the files, records, and proceedings herein, now makes and enters the following Order.

IT IS HEREBY ORDERED:

1. Plaintiffs' Motion to Compel [Dkt. No. 51] is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a) Itasca Images' Motion to Compel Interrogatory No. 2 and RFP Nos. 2, 17, 18, 22, 23, and 24 is granted. Shutterstock shall respond to those discovery requests within 60 days of this Order.

    b) Itasca Images' Motion to Compel RFP No. 26 is denied.

Dated: November 22, 2021          s/David T. Schultz  
                                                                  DAVID T. SCHULTZ  
                                                                  U.S. Magistrate Judge

CASE 0:21-cv-00923-GJRV-DTS Document 136 Filed 11/22/21 Page 12 of 13