# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELLIOT MCGUCKEN, | Civil Action No.: 1:22-cv-00905-GHW |
| Plaintiff, | **PLAINTIFF'S RULE 26(a)(2) EXPERT DISCLOSURES** |
| v. | |
| SHUTTERSTOCK, INC., et al., | |
| Defendants. | |

**PLEASE TAKE NOTICE THAT**, pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure, Plaintiff hereby provides his initial disclosure of experts.

Plaintiff makes these disclosures without waiving, and expressly reserving, any and all applicable privileges and immunities. Plaintiff reserves the right to further amend these disclosures pursuant to the applicable Federal Rules of Civil Procedure.

Plaintiff hereby identifies and discloses his expert witnesses as follows:

## A.   RETAINED EXPERTS:

Below is an identification of Plaintiff's retained experts. A written report containing the conclusions and opinions of each expert, as well as the facts and data relied upon, is submitted herewith as Exhibit 1.

1.   Thomas Maddrey, 6333 E. Mockingbird Lane, Suite 167-476, Dallas, TX 75214. Thomas Maddrey's billing rate is $650 per hour worked. His compensation is not contingent on the outcome of this case.

## B.   NON-RETAINED EXPERTS:

Plaintiff does not currently have any non-retained experts to identify.

In addition to the above, Plaintiff hereby adopts and incorporates herein by reference the

1



Exhibit 1

expert disclosures of each and every other party to these proceedings.

Plaintiff further reserves the right to call as witnesses at trial any and all parties and percipient witnesses to the events at issue in this litigation, and to present the opinions of such individuals who are herein and additionally disclosed as possible expert opinion witnesses.

Plaintiff reserves the right to supplement this expert witness designation and to call at trial any additional or supplemental witnesses.

Plaintiff reserves the right to call at trial rebuttal witnesses who are not included in this expert witness designation, as necessary.

Date: October 4, 2022          By:    _____

Scott Alan Burroughs, Esq.
Laura M. Zaharia, Esq.
DONIGER / BURROUGHS
Attorneys for Plaintiff

2

## EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ELLIOT MCGUCKEN, an individual | ) | Case No. 1:22-CV-00905-GHW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHUTTERSTOCK, INC., | ) | **EXPERT REPORT OF** |
| a Delaware corporation, and | ) | **THOMAS MADDREY** |
| | ) | |
| DOES 1-500, | ) | |
| | ) | |
| Defendants. | ) | **SUBMITTED OCTOBER 04, 2022** |

Expert Report of Thomas Maddrey
Elliot McGucken v. Shutterstock, Inc. *et. al.*
Case No. 1:22CV-00905GHW
October 04, 2022
Page 2 of 34

## INTRODUCTION

I have been engaged by Plaintiff Elliot McGucken ("Plaintiff") to provide expert testimony in the above-captioned matter brought by Plaintiff against Defendants Shutterstock, Inc., *et. al.* (collectively, "Shutterstock", or "Defendants"). Plaintiff has asked me to opine on issues related to the photographic industry, professional photographic licensing, copyright infringement, image licensing and valuation, and professional standards related to the same.

The opinions below are based on my experience as a commercial, editorial, and fine art photographer, as an attorney specializing in copyright law, in my role as General Counsel & Head of National Content and Education for the American Society of Media Photographers, and as a frequent author, speaker, and presenter on matters relating to professional photography, licensing, and copyright.

In addition, I have had the opportunity to review many of the materials currently available in this case, and my examination of these materials helped to inform my specific opinions. If additional facts, materials, or circumstances become known or are made available to me after the rendering of this report, I respectfully ask for the right to amend or supplement this document as required to fully encompass the relevant facts.

Subject to the above, if I were to be called upon as a witness in this case, I would, based on my qualifications and experience, make the following statements:

## I.    QUALIFICATIONS

I currently serve as General Counsel & Head of National Content and Education for the American Society of Media Photographers ("ASMP"), one of the nation's oldest and largest commercial photography trade associations.[1] For more than seventy-five years, this 501(c)(6) professional trade association has had as its mission, in part, to support visual creators, and specifically photographers, by educating them on business, licensing, and copyright practices, and advocating for sound implementation of copyright policy and professional standards for photographers. Each week I review, edit, and discuss licenses for photographers, and in my photo career as well as my professional career I have worked on more than 1,000 licenses in the photographic industry.

---

[1] AMERICAN SOCIETY OF MEDIA PHOTOGRAPHERS. http://www.asmp.org (last visited October 1, 2022).

Expert Report of Thomas Maddrey
Elliot McGucken v. Shutterstock, Inc. *et. al.*
Case No. 1:22CV-00905GHW
October 04, 2022
Page 3 of 34

As part of my role with ASMP, I regularly interact with members who have questions about licensing, copyright, and other legal and business aspects of photography. I have developed and regularly present a slate of educational webinars, videos, and writings to serve members in their pursuit of the best practices in the industry. In the last calendar year, I have spoken with more than 300 ASMP members directly and had attendance at my webinars and seminars well into the thousands of working, professional photographers.

Additionally, I serve as a Director on the Board of the Copyright Alliance where I also am part of the Amicus Briefing Committee, and I am the Designated Representative to the Authors Coalition of America as well as the Coalition of Visual Artists. Further, I serve as Chair of the Entertainment, Art, and Sports Law Section of the Dallas Bar Association. I am a member in good standing of the Bar of the State of Texas, the United States Supreme Court, and the 2nd, 4th, 5th, and 9th Circuit Courts of Appeals.

A selection of my published works and speaking engagements include:

Selected Publications

- Thomas B. Maddrey, Photography, Creators, and the Changing Needs of Copyright Law, 16 SMU Sci. & Tech. L. Rev. 501 (2013).

- Thomas Maddrey, Does Mitigation Matter in Copyright Infringement Suits?  The Fifth Circuit Weighs In, Dallas Bar Association, Headnotes, March 2021.

- Thomas Maddrey, Copyright in the Age of Social Media, Dallas Bar Association Headnotes, March 2020.

- Thomas Maddrey, How the Music Modernization Act Changes the Law, Dallas Bar Association Headnotes, March 2019.

- Thomas Maddrey, Media Licensing Tips and Pitfalls, Dallas Bar Association Headnotes, March 2018.

Selected Recent Presentations

- (2022) Featured Panelist, The 2022 Supreme Court IP Review, Presented by Chicago-Kent College of Law.

Expert Report of Thomas Maddrey
Elliot McGucken v. Shutterstock, Inc. *et. al.*
Case No. 1:22CV-00905GHW
October 04, 2022
Page 4 of 34

- (2022) Featured Panelist, Learn About the Copyright Claims Board, An ASMP, TALA, and Copyright Alliance Panel.

- (2021) Featured Speaker, The CASE Act: Small-Claims Copyright Court for Creators, Dallas Bar Association.

- (2020) Featured Speaker, Copyright Year in Review, 58th Annual Conference on Intellectual Property Law, Center for American and International Law.

- (2020) Featured Speaker, Instagram, Photography, and Automatic Sublicenses CLE Program, Dallas Bar Association.

- (2019) Featured Speaker, Copyright in the Arts, 57th Annual Conference on Intellectual Property Law, Center for American and International Law.

My full Publication and Selected Speaking Engagement list is included in my Curriculum Vitae, a copy of which is designated **Appendix 1**.

## II.    PRIOR TESTIMONY

*Travis Duncan v. Blackbird Products Group, LLC*
United States District Court, Western District of Missouri, Southern Division
Case No.: 17-03404-CV-S-BP

*Scott Gunnells v. Michael Joseph Teutul, et. al.*
United States District Court, Southern District of New York
Case No.: 1:19-cv-05331-JSR

*Mark Seliger v. Breitbart News Network, LLC, et. al.*
United States District Court, Southern District of New York
Case No.: 1:20-cv-02860-ER

*Mark Seliger v. Oath, Inc., et. al.*
United States District Court, Southern District of New York
Case No.: 1:20-cv-02966-DLC

*Elliott McGucken v. Newsweek, LLC, et. al.*
United States District Court, Southern District of New York
Case No.: 1:19-cv-09617-KPF

Expert Report of Thomas Maddrey
Elliot McGucken v. Shutterstock, Inc. *et. al.*
Case No. 1:22CV-00905GHW
October 04, 2022
Page 5 of 34

*Itasca Images, LLC, et. al. v. Shutterstock, Inc., et. al.*
United States District Court (District of Minnesota)
Case No.: 21-cv-287 (JRT/DTS)

### III.   COMPENSATION

For this matter, I am charging my current rate of $650.00 per hour worked. My compensation is not contingent upon, or related in any way to, the outcome of this matter.

### IV.   ASSUMPTIONS

Plaintiff's Counsel provided certain assumptions on which I was to rely to form a base of facts from which I could render my opinions. These assumptions are itemized below.

      a.   ZCool, HelloRF.com, TinEye, and StockFresh are all business partners of Shutterstock that access images via the Shutterstock API.

### V.   MATERIALS CONSIDERED

In preparing this Expert Report (the "Report"), I have evaluated and base the opinions herein on the materials and documents listed in **Appendix 2**.

### VI.   DISCUSSION AND OPINIONS

This matter presents multiple, interrelated questions of photographic industry standards, licensing, online platforms, best practices, and other interrelated topics.

#### A.   Background & Facts

Plaintiff Elliot McGucken is a nature and fine art photographer based in Los Angeles, CA. Defendant Shutterstock, Inc. is a stock photography company, in the business of selling photographs ("Shutterstock"). Shutterstock competes in the same editorial, commercial, and general image licensing market with both other stock photography companies, as well as individual photographers and creators like McGucken. At issue in this matter are 325 images, identified in Exhibit 1 to Plaintiff's First Amended Complaint (Document No. 17-3, 17-4, and 17-5). The works at issue are identified fully in **Appendix 3**. These 325 images were purchased by users from the

Expert Report of Thomas Maddrey
Elliot McGucken v. Shutterstock, Inc. *et. al.*
Case No. 1:22-CV-00905-GHW
October 04, 2022
Page 6 of 34

---

Shutterstock platform a total of 938 times.[2] The proceeds from these 938 license sales were collected by Shutterstock and further paid to three "contributors" who uploaded these works: Moajjem Hossain (username "Hane Street", 935 licenses sold)[3], Gouranga Charan Bishoi (2 licenses sold)[4], and Muhammad Raza (username "Raza76j", 1 license sold).[5] The "Hane Street" account was suspended and the account marked as "fraud" on February 11, 2021.[6] The "Raza76j" account was "disabled" on April 18, 2022.[7]

McGucken attempted to have the works removed that he identified as infringing through letters, takedown notices, and other correspondence from multiple law firms in December of 2020, January of 2021, and February of 2022. In his efforts, McGucken followed many of the steps and processes outlined by ASMP and others in the industry to seek resolution to an infringement, including documenting the infringement, sending letters, sending DMCA takedown notices, and, if needed, seeking legal representation.

## B. Photography, Exclusive Rights, and Infringement

Photographs have been accepted and protected by U.S. copyright law since the late 19th century.[8] To obtain a copyright in a work, an author must fulfill four requirements. The work must be an: (i) original; (ii) work of authorship; (iii) that is fixed; and, (iv) in a tangible medium of expression.[9] It is generally accepted that digital photographs fulfill these requirements at the moment the shutter is pressed, and the file is written to the memory card. This is the moment that copyright protections attach to photographic works.

### i. Copyright Statute as Applied to Photography

In its current iteration, U.S. copyright law is codified in Title 17 of the United States Code. As part of these statutes, 17 U.S.C. § 106 describes the "exclusive rights in copyrighted works" that are granted to copyright owners. These include the rights:

---

[2] *See* Documents Produced, "License Type" Excel Worksheet, Bates No. STK001139.

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] Documents Produced, Bates No. STK005329 – STK005330.

[7] Documents Produced, Bates No. STK005336 – STK005337.

[8] See generally, Burrow-Giles Lithographic Company v. Sarony, 111 U.S. 53 (1884).

[9] 17 U.S.C. § 102.

**(1)** to reproduce the copyrighted work in copies or phonorecords;

**(2)** to prepare derivative works based upon the copyrighted work;

**(3)** to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

**(4)** in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

**(5)** in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

**(6)** in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.[10]

Photographs are granted all of these rights, however, once you exclude those that are not directly applicable (such as 17 U.S.C. § 106 (6)), you are left with a set of rights that only the copyright owner can exercise. These include the right to REPRODUCE the work, the right to PREPARE DERIVATIVE WORKS, the right to DISTRIBUTE COPIES of the work (to the public by sale or other transfer of ownership, or by rental, lease, or lending), and the right to PUBLICALLY DISPLAY the work. Those four primary exclusive rights are at the heart of this, and all, copyright infringement matters, and these rights are ingrained in the minds of photographers by organizations such as ASMP.[11]

### ii.   The Licensing Model for Professional Photographers

Many professional photographers price and sell their works under a common licensing model. The core of this model is that the photograph, once created, is then licensed based on a set of agreed upon terms to an end-user who displays the photograph. Photographic licenses are at the heart of professional photography. These licenses often are limited by common criteria, such as exclusivity, duration, geographic restrictions, and other various modifiers. ASMP publishes a book,

---

[10] 17 U.S.C. § 106 (1)-(6).

[11] See generally, ASMP Copyright Archives, https://www.asmp.org/category/copyright/ (last visited October 1, 2022).

Expert Report of Thomas Maddrey
Elliot McGucken v. Shutterstock, Inc. *et. al.*
Case No. 1:22-CV-00905-GHW
October 04, 2022
Page 8 of 34

now in its 8th edition, titled "PROFESSIONAL BUSINESS PRACTICES IN PHOTOGRAPHY" which describes in detail the licensing model and its most important considerations.[12]

In general, photographic licenses can be broken down into two main categories, "editorial" or "commercial". The PLUS Picture licensing glossary defines editorial use as: "in a periodical, online, on electronic media, presentation, and/or broadcast that is educational or journalistic in nature and does not promote a product, person, service, or company based on sponsorship."[13] Conversely, commercial use can be thought of as all uses which may promote a product, person, service, or company, or is used in any other fashion and medium. An industry standard axiom is that editorial uses pay the photographer less for the right to use the image than equivalent commercial uses. Roughly speaking, the payment to the photographer for the license is based on many factors, but one of the most important is the value of the photograph to the end user.

There is no specific limitation on what photographs may be licensed. Photographers routinely license works for use on, for example, an interior webpage to be no larger than 200 pixels on the longest side, or for use in a national ad campaign on billboards throughout the country. The size of the image does not make work any less eligible or any less worthy of copyright protection.

### iii.   Dr. Elliot McGucken

I had the opportunity to speak to Elliot McGucken as part of my preparation for this report.[14] McGucken's work is technically proficient, creatively nuanced, and compositionally excellent. His use of light and color, and his ability to photograph scenes of the natural world in new and different ways, show the work of a dedicated and passionate photographer. Not surprisingly, in our conversations he listed as some of his influences photographic luminaries such as Ansel Adams and Edward Weston. Both Adams and Weston were ASMP members during their lifetimes, and the influence of these creators is certainly still felt today by photographers such as McGucken.

McGucken described his photographic "workflow" to me; that is, what the process he undertakes from the time he packs his camera bag to leave for a photoshoot to the time he determines an image is finalized. In my experience, McGucken's workflow comports with best

---

[12] American Society of Media Photographers, PROFESSIONAL BUSINESS PRACTICES IN PHOTOGRAPHY (8th Ed. 2008).
[13] PLUS Glossary, 1833-00-00-0100, http://www.useplus.com/useplus/glossary_term.asp?pid=1&tmid=18330000 (Last visited October 4, 2022).
[14] Interview via Conference Call with Elliot McGucken, Monday, September 26, 2022.

Expert Report of Thomas Maddrey
Elliot McGucken v. Shutterstock, Inc. *et. al.*
Case No. 1:22-CV-00905-GHW
October 04, 2022
Page 9 of 34

practices in the industry at each step, and his efforts are designed to allow the consistent, high quality, repeatable results he obtains.

An objective measure of the quality of images, especially in the realm of nature and wildlife images, is to look to awards and recognition given by outside organizations. Here, McGucken has an impressive, and frankly remarkable, pedigree. In the "Epson International Pano Awards", McGucken has won 73 different awards eclipsing photographers from around the world.[15] Some of the most famous living photographers have entered this contest and won, at most, a handful of prizes. McGucken stands alone in this arena. The awards he has won show recognition from his peers and industry leaders that the work McGucken creates is certainly above average in his field.

## C. Shutterstock's Review and Approval Process, User Experience, and API.

The core of Shutterstock's business is its website and associated interface. From their website, Shutterstock delivers approved images to users for purchase. Germane to this Report, I will examine more closely the following primary areas or topics related to Shutterstock's interface and website: (i) the Shutterstock Review and Approval Process; and, (ii) the Shutterstock User Experience.

### i. The Shutterstock Review and Approval Process

Prior to any images becoming available to the public, uploaded works must first be reviewed and approved by Shutterstock. This review is specific and particular and Shutterstock's volitional conduct in this process is clear from the available materials. Once uploaded by a contributor, the images are evaluated by a Shutterstock employee. As noted in the "Contributor Success Guide", Shutterstock will reject images for myriad reasons, including poor "lighting", lack of "focus", and poor "composition".[16] This curation and review process evinces adherence to standards of both objective quality (such as focus, a definable measure) and subjective quality (such as composition, a holistic impression of the image) for inclusion in the Shutterstock collection.

The purpose for the review of the image is not simply for aesthetic effect, though that is clearly an independent benefit of the action. Rather, Shutterstock makes an explicit connection between the quality of its collection and the revenue generation that flows from their images, by

---

[15] Documents Produced, Bates No. MCG004198 – MCG004370.

[16] Documents Produced, Contributor Success Guide, Bates No. STK001505.

Expert Report of Thomas Maddrey
Elliot McGucken v. Shutterstock, Inc. *et. al.*
Case No. 1:22-CV-00905GHW
October 04, 2022
Page 10 of 34

stating, "[w]e're breaking the mold of traditional stock. Shutterstock is interested in images that tell and sell stories. Content that earns money has the following characteristics. **Quality.** Your image is sharp, and high-resolution. **Versatility.** Content has the ability to be used for a wide variety of purposes. **Unique.** You've created and uploaded a unique scene unlike anything else."[17]

These acts of volitional conduct coupled with the purpose of that conduct being designed for revenue-generation is akin to the many photographer representatives ("reps") that are part of the professional photography industry.[18] These reps are hired by photographers to: (i) review the photographer's portfolio; (ii) provide feedback on the images; (iii) select images to retain and display in the portfolio; and, (iv) in turn present that portfolio to potential clients who then pay for the photographer's services. For their work in this process, the rep is paid either a portion of the fee collected by the photographer, or a flat fee for their services.

### ii.    The Shutterstock User Experience

The Shutterstock homepage allows customers to search its photographic database using a prominent search bar. Here, by typing in keywords or descriptions of what images you are seeking, one can find a selection of images pertaining to that subject. Once a specific image is chosen and clicked on, the interface leads to the Asset Detail Page. The Asset Detail Page shows a copy of the image selected prominently in the center of the page.[19] By clicking on the image itself, the customer can see the same image in a screen-filling, larger view. Across the top of the image are five buttons: (a) Similar; (b) Save; (c) Try; (d) Edit; and, (e) Share. To the immediate top-right of the image is an additional button, highlighted in red, titled, "Download for free".[20] The image on the Asset Detail Page is embossed with a "watermark", or a writing that is suspended over the image, and also part of the image. On the Asset Detail Page, this watermark is the logo, spelling "shutterstock".[21]

---

[17] *Id.* at STK001497.

[18] See generally, Bill Cramer and Nadia Kiyatkina, Expert Advice: The Photographer/Agent Relationship (July 14, 2020), https://wonderfulmachine.com/article/expert-advice-the-photographer-agent-relationship/ (last visited October 1, 2022).

[19] *See* Documents Produced, Shutterstock User Experience, Bates No. MCG003596 – MCG003597.

[20] *Id.*

[21] *Id.*

Expert Report of Thomas Maddrey
Elliot McGucken v. Shutterstock, Inc. *et. al.*
Case No. 1:22-CV-00905-GHW
October 04, 2022
Page 11 of 34



(EXAMPLE OF SCREENSHOT SHOWING WATERMARK AND SET OF BUTTONS ABOVE IMAGE. MCG003596.)

Recalling the exclusive rights noted in Section VI.B.i. above, this detail page on its own would be considered by industry standards to be a:

- **Reproduction.** The image is copied and reproduced from its original format in which it "can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device."[22]

- **Public Display.**[23] The image is displayed to the user or general public on their computer screen. The website is open and accessible to the public.

---

[22] 17 U.S.C. § 106 (1); 17 U.S.C. § 101.

[23] 17 U.S.C. § 106 (5); 17 U.S.C. § 101. "To 'display' a work means to show a copy of it, either directly or by means of a film, slide, television image, or any other device or process or, in the case of a motion picture or other audiovisual work, to show individual images nonsequentially."

Expert Report of Thomas Maddrey
Elliot McGucken v. Shutterstock, Inc. *et. al.*
Case No. 1:22-CV-00905-GHW
October 04, 2022
Page 12 of 34

- **Distribution.**[24] Further, this public display is not predicated on having logged into the site; anyone can seemingly access the Asset Display Page at any time. This, in effect, creates no limitations on to whom the work is distributed or made available. Distribution is further conveyed by giving a user the option to "Download" the work, which is for sale.

Due to the use of the image as described on the primary portion of the Asset Detail Page, it is my opinion based on my knowledge and experience that Shutterstock's actions violate multiple exclusive rights owned by the copyright holder and would be generally accepted to constitute copyright infringement.

### iii. The Shutterstock API

Shutterstock's use of its image library does not end at the limits of its website. Through its Application Programming Interface (API), Shutterstock makes available to third parties the images it gathers in its collection. One definition of an API is: "a set of programming code that enables data transmission between one software product and another. It also contains the terms of this data exchange."[25] Shutterstock itself says: "The Shutterstock API provides access to Shutterstock's library of media, as well as information about customers' accounts and the contributors that provide the media. It allows customer platforms to search for media, view information and previews for the media, and license and download media."[26]

Through its API, Shutterstock can reproduce unlimited copies of the works within its library, and make those copies available, automated and on-demand, to any person or company who implements the certain set of programming language required. After the manual review and approval of images, the work then goes into Shutterstock's "library of media". Once there, anyone with API access can view and download the copies and display them to their customers. Despite this, API access has different subscription levels at Shutterstock, with the basic level currently costing no money at all to have full access to search the Shutterstock library.[27]

---

[24] 17 U.S.C. § 106 (3); 17 U.S.C. § 101.

[25] What is an API? Definitions, Types, Specifications, Documentation, https://www.altexsoft.com/blog/engineering/what-is-api-definition-types-specifications-documentation/ (last visited October 1, 2022).

[26] API Reference Overview, https://api-reference.shutterstock.com/#overview (last visited October 1, 2022).

[27] API Reference Subscriptions, https://api-reference.shutterstock.com/#subscriptions (last visited October 1, 2022).

Expert Report of Thomas Maddrey
Elliot McGucken v. Shutterstock, Inc. *et. al.*
Case No. 1:22-CV-00905-GHW
October 04, 2022
Page 13 of 34

API subscribers must agree to the API Terms of Service.[28] This is the agreement between Shutterstock and those who are using API, not those who are using the underlying images. And, importantly, this is not even between the Shutterstock contributor and the third-party. As part of the API Terms of Service, Shutterstock grants a license to those using the API:

> Shutterstock grants you a limited, non-exclusive, revocable, non-sublicensable and non-transferable license to access and use the API solely to develop, test, display, distribute and execute your Application and to make the Content available to Users of your Application. You may not monetize your Application without paying fees to Shutterstock or otherwise obtaining Shutterstock's express written consent.[29]

Shutterstock further requires that the API user enter into a valid contract with their customers. "The terms of that certain Platform User License, attached as Schedule A below, and expressly incorporated in this API TOS, must be agreed to by each of your Users by way of an enforceable contract."[30] Additionally, Shutterstock requires attribution, not to the contributor or the copyright owner, but to itself, in multiple ways: "Any Content previewed by Users through the Platform ('Preview Content') shall incorporate the Shutterstock watermark....The Platform interfaces through which Preview Content is accessed shall include a conspicuous attribution in substantially the following form: 'Powered by Shutterstock'".[31]

The use of the API framework allows for anyone to access Shutterstock's library of images. At that point, the API user is bound by the API Terms of Service, but with respect to infringement, the damage has already occurred. By creating an ecosystem wherein any individual or company can request from Shutterstock, and have delivered by Shutterstock, copies of images on-demand, the infringing works have now been reproduced, displayed, and offered for sale by others not even in privity with the contributor, outside of Shutterstock. Based on my knowledge and experience this constitutes an infringement on the exclusive rights of the copyright holder.

Through the use of its API, Shutterstock allows its business partners to access and display its collection of images on websites throughout the world. This further distribution of the copies of the works again constitutes an infringement upon the rights of the copyright holder, as the works have

---

[28] https://www.shutterstock.com/developers/api-terms.
[29] *Id.*
[30] *Id.*
[31] *Id.*

Expert Report of Thomas Maddrey
Elliot McGucken v. Shutterstock, Inc. *et. al.*
Case No. 1:22-CV-00905GHW
October 04, 2022
Page 14 of 34

yet again been reproduced and distributed to others, this time, not to the end-user, but rather to Shutterstock's business partners for purposes of additional sales and revenue. Two of these business partners are HelloRF.com (owned by Bejing ZCool Internet Technologies Co. LTD.), and StockFresh. These third-party sites are in a business relationship with Shutterstock such that they utilize the Shutterstock API to display images in the Shutterstock Library that are then sold via its own website. Each page on the partners websites must "incorporate the Shutterstock watermark" for all content previewed by a customer, and on each searchable page requires HelloRF.com and StockFresh to include the phrase "Partner of Shutterstock" with the word "Shutterstock" being hyperlinked to www.shutterstock.com.[32] This requirement is listed for anyone who wishes to utilize Shutterstock's API in the API Terms of Service.[33]

A third company who utilizes the Shutterstock API is TinEye, a company that performs "reverse image searching", allowing a search for images that are an exact or similar match to an uploaded work.[34] Through its API, Shutterstock allowed TinEye to query its image collection, and actively promoted the content provided by the Shutterstock API to be used in the search results. TinEye is a popular tool for photographers and other content creators to use when determining if their works have been infringed. By uploading their images into the platform, a photographer may find multiple locations on the internet where their works reside.

The relationships with business partners such as HelloRF.com, StockFresh, and TinEye show that Shutterstock actively sought partnerships with companies who would further reproduce, display, and distribute its imagery to others. McGucken's work, via users Hane Street and others, were distributed, displayed, and reproduced not only on the Shutterstock platform, but also on these third-party sites via Shutterstock's API, further compounding the reach of the infringement.[35]

### iv.    Removal of Copyright Management Information

Photographers rely on the inclusion of "metadata" to organize, sort, and track their works both inside their studios and across the internet. Metadata is defined as: "data embedded or stored within a digital image file that provides information about copyright, credit, restrictions, captions,

---

[32] *See e.g.* Documents Produced, Bates No. MCG001859.

[33] API Terms and Conditions, https://www.shutterstock.com/developers/apiterms (last visited October 2, 2022).

[34] Home, https://www.tineye.com (last visited June 2, 2022).

[35] *See e.g.* Documents Produced, Bates No. MCG001140–MCG001151.

Expert Report of Thomas Maddrey
Elliot McGucken v. Shutterstock, Inc. et. al.
Case No. 1:22CV-00905-GHW
October 04, 2022
Page 15 of 34

keywords, or other quality characteristics, etc."[36] This metadata is written by the camera to the actual image file (or sidecar file) and can include information such as the shutter speed, aperture, focal length, camera body used, and more. In my conversation with McGucken, he specifically noted using automated metadata population to include the copyright symbol, his name, and contact information.

Another form of management that photographers undertake is that of choosing to include or exclude a "watermark"; that is a lower opacity word or image superimposed over the image such that the person who created it can be visually identified. Many photographers choose to include watermarks, hoping that it will deter infringement. Many others choose to forgo adding a watermark citing a diminishment in visual impact in their imagery. Here, Shutterstock appears to always add a large "Shutterstock" watermark to each image selected for its library.

Removing the information contained in the metadata and superimposing a watermark are both forms of altering the copyright management information that was specifically chosen by McGucken as part of his standard business practice.

### D. Shutterstock License Agreements to End Users

Shutterstock customers agree to a set of terms and conditions when creating an account on the site, and further agree to a license agreement when downloading the image. Shutterstock has three types of licenses: Standard, Enhanced, and Premier. Premier licenses are custom created by Shutterstock. Shutterstock describes the difference between Standard and Enhanced licenses as follows: the Standard license limits total distributions to fewer than 500,000 reproductions or impressions (or to a Production Budget of less than $10,000), and the Enhanced license "permits the use of your content on merchandise for resale."[37]

In this matter, Shutterstock offered for licensing, and ultimately did license 938 copies of works owned by Plaintiff to many end-users. Each of these entities viewed, purchased, and received from Shutterstock a license for the images referenced. Each also displayed the received copies of the

---

[36] PLUS Glossary, 3240-00-00-0100, http://www.useplus.com/useplus/glossary_term.asp?pggl=1&tmid=18330000, (last visited October 4, 2022).

[37] Shutterstock Blog, What You Need to Know About Licensing Your Work, https://www.shutterstock.com/blog/protecting-your-content-what-you-need-to-know-about-licensing-your-copyright, (last visited October 2, 2022).

Expert Report of Thomas Maddrey
Elliot McGucken v. Shutterstock, Inc. *et. al.*
Case No. 1:22CV-00905GHW
October 04, 2022
Page 16 of 34

images. The actions of these entities, subsequent to the infringing distribution of copies by Shutterstock, infringed on the exclusive rights granted the copyright holder.

Specifically, granted licenses to the works identified as McGucken's break down in the following way:

| Row Labels | Count of License | Average of Asset Price USD | Sum of Asset Price USD2 | Average of Commission USD | Sum of Commission USD2 |
|---|---|---|---|---|---|
| enhanced | 12 | $58.17 | $698.01 | $16.27 | $195.26 |
| integrated_media | 11 | $2.33 | $25.59 | $0.65 | $7.20 |
| media | 4 | $11.38 | $45.53 | $3.10 | $12.41 |
| media_digital | 5 | $10.11 | $50.56 | $2.91 | $14.56 |
| multi_share | 30 | $0.45 | $13.40 | $0.14 | $4.11 |
| premier | 1 | $92.41 | $92.41 | $27.72 | $27.72 |
| standard | 875 | $1.38 | $1,206.10 | $0.40 | $351.13 |
| Grand Total | 938 | $2.27 | $2,131.60 | $0.65 | $612.39 |

("LICENSE TYPE" EXCEL WORKSHEET. STK001139)

This breakdown shows that out of the 938 licenses granted, 875 (93.3%) of them were "Standard Licenses", with only 12 (1.3%) being "Enhanced" licenses. There was one "Premier" license granted. The remaining licenses are undefined in the materials I have been asked to review. This table, however, does not tell the whole story. Shutterstock, like many stock photography websites, offers subscription plan pricing where a user can pre-purchase a bundle of licenses for a set amount, or subscribe monthly for a certain number of downloads to be allocated to the user for that month.[38] The "All-In-One Subscription", for example, costs $49.00 / month (no contract) for the ability to download 10 images.[39] Higher numbers of images, or a user agreeing to a longer subscription term affect the monthly fee paid to Shutterstock. It is clear that 938 licenses to work owned by McGucken were granted to Shutterstock users. It is unclear how many of those users were subscribers to a monthly service allocating them works, or had purchased a "Pack" of images in advance.

### E. Damages

Copyright infringement is clearly deleterious to photographers, and it is often a copyright infringement action in federal court that is the only recourse for the damages incurred. Title 17 of the United States Code allows for "Actual Damages and Profits" or "Statutory Damages."[40] With

---

[38] *See* generally, Pricing, https://www.shutterstock.com/pricing, (last visited October 2, 2022).
[39] *Id.*
[40] 17 U.S.C. § 504(b).

Expert Report of Thomas Maddrey
Elliot McGucken v. Shutterstock, Inc. *et. al.*
Case No. 1:22CV-00905-GHW
October 04, 2022
Page 17 of 34

respect to Actual Damages and Profits, there are two calculations generally accepted: (1) what is the cost to the photographer for lost licensing fees that can be objectively determined by a fair market value analysis; and, (2) "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."[41]

In the alternative, statutory damages have twin aims, compensation and deterrence. Therefore, when determining statutory damages, the fair market value, infringer's revenue and profits, and other inputs that would be part of an actual damages and profits calculation can be considered. I will only examine Actual Damages below.

> i.    *Calculating Actual Damages.*

To calculate the damages incurred by McGucken, we can look towards three sources: McGucken's licensing and sales history, comparable images on other stock image websites, and the number of licenses and types sold by Shutterstock itself. Each can help determine a range of fees that might be expected to be charged by McGucken in the course and scope of his business.

As described in Section B.ii. above, license fees for rights-managed images can be broadly defined by the criteria of the license and the breadth of dissemination.[42] Some of the many variables determining license fees include:

| | |
|---|---|
| **Exclusivity** | (*e.g.* Exclusive, Non-Exclusive) |
| **Media** | (*e.g.* Consumer Magazine, Trade Periodical) |
| **Distribution Format** | (*e.g.* Printed, Digital) |
| **Duration** | (*e.g.* One-Time, One Year, Three Year) |
| **Geographic Restriction** | (*e.g.* North America, Europe) |

McGucken has provided an example of an active "exclusive photo license" that shows an exclusive, worldwide, perpetual license in all media for a total fee of $15,000.00.[43] This license is in a format that is often seen in the normal course and scope of the business of professional photography. Given the exclusivity constraint and the perpetual duration, this would be the highest amount of money for a license of which McGucken has provided evidence. Each one of the images at issue could be licensed in such a fashion only once (due to the exclusivity clause). This license,

---

[41] *Id*

[42] American Society of Media Photographers, <u>Professional Business Practices in Photography</u> 21-25 (7th ed. 2008) (discussing drafting licenses, permissions, and constraints).

[43] Documents Produced, Bates No. MCG000756 – MCG000761.

Expert Report of Thomas Maddrey
Elliot McGucken v. Shutterstock, Inc. *et. al.*
Case No. 1:22-CV-00905-GHW
October 04, 2022
Page 18 of 34

however, has no restrictions on the way that the purchaser can utilize the work. It could be used, for example, as the basis for a commercial advertisement on billboards across the country. Therefore, for the 325 images at issue in this matter, were each one to be exclusively licensed, the highest amount McGucken could reasonably be expected to receive is $4,875,000.00.

McGucken has also provided examples of his work being licensed for limited editorial purposes to news publications at far lower rates, and often, for specific images and specific purposes, for free.[44] Contrast this editorial use with the commercial use defined above. Traditionally, broad licenses such as those McGucken wrote for exclusive use command higher dollars than those for editorial uses. In one specific example, McGucken was offered $250.00 to use his works as part of a news article about a natural phenomenon he photographed.[45] After an offer and acceptance, the work was licensed for limited editorial use for $250.00 for 20 images or $12.50/image for a one-time-use.[46] The value to McGucken comes not only through the dollars generated, but also through the publicity proffered. Photographers often choose to license their work to further their careers, and this type of license is evidence of that, according to McGucken. Note also that this is a non-exclusive license, meaning McGucken can license the same image to different groups as many times as is requested. This limited duration, non-exclusive, limited scope license helped McGucken's name reach more viewers, one of his stated primary purposes in granting these licenses.

Turning to other sources of licensing information, we can also examine comparable pricing on editorial or commercial based image licenses from other sources, such as that from Getty Images. Getty Images is the industry standard for both editorial and commercial image licensing. Getty will sell you a royalty-free, editorial use license of an image for $499.00.[47] If you wish to use that same image for advertising, you can purchase a five-year advertising use for print, display, or TV for $14,695.00.[48] Both of these exemplar licenses are non-exclusive, meaning the license can be sold over and over again. Because these images were licensed non-exclusively, the correct measure of damages is not the 325 images at issue, but since each of those 325 could be licensed as many times as McGucken wished, the measure should be the 938 licenses granted on McGucken's work by

---

[44] Documents Produced, Bates No. MCG004394 – MCG004418.

[45] *Id.*

[46] *Id.*

[47] *See, e.g.* https://www.gettyimages.com/detail/news-photo/people-take-the-first-official-walk-on-the-skywalk-billed-news-photo/73645703 (last visited October 2, 2022).

[48] *Id.*

Expert Report of Thomas Maddrey
Elliot McGucken v. Shutterstock, Inc. *et. al.*
Case No. 1:22-CV-00905-GHW
October 04, 2022
Page 19 of 34

Shutterstock, licenses McGucken was deprived of realizing. For standard editorial use, Getty's $499.00 price would result in a total license fee of $468,062.00.

Note that two outliers exist, the Getty Commercial license fee and the McGucken publicity editorial fee. Based on my conversation with McGucken, both of these values are not reasonable in practice. It is neither probable nor expected that McGucken would offer all of his licenses for $12.50 / image or less, and it is equally unlikely that he would realize an average value of $2,939.00 / yr. for each of the 938 images. By excluding these two categories of possible license amounts, one high, and one low, we are left with a commercially reasonable set of values.

Based on the above analysis, we can develop the following chart of possible values for the licensing value of the images infringed:

| Type of License | Number of Images Affected | Value of Individual License | Total |
|---|---|---|---|
| Non-Exclusive Basic Editorial (Getty Model) | 938 (Number of licenses granted by Shutterstock) | $499.00 | $468,062.00 |
| Exclusive, Perpetual, Commercial License (McGucken Model) | 325 (Total number of licenses that could possibly be granted) | $15,000.00 | $4,875,000.00 |
| **NOT INCLUDED** Non-Exclusive Publicity Editorial License (McGucken Model) | 938 (Number of licenses granted by Shutterstock) | $12.50 | $11,725.00 |
| **NOT INCLUDED** Non-Exclusive Commercial License (Getty Model) | 938 (Number of licenses granted by Shutterstock) | $14,695.00 / 5-year term. (Avg. $2,939.00 / yr.) | $2,756,782.00 per year. |

Therefore, based on my experience in the photography industry, and after removing outlier data not commercially appropriate, I would assert damages owed to McGucken for his licensing fees to be valued between $468,062.00 and $4,875,000.00.

Expert Report of Thomas Maddrey
Elliot McGucken v. Shutterstock, Inc. *et. al.*
Case No. 1:22CV-00905GHW
October 04, 2022
Page 20 of 34

Finally, with respect to the profits derived by Shutterstock, we can examine the actual number of licenses that were sold of McGucken's work via the three named contributors. We know that Shutterstock sold 938 licenses to end-users. Some of these licenses are editorial in nature, and some provide additional rights.[49] All of the licenses, however, provide for non-exclusive use, meaning the same works can be sold multiple times. As mentioned above, while Shutterstock notes an "Average Asset Price" per license of $2.27, this does not include additional consideration to account for the number of licenses purchased through a Subscription. The least expensive subscription, billed per month, is $49.00 for access to 10 images.[50] This results in an additional value of $4.90 for at least some of the 938 licenses. While there is not enough data to fully understand how this affected Shutterstock's derived profits, it is clear that there is a fee to simply "get in the door."

For each one of the unique users who purchased one of the 938 licenses, Shutterstock made, at a minimum, $50.00 per user who subscribed. This average if $49.00 per subscriber is the lowest amount Shutterstock would have made in order to sell McGucken license to an end-user. On the other hand, a user who wishes to be able to download 750 images in a calendar year and wants to realize additional savings by paying the full yearly contract up front would pay $3,999.00. Multiplying these values by the estimated unique users who purchased the 938 licenses would give a range of $45,962.00 to $3,751,062.00 were each user to be on one of the listed subscription plans. Alternatively, a user forgo a subscription and could purchase a "Pack" of two images with a standard license for $29.00, or 25 images with a standard license for $229.00. Under this metric, extrapolated to all unique buyers of the 938 licenses, Shutterstock would collect between $27,202.00 and $214,802.00. More information would be needed to fully determine the profits realized by Shutterstock considering this metric.

## VII.   CONCLUSION

After a thorough review of the materials presented, and based on my knowledge and experience, the preceding analysis represents my opinions in this matter. Through its volitional conduct and behavior, Defendant Shutterstock infringed on Plaintiffs exclusive rights granted to

---

[49]  Documents Produced, Bates No. STK001139.
[50]

him under 17 U.S.C. § 106, namely the right to REPRODUCE the work, the right to PREPARE DERIVATIVE WORKS, the right to DISTRIBUTE COPIES of the work (to the public by sale or other transfer of ownership, or by rental, lease, or lending), and the right to PUBLICALLY DISPLAY the work. Further, Shutterstock removed Copyright Management Information in contravention of industry standard and practice. Finally, I estimate McGucken incurred actual damages between $468,062.00 and $4,875,000.00 in lost licensing revenue, plus Defendant's profits.

## VIII.   RIGHT TO SUPPLEMENT

I am aware that depositions of the parties have taken place, but at the time of this report being submitted, no finalized transcripts were provided or reviewed. If further testimony or document production occurs, or if any expert testimony is offered to support Defendant's defenses and counterclaims, I respectfully reserve the right to supplement this Report or provide rebuttal testimony at the request of Plaintiff.

Respectfully submitted,

Date:     October 04, 2022

Thomas Maddrey

# Appendix 1

# Curriculum Vitae of Thomas Maddrey

**Thomas Maddrey**
Curriculum Vitae

## Contact Information

6333 E. Mockingbird Ln.
Ste. 167-476
Dallas, TX 75214
tbm@maddreyconsulting.com

## About Thomas Maddrey

Thomas Maddrey is the General Counsel & Head of National Content and Education for the American Society of Media Photographers, one of the oldest and largest commercial photography trade associations in the United States. Previously, he was the founding member and principal attorney at Maddrey PLLC, a boutique copyright, art, and photography firm in Dallas, TX. Thomas is a member in good standing of the Bar of the Supreme Court of the United States, the Bar of the 2nd, 4th, 5th, and 9th Circuit Courts of Appeals, and the State of Texas.

Prior to becoming an attorney, Thomas was a professional commercial, editorial, and fine art photographer and photographic educator. He founded his own photography company, Tom Maddrey Images, as well as the Eclipse Photography Institute, an online and retail company that created courses and materials for working photographers. Thomas was trained at the Brooks Institute of Photography in Santa Barbara, CA.

In his role as General Counsel for ASMP, he has worked with over 250 photographers in the last calendar year to help answer and guide them in areas such as licensing, copyright, contracts, and business development. In his prior legal practice, he worked with over a hundred companies and authors in their copyright and general business matters. A regular author and educator both for the general public as well as other attorneys, Thomas also has been the lead or co-author and counsel of record on multiple appellate and U.S. Supreme Court amicus briefs in cases related to copyright and photography. His article "Photographers, Creators, and the Changing Needs of Copyright Law" has been cited by the Vanderbilt Journal of Entertainment and Technology Law, the Minnesota Journal of Law, and the Capital University Law Review, among others. He is regularly sought for interviews by Bloomberg Law and Law360 on copyright and photography matters.

**Work + Professional Experience**

American Society of Media Photographers                                      San Francisco, CA

  General Counsel and Head of National Content & Education, *March 2021 – Present*
  External General Counsel, *July 2016 – March 2021*
  - Work with more than 4000 professional commercial photographers to provide guidance on copyright, licensing, contracts and other industry-specific topics.
  - Maintain and organize all judicial and legislative advocacy activities related to photographic and copyright industries.

Maddrey PLLC                                                                                Dallas, TX

  Founder // Principal Attorney, *August 2015 – March 2021*
  - Founded full-service law firm dedicated to helping the "creative" community including photographers, visual artists, museums, collectors, galleries, and entrepreneurs and start-up companies.
  - Focused on copyright law, art law, and photography-specific clients.

Harrison & Hull, LLP                                                                    McKinney, TX

  Attorney, *May 2013 – August 2015*

Eclipse Photography Institute                                                          Dallas, TX

  CEO + Co-Founder, *2009 – 2011*
  - Established retail and online education portal for photographic community specializing in technical, marketing, and business training through DVD's and on-demand videos and courses.

Tom Maddrey Images                                                  Dallas, TX and Santa Barbara, CA

  Principal + Founder, *2006 – 2010*
  - Established commercial and fine art photography business specializing in editorial images.
  - Taught individuals through workshops and seminars throughout the U.S. and Canada.

**Amicus + Appellate Briefs Published**

<u>The Supreme Court of the United States Amicus Briefs</u>

Brief of Amici Curiae American Society of Media Photographers, Inc., National Press Photographers Association, American Photographic Artists, Joined By North American Nature Photography Association and Getty Images (US), Inc. In Support of Respondents, The Andy Warhol Foundation for the Visual Arts, Inc. v. Lynn Goldsmith and Lynn Goldsmith, LTD., 11 F.4th 26 (2nd Cir. 2021) (No. 21-869).
- Counsel of Record and Co-Author

Brief of Amici Curiae American Society of Media Photographers, Inc. and California Society of Entertainment Lawyers Joined by Twelve Creator Rights Organizations, In Support of Petitioner, *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P., et al.,* 959 F.3d 1194 (9th Cir. 2020) (No. 20-915).
- Counsel of Record and Co-Author

Amicus Brief of American Society of Media Photographers, Inc. and California Society of Entertainment Lawyers Joined by Five Other Creator Rights Groups in Support of Petitioner, *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P., et al.,* 959 F.3d 1194 (9th Cir. 2020) (No. 20-915).
- Co-Author

Amicus Curiae Brief in Support of Petitioner, *Geophysical Service, Inc. v. TGS-NOPEC Geophysical Co.,* 2020 WL 2621718 (2020) (No. 19-873) (Cert. Denied).
- Counsel of Record and Co-Author

Brief for the American Society of Media Photographers, Inc. and the National Press Photographers Association as Amicus Curiae in Support of Petitioners, *Allen v. Cooper,* 140 S.Ct. 994 (2020) (No. 18-877).
- Counsel of Record and Co-Author

Amicus Curiae Brief for American Society of Media Photographers, Inc., California Society of Entertainment Lawyers, American Photographic Artists, and Association of Real Estate Photographers in Support of Petitioner, *Gold Value International Textile, Inc. v. Sanctuary Clothing, LLC,* 140 S.Ct. 1294 (2020) (No. 19-708) (Cert. Denied).
- Counsel of Record and Co-Author

Brief for The American Society of Media Photographers, Inc. and The National Press Photographers Association as Amici Curiae in Support of Petitioner, *Rentmeester v. Nike,* 139 S.Ct. 1375 (2019) (No. 18-728) (Cert. Denied).

- Co-Author

Federal Court Appellate Amicus Briefs

Brief for Amicus Curiae The American Society of Media Photographers, Inc., in Support of Defendants-Counter-Claimants-Appellants, The Andy Warhol Foundation for the Visual Arts, Inc. v. Lynn Goldsmith and Lynn Goldsmith, LTD., 382 F.Supp.3d 312 (S.D. New York 2019) (2nd Cir, No. 19-2420).
- Counsel of Record and Co-Author

Brief for Amicus Curiae The American Society of Media Photographers, Inc. in Support of Appellants, American Society of Journalists and Authors, Inc. and National Press Photographers Association v. Xavier Becerra, 2020 WL 1434933 (C.D. Cal 2019) (9th Cir, No. 20-55408).
- Counsel of Record and Sole Author

Brief for Amicus Curiae American Society of Media Photographers, Inc. and National Press Photographers Association in Support of Plaintiff-Appellant, Brammer v. Violent Hues, 922 F.3d 255 (E.D. Va. 2019) (4th Cir., No. 18-1763).
- Co-Author

State Court Appellate Amicus Briefs

Amicus Brief of the National Press Photographers Association and the American Society of Media Photographers in Support of the Petition for Review, Jim Olive Photography v. University of Houston System, (Cause No. 01-18-00534-cv) (Tex. 2019) (No. 19-0605).
- Co-Author

## Selected Publications

American Society of Media Photographers, Feature Articles (Various)
    2016 - Present

Thomas B. Maddrey, Photography, Creators, and the Changing Needs of Copyright Law, 16 SMU Sci. & Tech. L. Rev. 501 (2013).

Thomas Maddrey, Does Mitigation Matter in Copyright Infringement Suits? The Fifth Circuit Weighs In, Dallas Bar Association, Headnotes March 2021 (Forthcoming).

Thomas Maddrey, Copyright in the Age of Social Media, Dallas Bar Association Headnotes, March 2020.

Thomas Maddrey, How the Music Modernization Act Changes the Law, Dallas Bar Association Headnotes, March 2019.

Thomas Maddrey, Media Licensing Tips and Pitfalls, Dallas Bar Association Headnotes, March 2018.

Thomas Maddrey, Copyright Infringement – Pre-Litigation Checklist, Dallas Bar Association Headnotes, March 2018.

Thomas B. Maddrey and Sammetria Goodson, Transformative Use v. Derivative Use: Will the Outcome of a Recent Lawsuit Test the Limits of Fair Use Doctrine, or Result in a Free-For-All?, American Society of Media Photographers, September 2017.

Thomas B. Maddrey, Copyright Registration Basics, Artists Uprising, August 2017.

Thomas B. Maddrey, Copyright: A Primer, Artists Uprising, August 2017.

## Professional Associations

Board Member
- The Copyright Alliance
- Arts Counsel Texas (Executive Committee)
- The Dallas Opera (Executive Committee)
- Entertainment, Art, and Sports Law Section, Dallas Bar Association (Chair)

Designated Representative
- Authors Coalition of America
- Coalition of Visual Artists

Member in Good Standing:
- The Copyright Society of the United States
- Dallas Bar Association
- Dallas Association of Young Lawyers
- Texas Bar Association
- American Bar Association
- American Society of Media Photographers

- Professional Photographers of America

## Selected Speaking Engagements

Thomas Maddrey has taught webinars and continuing legal education (CLE) courses, presented at conferences, and been featured in live and recorded programming at least 100 times in his career. Below is a sampling of some of his recent and past engagements. Approximately eight months a year, Thomas presents an educational lunchtime program for artists through Arts Counsel Texas, and in his role at ASMP, he conducts between 10-30 webinars each year.

(2021 – Present) Head of National Content & Education, ASMP Academy Powered by Sony, American Society of Media Photographers (over 100 hours of content related to legal and business topics).

(2022) Moderator, Law and Opera CLE Program, The Dallas Bar Association & The Dallas Opera.

(2020) Featured Speaker, Copyright Year in Review, 58th Annual Conference on Intellectual Property Law, Center for American and International Law.

(2020) Featured Speaker, Instagram, Photography, and Automatic Sublicenses CLE Program, Dallas Bar Association.

(2019) Moderator, Law and Opera CLE Program, The Dallas Opera.

(2019) Panelist, The State of Art Law in Texas CLE Program, Dallas Bar Association.

(2019) Featured Speaker, Copyright in the Arts, 57th Annual Conference on Intellectual Property Law, Center for American and International Law.

(2017) Creator / Featured Speaker, Art Law Boot Camp CLE Program, Dallas Bar Association.

## Academic History

SMU Dedman School of Law                                                                    Dallas, TX
   Juris Doctor, *May 2014*
   - Articles Editor, SMU Science and Technology Law Journal

University of Texas at Dallas                                                 Dallas, TX
    Bachelor of Science in Business Administration, *December 2009*

Brooks Institute                                                            Santa Barbara, CA
    Bachelor of Arts in Photography, Cum Laude, *December 2005*

## Selected Press

Kyle Jahner, Warhol-Prince Photo Case Brings Fair Use Fight to High Court, Bloomberg Law (March 28, 2022), https://news.bloomberglaw.com/ip-law/warhol-prince-photo-case-brings-fair-use-debate-to-high-court.

Jaron Schneider, U.S. Supreme Court to Hear Critical 'Fair Use' Case Over Warhol Photo, PetaPixel (March 28, 2022), https://petapixel.com/2022/03/28/u-s-supreme-court-to-hear-critical-fair-use-case-over-warhol-photo/.

Allen Murabayashi, Advice on Handling Contract Cancellations for Photographers, PetaPixel (March 25, 2020), https://petapixel.com/2020/03/25/advice-on-handling-contract-cancellations-for-photographers/.

Kyle Jahner, Mercedes Fight with Muralists Test Building Copyright Bounds, Bloomberg Law (April 23, 2019, 11:35 AM), https://news.bloomberglaw.com/ip-law/mercedes-fight-with-muralists-tests-building-copyright-bounds.

Greg Mocker, Pictures of Art Structure at Hudson Yards Become Subject of Controversy, Scripps Media, Inc. (March 20, 2019, 11:48 PM), https://www.pix11.com/2019/03/20/pictures-of-art-structure-at-hudson-yards-become-subject-of-controversy/.

Kyle Jahner, Nike 'Jumpman' Logo Takes Center Court in Photo Copyright Fight, Bloomberg Law (December 17, 2018, 10:06 AM), https://news.bloomberglaw.com/ip-law/nike-jumpman-logo-takes-center-court-in-photo-copyright-fight.

Photogs Ask 9th Circ. To Rethink Nike's 'Jumpman' IP Win, Law360 (April 25, 2018, 7:52 PM), https://www.law360.com/articles/1037386/photogs-ask-9th-circ-to-rethink-nike-s-jumpman-ip-win.

Brenda Sapino Jefferys, Art Law May Be the Next Big Thing In Texas, Texas Lawyer (May 1, 2017, 4:00 AM), https://www.law.com/texaslawyer/almID/1202784994164/Art-Law-May-Be-the-Next-Big-Thing-in-Texas/?slreturn=20200814143351.

# Appendix 2

# Materials Considered

# Materials Considered

| Type | Description | Reference (Bates No.'s / ECF Doc. No.'s) |
|---|---|---|
| Pleadings | Plaintiff's First Amended Complaint and Exhibits. (169 pages) | Case 1:22-cv-00905-GHW - Document 17 |
| Pleadings | Defendant Shutterstock's Answer to Plaintiff's First Amended Complaint. (7 pages) | Case 1:22-cv-00905-GHW |
| Documents Produced | Selection of image screenshots from Flickr platform. (327 pages) | Bates No. MCG000426 – MCG000752 |
| Documents Produced | Exclusive photo license on 8/10/2021 for $15,000.00, buyer redacted. (5 pages) | Bates No. MCG000757 – MCG 000761 |
| Documents Produced | Use of Subject Photography attributed to Hane Street on third-party sites available for download through Shutterstock (listed as "Partner of Shutterstock" on StockFresh). (12 pages) | Bates No. MCG001140 – MCG001151 |
| Documents Produced | Examples of awards for Plaintiff from photography company Epson. (157 pages) | Bates No. MCG004198 – MCG004354 |
| Documents Produced | Example emails and licenses for Death Valley photographs by Plaintiff. (25 pages) | Bates No. MCG004394 – MCG004418 |
| Documents Produced | Shutterstock infringements of Epson Pano Award-winning Subject Photography. (16 pages) | Bates No. MCG004355 – MCG004370 |
| Documents Produced | Screenshots of Shutterstock User Page for "Hane Street". (92 pages) | Bates No. MCG001758 – MCG001849 |
| Documents Produced | Excel spreadsheet showing 938 licenses granted by Shutterstock. (939 lines) | Bates No. STK001139 |
| Documents Produced | Document showing submitter account information for Shutterstock user display name "Hane Street". (2 pages) | Bates No. STK005329 – STK005330 |
| Documents Produced | Document "Protecting Your Content: A Guide". (84 pages) | Bates No. STK002318 – STK002401 |
| Documents Produced | Form 10-K for Shutterstock, Inc. (104 pages) | Bates No. MCG001887 – MCG001990 |
| Documents Produced | 2018 Annual Report for Shutterstock, Inc. (126 pages) | Bates No. MCG004910 – MCG005035 |
| Documents Produced | Shutterstock Contributor Success Guide. (20 pages) | Bates No. STK001490 – STK001509 |
| Documents Produced | Shutterstock Reviewer Guidelines – How to Review Photos: Exposure. (14 pages) | Bates No. STK004290 – STK004303 |
| Documents Produced | Shutterstock User Experience. (2 pages) | Bates No. MCG003596 – MCG003597 |
| Documents Produced | The Shutterstock Business Model. (1 page) | Bates No. MCG003616 |
| Documents Produced | Shutterstock Reviewer Guidelines – How to Review Photos: Focus. (14 pages) | Bates No. STK004304 – STK004317 |
| Documents Produced | Email to Shutterstock User regarding Image ID 1715011939. (1 page) | Bates No. STK006230 |

| Documents Produced | Cease and Desist Letter from Doniger / Burroughs Law Firm on February 7, 2022. (3 pages) | Bates No. MCG001468 – MCG001470 |
|---|---|---|
| Deposition Exhibit | Response letter from Karl Storz – Endoskope to Doniger / Burroughs Law Firm on March 30, 2022. (3 pages) | Shimmin Deposition Exhibit 37. No Bates number present, filename "Shimmin_Ex37_K22054 _220330_Response to Letter dated 22-03-10.pdf" |
| Documents Produced | Response email from American Home Agents to Doniger / Burroughs Law Firm on March 23, 2022. (1 page) | Bates No. MCG000180 |
| Deposition Exhibit | Blog post "How to Submit Your Photos to Shutterstock" by Heather Shimmin posted April 10, 2019. (9 pages) | Shimmin Deposition Exhibit 35. No Bates number present, file name "Shimmin_Ex35_Shimmi n Blog.pdf" |
| Deposition Exhibit | Selection of images in grid format from HelloRF user "Raza76j". (6 pages) | Shimmin Deposition Exhibit 34. No Bates number present, file name "Shimmin_Ex34_Raza76j 的作品 - 站酷海洛_正版图片_视频_字体_音乐素材交易平台_站酷旗下品牌.pdf" |
| Deposition Exhibit | Image on black background from "Zcool". (1 page) | Shimmin Deposition Exhibit 33. No Bates number present, file name "Shimmin_Ex33_HelloR F - McGucken II.pdf" |
| Deposition Exhibit | Image on black background from "Zcool". (1 page) | Shimmin Deposition Exhibit 32. No Bates number present, file name "Shimmin_Ex32_HelloR F - McGucken I.pdf" |
| Documents Produced | XML data. (1 page) | Bates No. STK001396 |
| Documents Produced | Screenshots of TinEye search results pages. (5 pages) | Bates No. MCG002026 – MCG002030 |
| Documents Produced | Screenshots of Stockfresh.com image detail pages. (24 pages) | Bates No. MCG001859 – MCG001882 |
| Documents Produced | Screenshots of Stockfresh.com image detail pages. (12 pages) | Bates No. MCG001143 – MCG001151 |
| Documents Produced | Press release "Shutterstock Announces Investment in ZCool". (2 pages) | Bates No. MCG003622 – MCG003623 |
| Documents Produced | Email to Shutterstock regarding infringing images. (1 page) | Bates No. STK005335 |

| Documents Produced | Definition of "Ingestion". (1 page) | Bates No. STK005338 |
|---|---|---|
| Documents Produced | Image takedown request form. (1 page) | Bates No. STK001381 |
| Documents Produced | Google analytics report for 235 urls. (8 pages) | Bates No. STK001144 – STK001151 |
| Documents Produced | Letter from Shutterstock showing license for image 1714055374. (2 pages) | Bates No. MCG003606 – MCG003607 |
| Documents Produced | Removed image preview document. (324 pages) | Bates No. STK000814 – STK001138 |
| Documents Produced | Curated Collections – Shutterstock (3 pages) | Bates No. MCG004741 – MCG004743 |
| Documents Produced | Document showing submitter account information for Shutterstock user display name "Raza76j". (2 pages) | Bates No. STK005336 – STK005337 |
| Documents Produced | Public image takedown request form. (3 pages) | Bates No. STK005332 – STK005334 |
| Documents Produced | Takedown claim form to Shutterstock. (1 page) | Bates No. STK000001 |
| Documents Produced | Letter from Higbee & Associates "RE: 17 U.S.C. § 512(c) Takedown Notification" sent January 14, 2021. (4 pages) | Bates No. STK000005 – STK00008 |
| Documents Produced | Certificates of Registration from the U.S. Copyright Office (134 pages) | Bates No. MCG000001 – MCG000134 |
| Book | Professional Business Practices in Photography, 8th Edition, American Society of Media Photographers. | N/A |
| Case Law | *Burrow-Giles Lithographic Company v. Sarony*, 111 U.S. 53 (1884). | N/A |
| Statute | Title 17, United States Code. | N/A |
| Interview | Interview with Plaintiff Elliot McGucken on September 26, 2022. | N/A |
| URL | Shutterstock and all sub-pages. www.shutterstock.com. | N/A |

# Appendix 3

# Subject Photographs































































































Case 1:22-cv-00905-GHW   Document 17-1   Filed 04/29/22   Page 46 of 51



Case 1:22-cv-00905-GHW   Document 17-1   Filed 04/29/22   Page 47 of 51



Case 1:22-cv-00905-GHW   Document 17-1   Filed 04/29/22   Page 48 of 51



Case 1:22-cv-00905-GHW   Document 17-1   Filed 04/29/22   Page 49 of 51



Case 1:22-cv-00905-GHW   Document 17-1   Filed 04/29/22   Page 50 of 51



Case 1:22-cv-00905-GHW   Document 17-1   Filed 04/29/22   Page 51 of 51



Case 1:22-cv-00905-GHW   Document 17-2   Filed 04/29/22   Page 1 of 51



Case 1:22-cv-00905-GHW   Document 17-2   Filed 04/29/22   Page 2 of 51



Case 1:22-cv-00905-GHW   Document 17-2   Filed 04/29/22   Page 3 of 51



Case 1:22-cv-00905-GHW   Document 17-2   Filed 04/29/22   Page 4 of 51

Case 1:22-cv-00905-GHW   Document 17-2   Filed 04/29/22   Page 5 of 51

Case 1:22-cv-00905-GHW   Document 17-2   Filed 04/29/22   Page 6 of 51




Case 1:22-cv-00905-GHW   Document 17-2   Filed 04/29/22   Page 7 of 51

Case 1:22-cv-00905-GHW   Document 17-2   Filed 04/29/22   Page 8 of 51

Case 1:22-cv-00905-GHW   Document 17-2   Filed 04/29/22   Page 9 of 51





Case 1:22-cv-00905-GHW   Document 17-2   Filed 04/29/22   Page 10 of 51

Case 1:22-cv-00905-GHW   Document 17-2   Filed 04/29/22   Page 11 of 51

Case 1:22-cv-00905-GHW   Document 17-2   Filed 04/29/22   Page 12 of 51




































































Exhibit 1











































































Case 1:22-cv-00905-GHW   Document 17-3   Filed 04/29/22   Page 43 of 51



Shutterstock ID# 1856153812
Shutterstock URL:
https://www.shutterstock.com/image-photo/monument-valley-utah-winter-snow-delicate-1856153812

McGucken Photograph:
2019-12-11-Snowy-Hoodoos-Clearing-Winter-Storm-Bryce-Canyon-National-Park-Winter-49205547551-m.jpg
Copyright Registration: VA0002236816

Shutterstock ID# 1856153815
Shutterstock URL:
https://www.shutterstock.com/image-photo/monument-valley-utah-winter-snow-delicate-1856153815

McGucken Photograph:
2020-01-03-Torri-Arch-Arches-National-Park-Sony-49223881904-m.jpg
Copyright Registration: VA0002225788

Case 1:22-cv-00905-GHW   Document 17-3   Filed 04/29/22   Page 44 of 51



Shutterstock ID# 1856153810
Shutterstock URL:
https://www.shutterstock.com/image-photo/...delicate-1856153810

McGucken Photograph:
2020-01-04-Arches-NP-Sunrise...Sony-Fuji-GFX-49311211543-m.jpg
Copyright Registration: VA0002225788

Shutterstock ID# 1856154721
Shutterstock URL:
https://www.shutterstock.com/image-photo/el-matador-beach-state-park-49570111318-m.jpg
...1856154721

McGucken Photograph:
2020-01-04-El-Matador-Beach-State-Park-Sony-Fuji-GFX-49570111318-m.jpg
Copyright Registration: VA0002225786

Case 1:22-cv-00905-GHW   Document 17-3   Filed 04/29/22   Page 45 of 51



Shutterstock ID# 1856154724
Shutterstock URL:
https://www.shutterstock.com/image-photo/el-matador-state-beach-sunset-malibu-1856154724

McGucken Photograph:
2019-02-10-El-Matador-State-Beach-Sunset-Sony-A7R-II-Malibu-Coast-47012293381-m.jpg
Copyright Registration: VA0002226197

Shutterstock ID# 1856154727
Shutterstock URL:
https://www.shutterstock.com/image-photo/el-matador-state-beach-sunset-malibu-1856154727

McGucken Photograph:
2020-01-25-Malibu-Beach-PCH-El-Matador-State-Beach-California-Fuji-GFX100-49442476236-m.jpg
Copyright Registration: VA0002225784

Case 1:22-cv-00905-GHW   Document 17-3   Filed 04/29/22   Page 46 of 51



Shutterstock ID# 1856154730
Shutterstock URL:
https://www.shutterstock.com/image-photo/el-matador-state-beach-sunset-malibu-1856154730

McGucken Photograph:
2019-02-03-El-Matador-State-Beach-Blue-Hour-Art-Pacific-Ocean-46042300245-m.jpg
Copyright Registration: VA0002226200

Shutterstock ID# 1856154733
Shutterstock URL:
https://www.shutterstock.com/image-photo/el-matador-state-beach-sunset-malibu-1856154733

McGucken Photograph:
2019-02-03-NCR-m-0350-Malibu-Pacifico-Fine-Art-El-Matador-State-Park-33113511388-m.jpg
Copyright Registration: VA0002226199

Case 1:22-cv-00905-GHW   Document 17-3   Filed 04/29/22   Page 47 of 51



Shutterstock ID# 1854453762
Shutterstock URL:
https://www.shutterstock.com/image-photo/...scascape-1854453762

McGucken Photograph:
2019-09-01-Nikon-D850-Malibu-Pier-Sunrise-Art-California-Seascape-46933323904-m.jpg
Copyright Registration: VA0002226197

Shutterstock ID# 1856158693
Shutterstock URL:
https://www.shutterstock.com/image-photo/...imperial-1856158693

McGucken Photograph:
2020-02-06-Flagstaff-Sunset-Grand-Canyon-National-Park-Fine-Art-Landscape-49511870251-m.jpg
Copyright Registration: VA0002226195

Shutterstock ID# 1856158696
Shutterstock URL:
https://www.shutterstock.com/image-

Case 1:22-cv-00905-GHW   Document 17-3   Filed 04/29/22   Page 48 of 51

photo/grand-canyon-national-park-point-imperial-1856158696



Shutterstock ID# 1856159329
Shutterstock URL:
https://www.shutterstock.com/image-photo/layer-mountains-mist-sunrise-time-base-1856159329

McGucken Photograph:
2019-02-06-Yosemite-Winter-Snow-Colorful-Clouds-Sunrise-Nikon-D850-Yosemite-National-33177847938-m.jpg
Copyright Registration: VA0002226195

Shutterstock ID# 1856159332
Shutterstock URL:
https://www.shutterstock.com/image-photo/layer-mountains-mist-sunrise-time-base-1856159332

McGucken Photograph:
2019-02-06-Winter-Snow-Colorful-Clouds-Sunrise-Winter-963729591644-m.jpg
Copyright Registration: VA0002226195

Case 1:22-cv-00905-GHW   Document 17-3   Filed 04/29/22   Page 49 of 51



Shutterstock ID# 1856159335
Shutterstock URL:
https://www.shutterstock.com/image-photo/layer-mountains-mist-sunrise-time-base-1856159335

McGucken Photograph:
2019-02-06-Malibu-Creek-State-Park-Malibu-Canyon-Sony-A7R-II-Malibu-33137036668-m.jpg
Copyright Registration: VA0002226197

Shutterstock ID# 1856162395
Shutterstock URL:
https://www.shutterstock.com/image-photo/...delicate-1856162395

McGucken Photograph:
2020-02-13-Tele-M-Lowest-Cal-Joshua-Tree-Fuji-GFX100-Fine-49513787-m.jpg
Copyright Registration: VA0002235905

Case 1:22-cv-00905-GHW   Document 17-3   Filed 04/29/22   Page 50 of 51



Shutterstock ID# 1856162361
Shutterstock URL:
https://www.shutterstock.com/image-photo/...-1856162361

McGucken Photograph:
2020-01-18-Tunnel-View-Yosemite-National-Park-Fuji-GFX100-Fine-Art-Sunrise-49513738-m.jpg
Copyright Registration: VA0002235786

Shutterstock ID# 1856169976
Shutterstock URL:
https://www.shutterstock.com/image-photo/grand-view-break-1856169976

McGucken Photograph:
2019-10-18-Grand-Teton-National-Park-Schwabacher-Landing-Fuji-GFX100-Sunrise-Reflection-49822-001-m.jpg
Copyright Registration: VA0002236811

Case 1:22-cv-00905-GHW   Document 17-3   Filed 04/29/22   Page 51 of 51



Shutterstock ID# 1044447071
Shutterstock URL:
https://www.shutterstock.com/image-photo/sunset-1044447071

McGucken Photograph:
2016-11-17-Sony-A7-II-Sam-Art-Super-Sharp-Sony-16-35mm-Vaso-Tesuti-31637360495-m.jpg
Copyright Registration: VA0002236215

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2022, I served a true and correct copy of the foregoing

**PLAINTIFF'S RULE 26(a)(2) INITIAL EXPERT DISCLOSURES** on Defendant's counsel

of record via email, as follows:

Eleanor Lackman
eml@msk.com

Elaine Nguyen
eln@msk.com

*Attorneys for Defendant Shutterstock, Inc.*


Dated: October 4, 2022

By:   */s/ Laura M. Zaharia*
Scott Alan Burroughs, Esq.
Laura M. Zaharia, Esq.
*Attorneys for Plaintiff Elliot McGucken*