UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELLIOT MCGUCKEN,<br><br>                Plaintiff,<br><br>-against-<br><br>SHUTTERSTOCK, INC.,<br><br>                Defendant. | Case No. 1:22:-cv-00905 (GHW)<br><br>**ORAL ARGUMENT REQUESTED** |

**SHUTTERSTOCK'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF STEVE HECK**

MITCHELL SILBERBERG & KNUPP LLP
Eleanor M. Lackman (eml@msk.com)
Elaine Nguyen (eln@msk.com)
437 Madison Ave., 25th Floor
New York, New York 10022-7001
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

*Attorneys for Defendant Shutterstock, Inc.*

# TABLE OF CONTENTS

    **Page**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.     LEGAL STANDARD FOR ADMISSIBILITY OF EXPERT EVIDENCE ....................... 2

II.    HECK IS QUALIFIED TO TESTIFY AS AN EXPERT BASED ON HIS TECHNICAL AND INDUSTRY EXPERIENCE IN THE STOCK PHOTOGRAPHY INDUSTRY ................................................................................... 3

III.   HECK'S TESTIMONY IS DIRECTLY RELEVANT TO THIS ACTION ....................... 6

IV.   HECK'S TESTIMONY IS RELIABLE, BASED UPON SUFFICIENT FACTS AND DATA, AND THE PRODUCT OF RELIABLE PRINCIPLES AND METHODS ................................................................................................................ 10

CONCLUSION ............................................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Amorgianos v. National R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002)..................................................................................................10, 12

*Boucher v. U.S. Suzuki Motor Corp.*,
   73 F.3d 18 (2d Cir. 1996).............................................................................................................2

*CIT Group/Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*,
   815 F. Supp. 2d 673 (S.D.N.Y. 2011).......................................................................................13

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)................................................................................................................2, 10

*Davis v. Carroll*,
   937 F. Supp. 2d 390 (S.D.N.Y. 2013).......................................................................................12

*Hart v. BHH, LLC*,
   No. 15CV4804, 2018 WL 3471813 (S.D.N.Y. July 19, 2018)...................................................7

*Hollman v. Taser Int'l Inc.*,
   928 F. Supp. 2d 657 (E.D.N.Y. 2013) .......................................................................................2

*In re Fosamax Prods. Liab. Litig.*,
   645 F. Supp. 2d 164 (S.D.N.Y. 2009).........................................................................................2

*In re Platinum-Beechwood Litig.*,
   469 F. Supp. 3d 105 (S.D.N.Y. 2020).........................................................................................9

*Kewazinga Corp. v. Microsoft Corp.*,
   1:18-cv-4500-GHW, 2021 WL 4066597 (S.D.N.Y. Sept. 1, 2021) (Woods, J.)...............12, 13

*Koppell v. N.Y. State Bd of Elections*,
   97 F. Supp. 2d 477 (S.D.N.Y. 2000).........................................................................................10

*Kumho Tire v. Carmichael*,
   526 U.S. 137 (1999).........................................................................................................2, 11, 13

*Media Sport & Arts S.R.L. v. Kinney Shoe Corp.*,
   95-Civ.-3901(PKL), 1999 WL 946354 (S.D.N.Y. Oct. 19, 1999) ..........................................13

*Pension Cmte. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
   691 F. Supp. 2d 448 (S.D.N.Y. 2010).......................................................................................11

*Royal & Sun All. Ins. PLC v. UPS Supply Chain Sols., Inc.*,
   No. 09 C 5935, 2011 WL 3874878 (S.D.N.Y. Aug. 31, 2011) ...............................................10

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props.*,
   LLC, 467 F.3d 107 (2d Cir. 2006) ..................................................................................12

*United States v. Bilzerian*,
   926 F.2d 1285 (2d Cir. 1991) ............................................................................................9

## RULES & STATUTES

17 U.S.C. § 106 ..................................................................................................................8

17 U.S.C. § 1202 ................................................................................................................1

Fed. R. Civ. P. 26 ..............................................................................................................8

Fed. R. Evid. 702 .........................................................................................................2, 10

Defendant Shutterstock, Inc. ("Shutterstock") respectfully submits this memorandum of law in opposition to Plaintiff Elliot McGucken's ("Plaintiff" or "McGucken") Motion to Exclude Expert Testimony of Steve Heck (ECF Doc. No. 100, hereinafter the "Motion" or "Mtn.").

**PRELIMINARY STATEMENT**

This action arises out of Plaintiff's claims for (1) direct copyright infringement; (2) contributory and/or vicarious copyright infringement; and (3) falsification and/or removal of copyright management information ("CMI") in violation of 17 U.S.C. § 1202 in connection with images that were uploaded to Shutterstock's stock-photography platform by third-party contributors. To assist the jury in its fact-finding role, Shutterstock retained Steve Heck ("Heck"), a stock-photography industry consultant and expert to discuss the intricacies of the technological and business aspects of stock-photography platforms.

Notwithstanding his unparalleled expertise in the relevant industry—including his decades of experience working with an undisputed leading stock-photography platform, his entry-level to c-level experience in both the core technological and business aspects of the same, and his current capacity as a consultant in the relevant field—Plaintiff makes a fraught and rushed effort to exclude Heck from imparting his expert opinion in this action by attempting to challenge his qualifications, the relevancy of his testimony, and its reliability. Plaintiff, however, bases his Motion entirely on superficial attacks, based on concocted heightened standards that fail to comport with the law, and which reflect no diligence on Heck himself. As demonstrated below, Plaintiff's invented grievances are belied by even his own expert's testimony, which works to underscore that Heck is a seasoned expert in the stock-photography industry. Plaintiff can identify no meritorious basis to exclude Heck's expert testimony.

As such, Plaintiff's Motion should be denied in its entirety.

# ARGUMENT

## I. LEGAL STANDARD FOR ADMISSIBILITY OF EXPERT EVIDENCE

The admissibility of expert evidence is governed by Rule 702 of the Federal Rules of Evidence and the principles set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "It is well-established that the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence[.]" *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (citation and quotation marks omitted).

The proponent of the expert testimony bears the burden of establishing the admissibility of such testimony by a preponderance of the evidence. *Hollman v. Taser Int'l Inc.*, 928 F. Supp. 2d 657, 666 (E.D.N.Y. 2013) (citing *Daubert*, 509 U.S. at 592 n.10). In light of the liberal admissibility standards of the Federal Rules of Evidence, exclusion of expert testimony is warranted only when the district court finds "serious flaws in reasoning or methodology." *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009). Otherwise, if an expert's testimony falls within "the range where experts might reasonably differ," the duty of determining the weight and sufficiency of the evidence on which the expert relied lies with the jury, rather than the trial court. *Kumho Tire v. Carmichael*, 526 U.S. 137, 153 (1999).

## II. HECK IS QUALIFIED TO TESTIFY AS AN EXPERT BASED ON HIS TECHNICAL AND INDUSTRY EXPERIENCE IN THE STOCK PHOTOGRAPHY INDUSTRY

Plaintiff claims that Heck is unqualified to testify because he purportedly lacks sufficient knowledge, skill, or training to qualify him as an expert. Mtn. at pp. 2-3. However, Plaintiff's unsupported assertion is plainly belied by Heck's relevant and indeed unparalleled expertise in the stock-photography industry. Merely claiming that he has insufficient experience does not make it so.

*First*, without any specificity, Plaintiff superficially argues that Heck lacks current and practical experience because he worked for "just one company" six years ago (even though it was at *Getty Images*, a leading stock-photography company, for over *two decades*), that his experience is purportedly "outdated," and that he does not have sufficient credentials to render his opinion. Not so. Heck was retained to provide his expert analysis on "the industry category of large-scale, online image incensing platforms, including aspects pertaining to it such as processes pertaining to the contributor onboarding process, content and metadata processing and management, interactions with third parties through affiliate relationships and application programming interfaces (APIs), handling of unauthorized uses that may come to the platform's attention, and general pricing of content in the stock photography industry." Declaration of Eleanor M. Lackman, dated February 3, 2023 ("Lackman Decl."), Exhibit A, ("Heck Report"), ¶ 5. Heck is a consultant that specializes in technical strategy in light of his more than twenty-years' experience with a leading stock-photography company, Getty Images. Heck Report, at Ex. A. Heck has expansive experience at all levels at Getty from entry level to c-level. *Id.* Specifically, he has expansive

3

experience in not only the general Getty images platform, but intimate knowledge of the technical aspects of the same, the exact topic in which he opines.[1]

Heck's experience directly relates to each of these topics. As a threshold matter, Plaintiff does not challenge Heck's expert testimony in its entirety. Indeed, while relying only on generic claims that he is unqualified, Plaintiff tellingly does not challenge Heck's testimony regarding the reasons for metadata separation, the function and functionality of edge copies, and APIs. Plaintiff's Motion utterly fails to demonstrate how Heck is purportedly unqualified to discuss these particular points. To the contrary, Plaintiff's own expert concedes that Getty Images is one of the Big 3 leading stock photography platforms, much like Shutterstock. *See* Lackman Decl., Exhibit B ("Maddrey Tr."), at 57:3-11 ("Q. Do you know what the quote/unquote phrase "big three platform" refers to? A. I believe that my understanding is that it would include the major stock photography companies, especially in microstock, which would include Getty and iStock. iStock photo, Shutterstock, and Adobe Stock."); *Id.* at 135:5-11 ("Q. Can you tell me what you mean by industry standard? A. Getty Images is, I believe, still the largest platform for images and also is one of the longest-tenured platform for images and how they price their work is often how other stock companies will price their work. . . "); *Id.* at 138:2-10 ("Q. And do you believe that Getty Images is comparable to Shutterstock? A. I believe that Getty Images and Shutterstock both sell stock licenses for their collection of images. Q. And that's what makes the comparable. Is that right? A. Yes. I mean, **they're in the same industry**.") (emphasis added). Maddrey also regularly refers to Getty Images in his expert report, using it as "the standard" for his damages calculation and stating that Getty is the "industry standard for both editorial and commercial image licensing." Lackman

---

[1] This is in stark contrast to Plaintiff's expert Maddrey, who indisputably has *no specialized experience* whatsoever in the stock-photography industry, and resorts to mere (misguided) speculation and a layman's analysis of the industry.

Decl., Exhibit C ("Maddrey Report"), pp. 18-20.[2] Moreover, notwithstanding the fact that Plaintiff had the opportunity to challenge Heck's qualifications during his deposition, Plaintiff chose not to (or failed to) do so.[3] In sum, Plaintiff's feeble attempt to exclude Heck on this ground is easily undermined by Heck's own background and experiences, none of which is materially disputed by anything but rhetoric.

*Second,* Plaintiff claims that Heck should be excluded as an expert because he is purportedly unqualified to "evaluate photography." Plaintiff's strawman argument misses the point entirely. Although someone who has worked in the industry certainly would be likely to recognize varying quality of photography, Heck's expert testimony does not involve the appearance or quality of the photography, but rather its worth in the stock-photography and commercial marketplace. *See, e.g.*, Heck Report, ¶¶ 9-11, 13, 16-18, 37, 42. Nonetheless, Plaintiff claims that Heck inappropriately opines on the value and quality of the photography, including "McGcuken's [sic]", but lacks any expertise to do so. Mtn. at p. 3. This is not only unsupported, but untrue. Heck's expansive experience at Getty, and especially as a leader in the technology-driven and leading stock-photography platform gives him not only intimate knowledge of the stock photography platform and its workings, but also its business structure and operations. *See*

---

[2] Plaintiff argues that Heck's experience is purportedly "outdated" because he worked at Getty Images six years ago. Yet he fails to cite to any authority or support to conclude that this is grounds to exclude him. Indeed, Heck currently consults in the exact field in which he proffers his expert opinion on. *See* Heck Report, Exhibit A. Even so, Plaintiff's own expert, Thomas Maddrey, is an attorney who left his photography business over *nine* years ago to attend law school, spending only *five* years in the professional photography business. *See* Maddrey Report, Appendix 1. Plaintiff cannot have his cake and eat it, too.

[3] Notwithstanding the fact that Plaintiff was entitled to a full seven hours to depose Heck and challenge his qualifications and expert testimony, Plaintiff did not take that opportunity and only deposed him for about three hours. Tellingly, the questions did not relate to the basis for Heck's knowledge, his history, or his methodologies. Plaintiff's arguments are thus based on mere speculation when he could have point-blank sought to address these points with Heck himself.

5

Declaration of Steve Heck, dated February 2, 2023 ("Heck Decl."), ¶ 3 (referencing extensive hands-on experience in royalty calculations and image management and process operations). Moreover, Plaintiff's Motion does not and cannot dispute that there are dozens (if not more) photos comparable to Plaintiff's images, offered at a particular price. Plaintiff indeed could not easily distinguish his own photos from another photo available on Shutterstock himself. Lackman Decl., Exhibit D ("McGucken Tr."), 237:24-238:4 ("Q. Do you know whether or not this is one of your photographs? A. I don't believe it is. Q. And are you certain? A. I mean, it could be but I don't believe that it is."). Nor has Plaintiff been able to dispute his prices, which are merely $12.50 per image. McGucken Tr., 265:8-10 ("Q. And they paid you $250 for 20 images; is that right? A. Yes."). Plaintiff simply has no meritorious basis to challenge Heck's qualifications to make his opinions.

**III.   HECK'S TESTIMONY IS DIRECTLY RELEVANT TO THIS ACTION**

While first arguing that Heck does not have sufficient qualifications to opine on the stock image business, Plaintiff then claims that Heck's expertise in the stock-photography business is irrelevant. Mtn. at pp. 3-4. Plaintiff's effort to exclude Heck on this basis similarly fails. Plaintiff's claim that Heck's expertise in "general standards" of the stock image industry is purportedly irrelevant, because it does not deal with Shutterstock's particular standards, is irrelevant itself.

Plaintiff's overly blinkered view of the legal standards fails. Heck does not need to have experience with Shutterstock specifically in order to impart his expert opinion. Indeed, the same can be said about Plaintiff's expert—he has no experience with Shutterstock whatsoever other than having licensed an image off of the Shutterstock website in the early "2010s." Maddrey Tr., 217:22-218:10. Heck nevertheless educated himself about the Shutterstock architecture, applied his engineering background to evaluate the same, and verified that the relevant components of the

6

structure are generally the same as to what he knew to be standard in the industry, including at Getty. *See, e.g.*, Heck Report, ¶¶ 1-3, 7-8; Heck Decl., ¶ 2. Through his relatively lengthy (as defined by the scope required) conversation with Shutterstock's engineer, Heck was able to learn enough about Shutterstock's processes and data flow to confirm that they were materially the same as Getty's/iStock's. Heck Decl., ¶ 2. Plaintiff's own expert essentially concedes to the same— Maddrey states that there are many comparisons (and indeed uses Getty as a comparison for his damages model) between Getty and Shutterstock since they are both leaders in the stock-photography industry. *See* Maddrey Tr., 57:3-11, 135:5-11, 138:2-10; Maddrey Report, pp. 18-20.

Contrary to Plaintiff's blank assertion, Heck's experience and knowledge of the industry standards in the stock photography industry is directly on point and will help a jury understand the complexities and differences of the stock photography business, operations, and technical considerations and needs. Plaintiff's own expert indeed concedes that the relevant facts in this case involve the "editorial, commercial, and general image licensing marketing [specifically] with . . . stock photography companies." Maddrey Report, pp. 5-6.  Maddrey concedes that the licenses at issue here on which Plaintiff bases his claims were licensed via Shutterstock's stock-photography platform, and uploaded by third-party contributors. *Id.* He further concedes that relevant facts include Plaintiff's attempt to have the images removed from the site and takedown notices. *Id.* These are all stock-photography-specific aspects—industry intricacies as to which Heck was retained to opine and does opine on in order to assist the jury in its fact-finding role.

Nor does Heck make legal conclusions as Plaintiff claims.[4] *First*, Plaintiff claims that Heck makes legal conclusions as to when a DMCA takedown should be considered sufficient. Not so.

---

[4] Plaintiff also confusingly argues that Heck's report should be excluded because he attacks the admissibility of Maddrey's report. *See* Mtn. at pp. 5-6. However, this is the purpose of a rebuttal expert report. *See Hart v. BHH, LLC*, No. 15CV4804, 2018 WL 3471813, at *9 (S.D.N.Y. July

Heck states that he is "familiar with how the [DMCA] operates in the context of online photography platforms," and opines on how a stock-photography platform, like Getty or Shutterstock, would typically view or process DMCA notices. *See* Heck Report, ¶¶ 28-33. Indeed, Heck opines that it is common for a stock-photography platform to receive a "good Samaritan" notification (as was here), that might result in suspension of a contributor's account. *Id.* at 30. Heck does not make *any* legal conclusions, but rather provides industry-perspective and processes as to how stock-photography platforms ingest and handle such matters from an operational perspective. *Id.* Nowhere does he state that, for instance, the DMCA notice here was not compliant with the statute, which would be an impermissible legal conclusion as it would be an interpretation of the law and conclusion of the same. *But see* Maddrey Report, p. 20 ("Through its volitional conduct and behavior, Defendant Shutterstock *infringed* on Plaintiffs exclusive rights granted to him under 17 U.S.C. § 106") (emphasis added).

*Second*, Plaintiff's assertion that Heck's opinion as to the presence of an author's metadata is an improper legal conclusion, is a mischaracterization. Mtn. at p. 5. Plaintiff claims that Heck is improperly making a legal conclusion because he purportedly concludes that "presence of an author's metadata cannot put a company like Shutterstock on legal notice of their infringement per the Copyright Act." *Id.* As a threshold matter, nowhere does Heck cite or refer to the Copyright Act. He instead states that, "McGucken's suggestion that the presence of metadata or the appearance of images themselves places Shutterstock on notice of infringement" do not align with

---

19, 2018) (stating that rebuttal evidence is "properly admissible when it will explain, repel, counteract, or disprove the evidence of the adverse party.") (citing Fed. R. Civ. P. 26(a)(2)(D)(ii) and *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016)). Heck indeed properly rebuts Maddrey's testimony by recognizing his inappropriate comparisons, which was the basis of Maddrey's expert opinion on damages. Further, his opinion identifies how Maddrey's opinion deviates from standard industry practice.

8

*standard industry practice*, and explains why (*i.e.*, volume of material supplied to platforms, technological and legal requirements, nature of copyright ownership and licensing from a factual, practical perspective). Heck Report, ¶ 7. Plaintiff casts this as a legal opinion based on the use of the buzzwords "notice of infringement," but in reality, it has nothing to do with any legal conclusions. Rather, it is the title of a form, and Heck makes no comment or legal interpretation of the same. Indeed, companies like Shutterstock or Getty are familiar with the general term infringement, must deal with such notices on a day-to-day basis, and have policies of the same consistent with DMCA requirements.[5] Courts routinely allow non-lawyer experts to touch on facts that may be driven by the law but are not legal interpretations themselves. *See In re Platinum-Beechwood Litig.*, 469 F. Supp. 3d 105, 116-17 (S.D.N.Y. 2020) (holding that expert's statements were not legal conclusions, but rather "[sought] to contextualize the evidence so that the jury may understand the standards under which [the plaintiff] [was] operating" as well as "standard industry practices to meet such standards."); *United States v. Bilzerian*, 926 F.2d 1285, 1294-95 (2d Cir. 1991) (experts should not testify to legal conclusions but it was not error for an expert to testify to the background of securities regulation, filing requirements and hypotheticals without testifying that the defendant's behavior violated the securities law).

---

[5] This is also not a "legal conclusion" because it makes sense logically. For companies like Getty or Shutterstock whose business model revolves around making payments to copyright owners, it is reasonable to believe that a businessperson in the industry would know that one cannot always rely on the Copyright Office website to find the owner of an image (even assuming a copyright owner's name is included in the metadata). As Heck observed, the vast majority of copyright owners do not register their works (whether it be because many countries do not offer a registration system, or they simply choose not to due to cost or low relative benefit), the images are not available on the Copyright Office website, and sometimes agents are paid or contributors work under aliases for a variety of reasons. Heck Report, ¶ 21.

## IV.   HECK'S TESTIMONY IS RELIABLE, BASED UPON SUFFICIENT FACTS AND DATA, AND THE PRODUCT OF RELIABLE PRINCIPLES AND METHODS

With no meritorious challenge to exclude Heck's expert testimony, Plaintiff superficially resorts to attacking Heck's expert opinion itself by claiming: (1) that it is not based upon sufficient facts or data; (2) that his testimony is not the product of reliable principles or methods; and (3) that he has not reliably applied methods and principles to the facts of this case. Mtn. at pp. 6-10. Each of Plaintiff's grievances is meritless.

Expert testimony must be "the product of reliable principles and methods," and must be "reliably applied . . . to the facts of the case." Fed. R. Evid. 702. "The admissibility of evidence must be established by a preponderance of the evidence, and the burden of demonstrating that testimony is competent, relevant, and reliable rests with the proponent of the testimony." *Koppell v. N.Y. State Bd of Elections*, 97 F. Supp. 2d 477, 479 (S.D.N.Y. 2000) (internal citations omitted). "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos v. National R.R. Passenger Corp.*, 303 F.3d 256, 265-66 (2d Cir. 2002) ("In short, the district court must make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.") (internal citations and quotations omitted). However, "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." Fed. R. Evid. 702 advisory cmte. note (2000). Where "an expert's methodology overcomes the hurdle of being based on a reliable process, remaining controversies as to the expert's methods and conclusions generally bear on the weight and credibility—but not admissibility—of the testimony." *Royal & Sun All. Ins. PLC v. UPS Supply Chain Sols., Inc.*, No. 09 C 5935, 2011 WL 3874878, at *2 (S.D.N.Y. Aug. 31, 2011).

10

Plaintiff efforts to mischaracterize the opinions miss the mark. Here, Heck's opinions relate to the technical workings of stock-photography platforms (i.e. its processes), whether Shutterstock's business model and processes are consistent with stock-photography industry practice, the role of metadata in the industry, functionalities of API, and the structure of stock-photography licensing (Heck Report, ¶ 7)—many of which Plaintiff does not challenge in his Motion nor attempted to undermine during Heck's deposition.[6] Plaintiff's failure to find an expert that might disagree with Heck's unassailable history does not warrant the argument that his wealth of experience and knowledge is unreliable. Indeed, Heck's expertise in this action is based upon his personal experience and industry standards. He applies his personal and extensive experience in the field to support his expert opinion. *See, e.g.*, Heck Report, ¶ 7, Section B (concluding that Shutterstock processes are technologically justified and consistent with industry standards, and setting for the industry standard). Not only is this sufficient, this is the appropriate standard. *See Kumho Tire*, 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."); *Pension Cmte. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 464-65 (S.D.N.Y. 2010) ("the reliability of [an expert's] testimony largely depends on whether he has drawn the proffered industry standards from an adequate source—in this case, his experience."). Notably, Plaintiff fails to cite to *any* authority that requires Heck to cite to documents for every opinion he imparts, and nor would he be expected to have architecture plans from his former employer, for example.

Similarly, Heck's testimony on Shutterstock's internal processes at issue is based upon his intimate experience in the stock-photography industry and industry practice. As Plaintiff concedes,

---

[6] As stated in Heck's declaration, through his conversation with Shutterstock's engineer, Heck learned about Shutterstock's processes and data flow, as well as the general process for the full system, including caches and APIs. Heck Decl., ¶ 2.

11

Heck relied upon documents produced by Shutterstock, his deep understanding of industry practices, and discussions of those same processes with a Shutterstock employee who he found to be very sophisticated in the technological workings of the platform—information that Heck needed to verify in order to render his opinions. Based on review of these documents and his investigation, Heck was able to conclude that Shutterstock's practices were **consistent with stock-photography industry practice**. *See SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props.*, LLC, 467 F.3d 107, 132 (2d Cir. 2006) (where a witness opines about standards in a given industry, "such an expert must show how his or her experience [in the industry] . . . led to his conclusion or provided a basis for his opinion."). *See also Davis v. Carroll*, 937 F. Supp. 2d 390, 412 (S.D.N.Y. 2013) (If the expert's testimony "does not rest on traditional scientific methods," the court may permit testimony where "a proposed expert witness bases her testimony on practical experience rather than scientific analysis."); *Amorgianos*, 303 F.3d at 267 ("Where an expert otherwise reliably utilizes scientific methods to reach a conclusion, lack of textual support may go to the weight, not the admissibility of the expert's testimony") (citation omitted). Note that Plaintiff cites to no authority whatsoever that required Heck to have discussions with an individual at Shutterstock that was specifically disclosed as a witness, particularly not when such discussions were used to help verify an apples-to-apples comparison.

The cases to which Plaintiff cites are facially off-point here. For example, citing *Kewazinga Corp. v. Microsoft Corp.*, 1:18-cv-4500-GHW, 2021 WL 4066597 (S.D.N.Y. Sept. 1, 2021) (Woods, J.), Plaintiff argues that Heck's testimony should be excluded because it purportedly relies on speculation and anecdotal evidence. Not only is *Kewazinga* inapplicable to this case, Plaintiff's assertion is also completely misguided. In *Kewazinga*, an underlying patent infringement action, the proffered expert testimony was said to be an assessment of consumer

12

demand of function at issue. *See id.* at 23. The expert testimony was ultimately excluded as unreliable because expert only relied on anecdotal evidence instead of sound economic proof of the nature of the market and likely outcomes, like customer surveys or interviews. *Id.* In this case, not only was this was not the task at hand, but to the extent the market analysis was involved, the data *was* present: Shutterstock's pricing and the array of images on the site, many of which were never licensed at all and most of which were not often licensed, indicated a market equilibrium for the prices shown on the site and at a number that matches the pricing for most of McGucken's online and non-featured use licenses.[7] In other words, Heck's expert testimony was premised on actual data as opposed to mere say-so, speculation, or anecdotal evidence.[8]

In sum, Heck's testimony on industry standard and practice and his application of such expertise to this case is sufficient. *See CIT Group/Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*, 815 F. Supp. 2d 673, 678 (S.D.N.Y. 2011) ("[P]roposed testimony to establish prevailing customs and practices in the commercial lending industry is relevant and reliable and would be admissible for that purpose . . . ."); *Media Sport & Arts S.R.L. v. Kinney Shoe Corp.*, 95-Civ.-3901(PKL), 1999 WL 946354 at *3 (S.D.N.Y. Oct. 19, 1999) (finding "customs and practices unique to the sports marketing industry" will be helpful to the jury).

---

[7] Evidently unaware of the own inapt comparisons Plaintiff's expert makes throughout his report, Plaintiff also claims that Heck makes inappropriate "apples and oranges comparisons" to apply his reasoning to the photography issue in this case. Mtn. at pp. 9-10. *See* also Lackman Decl., Exhibit E, ("Heck Rebuttal Report"), ¶¶ 4, 5, 12. Plaintiff's argument has no merit. He claims that Heck's conclusion is unreliable because he ignored variables such as prestige of a photographer, licensing history, and quality of the photo. Mtn. at p. 10. Not only is this simply wrong as a factual matter as to Plaintiff and to stock photography licensing generally, but they are not bases for exclusion. *See Kumho Tire*, 526 U.S. at 153 (where expert testimony falls within "the range where experts might reasonably differ," the duty of determining the weight and sufficiency of the evidence on which the expert relied lies with the jury, rather than the trial court).

[8] As set forth in his expert report, Heck was also heavily involved in pricing for iStockPhoto, the closest analog to Shutterstock's contributor platform. *See* Heck Report, ¶ 2.

## **CONCLUSION**

For the reasons set forth above, Shutterstock respectfully requests that the Court deny Plaintiff's Motion to Exclude the Expert Testimony of Steve Heck in its entirety.

Respectfully submitted,

Dated: New York, New York
February 3, 2023

MITCHELL SILBERBERG & KNUPP LLP

By: /Eleanor M. Lackman/
Eleanor M. Lackman (eml@msk.com)
Elaine Nguyen (eln@msk.com)
437 Madison Avenue, 25th Floor
New York, New York 10022
Tel.: (212) 509-3900
Fax: (212) 509-7239

*Attorneys for Defendant Shutterstock, Inc.*