UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELLIOT MCGUCKEN,

                Plaintiff,

    -against-

SHUTTERSTOCK, INC.,

                Defendant.

Case No. 1:22-cv-00905-JHR

**PLAINTIFF'S RESPONSE TO DEFENDANT SHUTTERSTOCK, INC.'S RULE 56.1**

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

Plaintiff, Elliot McGucken, submits this response to Defendant Shutterstock, Inc.'s ("Shutterstock") Statement of Undisputed Material Facts pursuant to Local Rule 56.1 of the United States District Court for the Southern District of New York.

**A.**     **Shutterstock's Website**

1.     Shutterstock is an online service provider that operates a leading global online marketplace for photographic images and other content (such as video footage and music) at the website www.shutterstock.com.  *See* Declaration of Heather Shimmin dated January 20, 2023 ("Shimmin Decl.") ¶ 2.

**Plaintiff's Response to 1:** Not disputed that Shutterstock operates an online site at which it directly licenses photography. The evidence is insufficient to establish that it is a "leading global online marketplace." Instead, "Shutterstock, Inc. is a company that licenses "stock" and "editorial" photographs, videos, and other illustrations to media publications, commercial actors, and others." *Penske Media Corp. v. Shutterstock, Inc*., 548 F. Supp. 3d 370, 373 (S.D.N.Y. 2021)(citation omitted).

2.      There are currently more than 424 million images available for license on Shutterstock's website and approximately 200,000 images are added every day.  *Id.*

**Plaintiff's Response to 2:** The evidence relied upon does not support the claimed fact.

B.      **Shutterstock's Contributor Platform**

3.      Shutterstock operates an online "contributor platform" through which third-party users (*i.e.*, "contributors") may upload and offer their content for license to the public.  *Id.* ¶ 3.

**Plaintiff's Response to 3:** Disputed. Only Shutterstock may offer content for license on its site. Shutterstock operates an online platform that offers for license a thoroughly and actively curated selection of images submitted to Shutterstock. Every image offered for license on Shutterstock's website is subject to a rigorous review and pre-screening process during which Shutterstock's specialized team of reviewers reviews the images for factors such as composition, lighting, focus, exposure, licensability, and commercial value before it is displayed and offered to the public. Declaration of Scott Burroughs ("Burroughs Decl.") ¶¶ 3, 4, 6, 7, 31, **Exs. 7, 9** at pg. 19; **12**, **38** at 178:24-180:10; 182:23-183:6, **42,** Request for Judicial Notice ("RJN"), **Ex. 33**.

4.      Unless the person has been previously suspended from the platform, anyone can become a contributor, free of charge, by registering an account through Shutterstock's website or mobile app and uploading content to be included in Shutterstock's online marketplace.  *Id.* ¶ 4; *see also* Declaration of Steve Heck dated January 20, 2023 ("Heck Decl.") ¶ 6.

**Plaintiff's Response to 4:** Disputed. Shutterstock must approve its contributors and all content submitted to Shutterstock by contributors must be independently and thoroughly reviewed and approved by Shutterstock before it is made available on Shutterstock's online marketplace, it is not made available directly by contributors. Burroughs Decl. ¶ 4; **Ex. 38** at 55:23-57:5; 61:22-63:17; 65:17-66:9; 72:17-73:5.

5.      Contributors must accept and agree to Shutterstock's "Contributor Terms of Service" and "Contributor Guidelines."  Shimmin Decl. ¶¶ 5-6, Exs. A & D.

**Plaintiff's Response to 5:** Not disputed.

6.      Pursuant to Shutterstock's Contributor Terms of Service, the contributors warrant and represent to Shutterstock that "the Content [that they submit to Shutterstock] does not infringe the copyright or any other rights of any third party." *Id.* ¶ 5, Ex. A, § 14(g); *see also* Declaration of Eleanor M. Lackman dated January 20, 2023 ¶ 2, Ex. A [Response to Interrogatory No. 17].

**Plaintiff's Response to 6:** Not disputed that the document includes that language.

7.      Shutterstock's Contributor Guidelines state that "[the contributors] must own or control the copyright to all content [they] submit to Shutterstock" and "cannot submit work obtained from other sources (*e.g.*, online image search results or websites), or incorporate such work into [their] content submissions, unless [they] have permission to do so." *Id.* ¶ 6, Ex. D.

**Plaintiff's Response to 7:** Not disputed that the document includes that language.

8.      The contributors decide what content to upload.  Shutterstock does not select, modify, supervise, curate, control, or play any significant role in the content uploaded by contributors. *Id.* ¶ 7.

**Plaintiff's Response to 8:** Disputed. Shutterstock modifies, curates, reviews, approves, or rejects the content submitted by contributors. Contributors cannot upload content directly to Shutterstock's platform, content is only uploaded to the platform and made available to customers at Shutterstock's discretion. Shutterstock also directs its users on how and what to submit. Burroughs Decl. ¶ 4, 9; **Exs. 12; 38** at 55:23-57:14; 61:22-63:17; 65:17-66:9; 69:4-70:15; 72:17-73:5; 98:10-17; 99:3-10; 99:17-100:12.

9.      Shutterstock relies on the contributors' representations about the content that they choose to upload for inclusion in Shutterstock's online marketplace.  *Id.* ¶ 8; Heck Decl. ¶¶ 21-22; *see also* Lackman Decl. ¶ 2, Ex. A [Response to Interrogatory No. 17].

**Plaintiff's Response to 9:** Shutterstock has its own guidelines and relies on those before approving photographs for inclusion in Shutterstock's online marketplace. Burroughs Decl. ¶ 4; **Ex. 38** at 49:14-25; 50:5-51:5; 51:16-25; 53:12-24.

10.     Shutterstock briefly reviews the images uploaded by contributors and rejects those that bear hallmarks of spamming (*i.e.*, submitting hundreds of virtually identical images), contain visible watermarks that might suggest they were pulled from a third-party site (such as Getty/iStock, Adobe, or a photographer or agency), or have obvious issues related to their technical quality (*e.g.*, poor focus, composition) and/or the material depicted therein (*e.g.*, pornography, hateful imagery, trademarks, copyrighted materials, people's names and likenesses without a model release).  Shimmin Decl. ¶ 10; *see also* Lackman Decl. ¶ 2, Ex. A [Responses to Interrogatory Nos. 17 & 20]; Heck Decl. ¶ 8.

**Plaintiff's Response to 10:** Disputed. Shutterstock reviews and curates the images submitted by contributors for a myriad of qualities going far beyond technical and quality issues. Shutterstock actively reviews contributor images for stylistic and aesthetic factors such as lighting, focus, blurriness, composition, and framing, as well as reviewing content for commercial value and whether said content has been appropriately licensed for commercial or editorial use. Burroughs Decl. ¶ 4, 7, 9; **Exs. 12; 38** at 69:4-70:15; 98:10-17; 99:3-10; 99:17-100:12; RJN, **Ex. 33.**

11.     Shutterstock also utilizes specialized matching software to automatically detect and reject potentially infringing images uploaded by contributors.  *See* Shimmin Decl. ¶¶ 11, 50; *see also* Lackman Decl. ¶ 2, Ex. A [Response to Interrogatory No. 11].

**Plaintiff's Response to 11:** Disputed to the extent that it implies that the review and rejection of images submitted by contributors to Shutterstock is wholly automated, and not conducted by Shutterstock itself and its specialized team of human reviewers. Burroughs Decl. ¶ 4, 7; **Ex. 9** at 19; **38** at 68:6-8; RJN, **Ex. 33**.

12.    The contributor-uploaded images that are not rejected automatically become available to the public for license through Shutterstock's online marketplace. Shimmin Decl. ¶ 12; *see also id.* ¶ 10; Heck Decl. ¶ 15.

**Plaintiff's Response to 12:** Disputed. Contributor submitted images are not rejected or accepted automatically, they are also comprehensively reviewed by Shutterstock's "specialized team of reviewers" to ensure that it meets Shutterstock's standard of quality and licensability. Contributor submitted images will not become available to the public for license unless and until they are actively accepted by a human Shutterstock reviewer and only Shutterstock has the ability to make images available on its website. Burroughs Decl. ¶¶ 4, 6, 7; **Ex. 9** at pg. 19; RJN, **Ex. 33**; **Ex. 38** at 49:14-25, 55:23-57:14, 61:22-63:17.

13.    Shutterstock keeps a portion of the license fee paid for contributor-uploaded images and pays the rest to the contributor.  Shimmin Decl. ¶ 13.

**Plaintiff's Response to 13:** Disputed to the extent that it implies that contributors are directly involved in any transactions with Shutterstock's customers. Shutterstock is the principal in all transactions for images licensed on by customers on Shutterstock's platform and recognizes revenue gross of contributor royalties. Shutterstock pays royalties to its contributors after Shutterstock has already transacted and entered into contracts directly with customers. Burroughs Decl. ¶¶4, 7; **Ex. 38** at 60:18-22; RJN, **Ex. 33**. Pg. 46.

**C.    <u>Automated Processes Triggered by the Contributors' Uploads</u>**

14.     The entire process triggered by the contributor's decision to upload an image to Shutterstock's website is primarily automated, with no involvement by any person at Shutterstock except for a brief review for objectionable content.  *Id.* ¶ 14; *see also* Heck Decl. ¶ 9.

**Plaintiff's Response to 14:**  Disputed. Every image submitted to Shutterstock by its contributors is subject to a comprehensive and thorough review process which is conducted by a team of specialized, human reviewers. Shutterstock's reviewers evaluate all submitted images for a wide range of factors going far beyond simply looking for objectionable content, including evaluations of each image's subject matter, commercial appeal, and technical quality. Reviewers may also escalate the evaluation of any individual image to a human review coordinator for a second round of review by a Shutterstock employee. Images are not uploaded to Shutterstock's website for licensing until they have been actively approved, which must be done by a human reviewer, not an automated process. Burroughs Decl. ¶¶ 4, 7, 9; **Exs. 12**; **38** at 61:22-63:17; 68:6-8; 69:4-70:15; 95:9-96:12; 98:10-17; 99:3-10; 99:17-100:12; 241:6-24; RJN, **Ex. 33** at pg. 7.

15.     Shutterstock's system automatically removes any and all metadata associated with the images uploaded by contributors, with no involvement by any person at Shutterstock, in order to avoid computer viruses and prevent the dissemination of personally identifiable information.  Shimmin Decl. ¶¶ 15; 47-48.  This type of method is common in the industry for the same reasons just mentioned.  Heck Decl. ¶ 11.

**Plaintiff's Response to 15:**  Disputed to the extent that it implies that Shutterstock's review of metadata is automated and only conducted to avoid computer viruses and prevent the dissemination of personally identifiable information. Shutterstock's human reviewers actively review the metadata associated with each image submitted by contributors and do so to ensure,

among other things, that the image's metadata matches the contributor, to determine in what categories of license to offer the image for, and to determine if they image needs to be investigated for fraud. This metadata review may even be escalated to Shutterstock's review coordinators. Burroughs Decl. ¶¶ 4, 9, 30; **Exs. 12; 38** at 68:6-8; 95:19-96:12; **46**.

16.     Shutterstock's system automatically creates multiple small-sized, low-resolution copies (*i.e.*, thumbnails) of every contributor-supplied image posted to Shutterstock's public-facing website.  *See* Shimmin Decl. ¶ 16; Heck Decl. ¶ 12.

**Plaintiff's Response to 16:** Disputed to the extent it implies that Shutterstock only makes small-sized, low-resolution copies of the images submitted by Contributors. Shutterstock makes and offers for license full-size, high-resolution copies of images. Burroughs Decl. ¶¶ 4, 14, **Exs. 20, 38** at 34:18-35:2; 74:18-75:11; 178:24-180:10.

17.     The thumbnails are used to identify the image, including to show potential licensees what the image would look like in different sizes.  *See* Shimmin Decl. ¶ 16; Heck Decl. ¶ 12; Lackman Decl. ¶ 2, Ex. A [Responses to Interrogatory Nos. 11 & 16].

**Plaintiff's Response to 17:**  Not disputed that Shutterstock uses thumbnail copies of images for commercial purposes such as advertising the images to potential licensees.

18.     Consistent with industry practice, Shutterstock's system automatically adds a "Shutterstock" watermark to all copies of the images displayed for license on its public-facing website (except very small thumbnails) in order to prevent third parties from using the images without a license.  *See* Shimmin Decl. ¶ 17, Ex. E; Heck Decl. ¶ 13; *see also* Lackman Decl. ¶ 3, Ex. B [Response to RFA No. 9].

**Plaintiff's Response to 18:** Disputed. Shutterstock adds the watermark bearing the Shutterstock

logo itself to all content displayed and offered for license on its website. Burroughs Decl. ¶4; **Ex. 38** at 72:17-73:19. Shutterstock cites no evidence that its practice is "industry standard."

19.     The "Shutterstock" watermark is intended and understood to identify Shutterstock as the source or distributor of the image, rather than as the author or copyright owner.  *See* Shimmin Decl. ¶ 17; *see also* Lackman Decl. ¶ 4, Ex. C, pp. 57:25-58:10 (professional photographer testifying that watermark "generally is put on [a] picture . . . to identify the source of material or restrict it for use"); Heck Decl. ¶ 13.

**Plaintiff's Response to 19:**  Disputed. Shutterstock adds the watermark bearing its logo to its images, and requires that its API partners do the same, in order to identify the images as Shutterstock's own intellectual property and to advertise its brand. Burroughs Decl. ¶¶ 4, 20; **Ex. 28; 38** at 73:7-75:11; 22:3-21; 126:15-21; Expert Report of Thomas Maddrey, Dkt. 90-1.

20.     Anyone may license the contributor-uploaded images on demand through an entirely automated process on Shutterstock's website on a "royalty-free" basis and choose from Shutterstock's various licensing models.  *See* Shimmin Decl. ¶ 18.

**Plaintiff's Response to 20:**  Disputed. Shutterstock actively controls the licensing process on its platform, actively selecting the content available, setting prices, offering both subscription packages and individual licenses, and processes every transaction. Shutterstock is directly responsible and controls what images are made available for licensing on its platform and may actively remove images from its website at any time. Burroughs Decl. ¶¶ 4, 7, 13, 18; **Exs. 8, 17; 38** at 29:14-20; 205:13-19. Shutterstock has control over all images before they are delivered to clients RJN, **Ex. 33**

21.     Shutterstock only provides the unwatermarked, high-resolution copy of an image to a customer that has licensed it.  *Id.* ¶¶ 19, 31; *see also* Heck Decl. ¶¶ 10, 13.

**Plaintiff's Response to 21:** Not disputed except that it also provides the works as part of subscription packages.

**D.**    **Shutterstock's DMCA Policy**

22.    Shutterstock has a "DMCA Policy" on its website that sets forth the procedure for submitting notices of copyright infringement (also known as "takedown notices") to Shutterstock pursuant to the Digital Millennium Copyright Act ("DMCA").  *See* Shimmin Decl. ¶ 21, Ex. F.

**Plaintiff's Response to 22:** Not disputed that this webpage describes a policy for submitting notices of copyright infringement under the DMCA.

23.    Shutterstock's DMCA Policy identifies and provides the contact information for Shutterstock's designated agent for receiving takedown notices.  *Id.* ¶ 22, Ex. F.

**Plaintiff's Response to 23:** Disputed. The evidence cited shows a DMCA notice webpage but does not name or identify a particular DMCA agent for Shutterstock. **Ex. F.**

24.    Shutterstock's designated agent has been registered with the U.S. Copyright Office and listed in the U.S. Copyright Office's public directory at all relevant times.  *Id.* ¶ 22, Ex. G.

**Plaintiff's Response to 24:** Disputed. The evidence cited shows DMCA Designated Agent Directory page for Shutterstock but only names and identifies a particular agent until October 9, 2020. **Ex. G.**

25.    Shutterstock supports and encourages copyright owners to send DMCA takedown notices if they believe their copyright has been infringed.  *Id.* ¶ 23.

**Plaintiff's Response to 25:**  Disputed on the basis that the cited evidence does not provide support for this claim. Further Disputed on the basis that Shutterstock strips all author metadata

from all photographs that it displays on its site and does not review copyright notices included in the metadata of images submitted to its platform. Burroughs Decl. ¶4; **Ex. 38** at 238:13-240:25.

26.     Shutterstock promptly investigates and responds to DMCA takedown notices, on average, within 75 hours of receipt.  *Id.* ¶ 24.

**Plaintiff's Response to 26:** Disputed. The cited evidence does not provide any support for this claim, and Shutterstock provides no data whatsoever to evidence this claim. Further disputed on the basis that Shutterstock has previously failed to respond to DMCA takedown notices for more than a month. See *Steinmetz v. Shutterstock, Inc., et al*, 1:21-cv-07100 (S.D.N.Y.).  Plaintiff's work at issue is still live as of February 2023 on Shutterstock partner sites. Ex. 50. It remained on Shutterstock's site and partner sites long after notice. Exs. 24, 25, 26.

27.     Shutterstock's "repeat infringer" policy is set forth in its Contributor Terms of Service, wherein Shutterstock expressly reserves the right to "suspend access to [any] Content [uploaded by a contributor] and terminate [the contributor's] account" in the event that Shutterstock "receives a [copyright infringement] complaint about [the contributor's] Content." *Id.* ¶ 25, Ex. A, § 12(e).

**Plaintiff's Response to 27:** Disputed to the extent that this language constitutes a repeat infringer policy under the DMCA. The cited evidence makes no reference of repeat copyright infringement or what actions Shutterstock will take in the event of repeated copyright infringement claims against any of its contributors. **Ex.** A.

28.     Shutterstock regularly removes content and terminates contributors' accounts, where appropriate, due to alleged infringing activity.  *Id.* ¶ 26.

**Plaintiff's Response to 28:** Disputed. The cited evidence does not provide support for this claim. Further disputed on the basis that Shutterstock failed to terminate the contributor account

for "Hane Street" until February of 2021, despite having knowledge that Hane Street was an infringer as early as March 2020. **Burroughs Decl. ¶¶ 27, 28; Ex. 43, 44.** Further disputed on the basis that Shutterstock failed to terminate the contributor account for "Raza 76J" for at least 2 months after receiving notice that Raza 76J was an infringer. **Burroughs Decl. ¶ 29; Ex. 45.**

29.     Shutterstock has received relatively few DMCA takedown notices in connection with contributor-uploaded images, and often such notices are sent in error. *Id.* ¶ 27; *see also* Heck Decl. ¶ 29.

**Plaintiff's Response to 29:** Disputed. The cited evidence provides no support for these claims. Shutterstock's employee provides no data which supports the unsubstantiated figures it presents as proof that Shutterstock receives "relatively few" DMCA takedown notices. Further disputed as to the definition of "relatively few," which is vague and ambiguous in the context. Further disputed to the extent that it implies any factual conclusions concerning the amount of infringing content displayed on Shutterstock's platform. Furthermore, the declaration of Steve Heck provides no evidence whatsoever to support claims that DMCA takedown notices are often "sent in error," and identifies no instances in which any DMCA takedown notices were sent in error. Shimmin Decl. ¶ 27; Heck Decl. ¶ 29. The fact that Shutterstock has been charged with copyright infringement in at least nine lawsuits since 2015 also disputes this claim. See *Tamara Williams v. Shutterstock, Inc., et al*; 1-21-cv-05784 (E.D.N.Y); *Steinmetz v. Shutterstock, Inc., et al*, 1:21-cv-07100 (S.D.N.Y.); *Cavanaugh v. Shutterstock, Inc., et al*, 1-21-cv-03796 (S.D.N.Y.); *Itasca Images, LLC et al v. Shutterstock, Inc., et al*, 0-21-cv-00287 (D.MN); *Lickerish, Ltd. v. Shutterstock Inc.*, 1-20-cv-05384 (S.D.N.Y.); *Penske Media Corporation v. Shutterstock, Inc.*, 1-20-cv-04583 (S.D.N.Y.); *Grossman Enterprises LLC v. Hubbard Broadcasting, Inc., et al.*, 1-20-cv-03023 (S.D.N.Y.); *Michael Grecco Productions, Inc. v. Rex Features, Ltd., et al.*, 2-20-cv-

00787 (C.D.CA); *Michael Grecco Productions, Inc. v. Shutterstock, Inc., et al.*, 2-19-cv-01153 (CD.CA).

30.     Shutterstock does not promote, encourage, market, or knowingly distribute infringing content on its website and has no incentive to do so.  Shimmin Decl. ¶¶ 28, 49; *see also id.* ¶¶ 20, 25; Heck Decl. ¶ 21.

**Plaintiff's Response to 30:** Disputed. Shutterstock displayed and marketed infringing content on its website in the form of the more than 300 Infringing Copies of McGucken's copyrighted work. McGucken Decl. ¶ 7; **Exs. 3, 20.** Shutterstock also has a clear incentive to promote and market infringing activity on its website, as it promotes its "high-quality" photography portfolio and any infringing content sold or licensed through Shutterstock's website will directly financially benefit Shutterstock, and indeed selling and licensing "high-quality" content is the core of Shutterstock's business model. Burroughs Decl. ¶¶ 4, 6, 7; **Exs. 9** at pg. 29; **38** at 178:24-180:10; 182:23-183:6; 42; RJN, **Ex. 33**.

31.     Shutterstock represents and warrants to licensees that the "contributors have granted Shutterstock all necessary rights in and to the [licensed] Content," and that the licensees' proper use of such content "will not infringe a third party's copyright."  Shimmin Decl. ¶ 28, Ex. H, §§ 3.1(a) & (c).

**Plaintiff's Response to 31:** Not disputed that the document includes that language.

E.     **Plaintiff's Takedown Notice**

32.     On December 30, 2020, counsel for plaintiff Elliot McGucken ("Plaintiff") emailed Shutterstock to request removal of the one image shown below ("Noticed Image"), but failed to include key statements set forth in Section 512(c)(3)(A) of the DMCA, namely, that the information in the email was accurate, and under penalty of perjury, that the sender was

authorized to act on behalf of the owner of an exclusive right that was allegedly being infringed. *See* Lackman Decl. ¶ 5, Ex. D; Shimmin Decl. ¶ 30.

**Plaintiff's Response to 32:** Disputed to the extent that it characterizes the contents and sufficiency of the email. The email plainly identified the sender as McGucken's attorney acting on behalf McGucken. The email further accurately informed Shutterstock McGucken's work was being displayed and sold on Shutterstock's website and requested that Shutterstock remove the infringement from Shutterstock's platform, and provide a full accounting of sales, licenses, and downloads of the work from Shutterstock's platform. The email further identified the URL at which the infringement could be found on Shutterstock's website. **Ex. D.**

**Plaintiff's Noticed Image**



33.    On January 4, 2021, Shutterstock responded to request that Plaintiff provide a takedown notice in compliance with the DMCA. *See* Lackman Decl. ¶ 5, Ex. D; Shimmin Decl. ¶ 30.

**Plaintiff's Response to 33:** Disputed to the extent it implies the legal conclusion that McGucken's correspondence was not in compliance with the DMCA. Shutterstock sent an email to McGucken's counsel stating Shutterstock's requirements for a takedown notice and indicating

13

that McGucken's counsel could provide additional information following these requirements. Shutterstock's email did not otherwise respond to any of the information in McGucken's original email. **Ex. D.**

34.    On January 15, 2021, Plaintiff sent a takedown notice to Shutterstock ("Takedown Notice"), indicating that the Noticed Image had been posted to Shutterstock's website at two URLs without Plaintiff's authorization and requesting removal therefrom.  *See* Lackman Decl. ¶¶ 6-7, Exs. E & F; Shimmin Decl. ¶ 31.

**Plaintiff's Response to 34:** Not disputed that McGucken sent a takedown notice to Shutterstock containing the above.

35.    Plaintiff's Takedown Notice identified two URLs—one linking to the page of Shutterstock's customer-facing website at which Shutterstock displayed a low-resolution, watermarked copy of the Noticed Image; and another linking to a ".jpg" file of a thumbnail version of the Noticed Image.  *See* Lackman Decl. ¶ 7, Ex. F; Shimmin Decl. ¶ 31.

**Plaintiff's Response to 35:** Disputed to the extent it implies that only a low-resolution copy of the image at issue was made available at the identified URLs. The photograph identified in the takedown notice and accessible at the identified URLs was being offered for sale and license as a large, full-resolution copy. McGucken Decl. ¶ 7; **Ex. 20.**

36.    On January 19, 2021, Shutterstock removed the Noticed Image from both of the URLs identified in Plaintiff's Takedown Notice and informed Plaintiff of same.  *See* Lackman Decl. ¶ 6, Ex. E; Shimmin Decl. ¶ 32; *see also* Lackman Decl. ¶ 8, Ex. G [Supplemental Response to Interrogatory No. 14]; *id.* ¶ 3, Ex. B [Response to RFA No. 1].

**Plaintiff's Response to 36:** Disputed. The image identified in McGucken's takedown notice was still being displayed on Shutterstock's website as of July 2020. Burroughs Decl. ¶ 19; **Ex. 24** at

14

MCG002031.

37.     The Noticed Image had been uploaded to Shutterstock's website by a third-party

contributor located in Bangladesh by the name of Moajjem Hossain under his account name

Hane Street ("Hane Street") on or about April 20, 2020.  *See* Shimmin Decl. ¶ 33, Ex. J;

Lackman Decl. ¶ 8, Ex. G [Supplemental Response to Interrogatory No. 14].

**Plaintiff's Response to 37:** Disputed to the extent that it indicates that Moajjem Hossain

uploaded the images at issue to Shutterstock's platform. Moajjem Hossain, a/k/a Hane Street,

submitted McGucken's works to Shutterstock, where they were thoroughly reviewed and

evaluated by Shutterstock and expressly approved by Shutterstock's review team. Shutterstock

then uploaded the images to its public facing platform itself and made them available for license.

Burroughs Decl. ¶¶ 4, 6, 7; **Ex. 9** at pg. 19; RJN**, Ex. 33; Ex. 38** at 49:14-25, 55:23-57:14, 61:22-

63:17.

38.     Shutterstock had no specific knowledge or awareness of the Noticed Image or the

alleged infringement prior to receiving Plaintiff's Takedown Notice.  Shimmin Decl. ¶ 34.

**Plaintiff's Response to 38:** Disputed. Shutterstock had was aware of each of the 337 of

McGucken's photographs at issue when it reviewed each photograph, including reviewing each

photograph's metadata identifying McGucken as the author and owner of the photographs and

actively approved each photograph for display and licensing. Burroughs Decl. ¶¶  4, 9, 14; **Exs.**

**12, 19; 38** at 95:19-96:12; 46.

39.     Plaintiff's Takedown Notice was the first complaint that Shutterstock had ever

received regarding Hane Street.  *Id.* ¶ 33; *see also id.* ¶ 38.

**Plaintiff's Response to 39:**  Disputed. Shutterstock has previously received a takedown notice

concerning Hane Street in March 2020, and was involved in a lawsuit for copyright infringement

over its display and offering for sale of same. See *Itasca Images, LLC et al v. Shutterstock, Inc.*, et al, 0-21-cv-00287 (D.MN). SUF ¶ 48; Burroughs Decl. ¶ 15; **Ex. 21.**

40.     Plaintiff's Takedown Notice solely identified the Noticed Image; it did not identify, request removal of, or refer in any way, to any of the other images uploaded by Hane Street or any other contributor.  *Id.* ¶ 35; Lackman Decl. ¶ 7, Ex. F; *see also id.* ¶ 9, Ex. H, pp. 219:23-220:21, 223:17-224:7.

**Plaintiff's Response to 40:** Disputed to the extent it implies Shutterstock had no prior knowledge of its infringing conduct. Burroughs Decl. ¶¶ 18, 21; **Exs. 18, 19.**

**F.     Plaintiff's Complaints and the Images**

41.     On February 2, 2022, Plaintiff filed the initial Complaint in this action, claiming, *inter alia*, that Shutterstock infringed his purported copyright rights in the Noticed Image and 324 other images (collectively, and together with the twelve additional images identified below, the "Images").  *See* Dkt. No. 1.

**Plaintiff's Response to 41:** Not disputed that on February 2, 2022, McGucken filed the instant action against Shutterstock, which includes claims of copyright infringement against Shutterstock for the unlawful exploitation of 337 of McGucken's original and copyrighted works.

42.     All of the Images in the Complaint, except for one, were uploaded to Shutterstock's platform by Hane Street (collectively, the "Hane Street Images"), between April 22, 2020 and November 18, 2020.  *See* Shimmin Decl. ¶ 37, Ex. N.

**Plaintiff's Response to 42:** Disputed to the extent it indicates that Hane Street was responsible for uploading the Infringing Copies to Shutterstock's platform. Hane Street submitted the Infringing Copies to Shutterstock, and Shutterstock then reviewed and expressly approved each

submitted image. Only after it approved each image did Shutterstock itself make the Infringing

Copies available on Shutterstock's platform. Burroughs Decl. ¶¶ 4, 6, 7; **Ex. 9** at pg. 19; RJN,

**Ex. 33**; **Ex. 38** at 49:14-25, 55:23-57:14, 61:22-63:17..

43.     The one other Image in the Complaint was uploaded to Shutterstock's platform by

a third-party contributor located in India by the name of Gouranga Charan Bishoi ("Bishoi" and

the "Bishoi Image"), on or about March 19, 2018.  *Id.* ¶ 37, Ex. K.

**Plaintiff's Response to 43:**  Disputed to the extent it indicates that Bishoi was responsible for

uploading the Infringing Copies to Shutterstock's platform. Bishoi submitted the infringing

image to Shutterstock, and Shutterstock then reviewed and expressly approved each submitted

image. Only after it approved each image did Shutterstock itself make the Infringing Copies

available on Shutterstock's platform. Burroughs Decl. ¶¶ 4, 6, 7; **Ex. 9** at pg. 19; RJN, **Ex. 33;**

**Ex. 38** at 49:14-25, 55:23-57:14, 61:22-63:17. Further disputed to the extent that the cited

evidence does not provide support for this claim, as Exhibit K identifies Bishoi as a Shutterstock

contributor but does not identify any image in this case.

44.     Despite admitting in his deposition that he was aware of the alleged infringement,

Plaintiff did not send any takedown notices to Shutterstock regarding the Hane Street Images

(except for the one Noticed Image) and/or the Bishoi Image, or otherwise notify Shutterstock of

the alleged infringement, prior to filing the Complaint.  *Id.* ¶ 38; Lackman Decl. ¶ 2, Ex. A

[Responses to Interrogatory Nos. 16-17]; *id.* ¶ 8, Ex. G [Supplemental Response to Interrogatory

No. 14]; *id.* ¶ 9, Ex. H, pp. 115:21-116:2, 117:10-13, 118:17-121:5, 183:9-21, 193:12-24, 228:3-

11.

**Plaintiff's Response to 44:** Disputed. The evidence cited does provide support to the claims, as

McGucken did not state in deposition that he was aware of all relevant instances of infringement

by Shutterstock prior to the filing of this case.

45.     On January 23, 2019 (*i.e.*, before Plaintiff filed the Complaint), Shutterstock removed the Bishoi Image from its website and terminated Bishoi's contributor account, after Shutterstock's matching software detected potential infringement regarding certain other images uploaded by Bishoi.  Shimmin Decl. ¶ 38, Ex. K; *see also* Lackman Decl. ¶ 2, Ex. A [Response to Interrogatory No. 17].

**Plaintiff's Response to 45:** Disputed, Shutterstock failed to fully remove the Infringing Copies of McGucken's work from its website until at least May 2022. Burroughs Decl. ¶ 28; **Ex. 44.**

46.     On February 11, 2021 (*i.e.*, before Plaintiff filed the Complaint), Shutterstock removed all of the Hane Street Images from its website[1] and terminated Hane Street's contributor account, after receiving a complaint from another party regarding other images uploaded by Hane Street.  Shimmin Decl. ¶ 38, Ex. J; Lackman Decl. ¶ 8, Ex. G [Supplemental Response to Interrogatory No. 14]; *see also id.* ¶ 3, Ex. B [Response to RFA No. 1].

**Plaintiff's Response to 46:** Disputed, Shutterstock failed to fully remove the Infringing Copies of McGucken's work from its website until at least May 2022. Burroughs Decl. ¶ 28; **Ex. 44.**

47.     On April 29, 2022, Plaintiff filed the operative First Amended Complaint (Dkt. No. 17) ("Amended Complaint" or "FAC"), identifying an additional twelve (for a total of 337) Images.  *See* FAC, Dkt. No. 17, ¶ 18, Ex. 2.

**Plaintiff's Response to 47:** Not disputed that McGucken filed a First Amended Complaint on the above date identifying an additional twelve of McGucken's works being infringed by Shutterstock.

---

[1] As stated *supra* (¶ 36), Shutterstock had already removed one of the Hane Street Images—*i.e.*, the Noticed Image—by this point in response to Plaintiff's Takedown Notice.

48.     The additional twelve Images in the Amended Complaint were uploaded to Shutterstock's platform by a third-party contributor located in Pakistan by the name of Muhammad Raza a/k/a Raza 76j ("Raza" and the "Raza Images"), between May 3, 2021 and April 8, 2022.  *See* Shimmin Decl. ¶ 40, Ex. L.

**Plaintiff's Response to 48:** Disputed to the extent it implies that Raza Images was responsible for uploading the images to Shutterstock's platform. Hane Street submitted the Infringing Copies to Shutterstock, and Shutterstock then reviewed and expressly approved each submitted image. Only after it approved each image did Shutterstock itself make the Infringing Copies available on Shutterstock's platform. Burroughs Decl. ¶¶ 4, 6, 7; **Ex. 9** at pg. 19; RJN, **Ex. 33; Ex. 38** at 49:14-25, 55:23-57:14, 61:22-63:17.

49.     Despite admitting in his deposition that he was aware of the alleged infringement, Plaintiff did not send any takedown notices to Shutterstock regarding the Raza Images, or otherwise notify Shutterstock of the alleged infringement, prior to filing the Amended Complaint.  *Id.* ¶ 41; Lackman Decl. ¶ 9, Ex. H, pp. 115:21-116:2, 117:10-13, 118:17-121:5, 183:9-21, 193:12-24, 228:3-11, 230:10-16; *id.* ¶ 2, Ex. A [Responses to Interrogatory Nos. 16-17]; *id.* ¶ 8, Ex. G [Supplemental Response to Interrogatory No. 14].

**Plaintiff's Response to 49:** Disputed. The evidence cited does provide support to the claims. McGucken did not state in deposition that he was aware of all relevant instances of infringement by Shutterstock prior to the filing of this case.

50.     On April 18, 2022 (*i.e.*, before Plaintiff filed the Amended Complaint), Shutterstock removed all of the Raza Images from its website and terminated Raza's contributor account, after receiving notice of unrelated infringing activity from a "Good Samaritan" on April 13, 2022.  Shimmin Decl. ¶ 41, Exs. L & M; Lackman Decl. ¶ 8, Ex. G [Supplemental Response

to Interrogatory No. 14]; *see also id.* ¶ 3, Ex. B [Response to RFA No. 1].

**Plaintiff's Response to 50:**  Disputed to the extent that Shutterstock failed to terminate Raza'a account for 2 months after receiving notice that it was contributing infringing content. Burroughs Decl. ¶ 29; **Ex. 45.** Further disputed to the extent that it implies that Shutterstock removed all of the Raza Images as of April 18, 2022, as said images continued to be displayed on Shutterstock's API partner sites, which displayed the images by accessing them from Shutterstock's library, until at least August 2022. Burroughs Decl, ¶¶ 4, 19; **Exs. 24, 26, 38** at 137:10-24; 139:8-140:6.

51.     Plaintiff knew about the infringement alleged in the Complaint and Amended Complaint prior to filing but did not send a takedown notice (except for the one Noticed Image). *See* Lackman Decl. ¶ 9, Ex. H, pp. 115:21-116:2, 117:10-13, 118:17-121:5, 183:9-21, 193:12-24, 228:3-11, 226:4-14, 228:3-11, 230:10-16; *id.* ¶ 10, Ex. I [Supplemental Responses to RFA Nos. 10, 11, 14]; *see also* Shimmin Decl. ¶¶ 35, 38, 41, 43-44.

**Plaintiff's Response to 51:** Disputed to the extent that McGucken was aware of all instances of infringement relevant to this case. The evidence does not support that McGucken was aware of all the instances of infringement alleged in the Complaint and Amended Complaint prior to filing either. Disputed to the extent it implies Shutterstock had no prior knowledge of its infringing conduct. Burroughs Decl. ¶¶ 14, 21; **Exs. 18, 19.**

**G.     The Contributors**

52.     Each of the contributors at issue—*i.e.*, Hane Street, Bishoi, and Raza (collectively, "Contributors")—accepted and agreed to Shutterstock's Contributor Terms of Service prior to uploading the Images to Shutterstock's platform.  *See* Shimmin Decl. ¶ 45, Exs. B & C.

**Plaintiff's Response to 52:** Not disputed.

53.     Plaintiff has not sued the Contributors for copyright infringement.  *Id.* ¶ 46;

Lackman Decl. ¶ 9, Ex. H, p. 196:2-6.

**Plaintiff's Response to 53:** Not disputed.

**H.       Copyright Management Information**

54.     Some of the Images that Shutterstock obtained from the Contributors contained

no "copyright management information" (or "CMI") at the time of upload.  Shimmin Decl. ¶ 48;

Lackman Decl. ¶ 9, Ex. H, pp. 168:2-169:6; *see also id.* ¶ 2, Ex. A [Response to Interrogatory

No. 16]; *id.* ¶ 3, Ex. B [Response to RFA No. 19].

**Plaintiff's Response to 54:** Disputed to the extent it implies that each image did not include

copyright management information. Each of the images at issue contained copyright

management information in the form of metadata identifying McGucken as the owner and author

of each image. McGucken Decl. ¶¶ 4; **Exs. 3-4;** Burroughs Decl. ¶ 33; **39** at 150:24-151:9. This

claim is further disputed by evidence of at least 750 instances of metadata identifying McGucken

being received by Shutterstock in connection with the images at issue. Burroughs Decl. ¶ 14; **Ex.**

**19.**

55.     To the extent the Images contained CMI in the metadata at the time of upload, it

was automatically removed during the ingestion process.  *See* Shimmin Decl. ¶¶ 15, 47-48; *see*

*also* Heck Decl. ¶ 11.

**Plaintiff's Response to 55:** Disputed. Metadata is not automatically removed from images when

Shutterstock receives them from contributors but is reviewed by Shutterstock's team of human

reviewers for each image before the image cann be made available on Shutterstock's platform.

Furthermore, Shutterstock had access to and records of the metadata contained in McGucken's

images at the time they were submitted to Shutterstock by contributors. Burroughs Decl. ¶ 14;
**Ex. 19.**

I.      **Lingering Thumbnails of the Images**

56.      Shutterstock does not remove the thumbnails associated with allegedly infringing
images from its back-end servers unless the copyright owner specifically identifies them in a
takedown notice.  Shimmin Decl. ¶ 50; *see also* Heck Decl. ¶¶ 24, 27.

**Plaintiff's Response to 56:** Not disputed that Shutterstock does not remove these copies of
infringing images from its servers. Disputed to the extent it implies that Shutterstock removes
these copies of infringing images  once it has been given notice that these copies are infringing.
Burroughs Decl. ¶¶ 19, 20; **Exs. 24, 25, 26, 28**; McGucken Decl. ¶ 13; Ex. 50.

57.      Shutterstock keeps the thumbnails in its back-end servers for recordkeeping
purposes and to detect and prevent future infringing activity.  *See* Shimmin Decl. ¶ 50; Lackman
Decl. ¶ 2, Ex. A [Responses to Interrogatory Nos. 11 & 16]; *see also* Heck Decl. ¶ 27.

**Plaintiff's Response to 57:** Disputed. Shutterstock keeps these types of thumbnails and copies
of images for commercial purposes, principally to offer said images for sale and license.
Burroughs Decl. ¶¶ 19, 20; **Exs. 24, 25, 26, 28**.  McGucken Decl. ¶ 13, Ex. 50.

58.      In addition, not all copies of an image may be readily findable.  *See* Shimmin
Decl. ¶¶ 50-51; Heck Decl. ¶¶ 24, 27.

**Plaintiff's Response to 58:** Disputed. The cited evidence does not support this claim. This claim
is further disputed by the fact that Shutterstock creates a dedicated "Asset Detail Page" for every
image on its website. Burroughs Decl. ¶¶ 4, 11; **Exs. 15; 38** at 175:4-180:2**.**

59.      Plaintiff did not send any takedown notices or otherwise notify Shutterstock of the
allegedly infringing thumbnails associated with the Images (except for the one thumbnail

associated with the Noticed Image, which Shutterstock expeditiously removed in response to

Plaintiff's Takedown Notice specifically identifying same).  Shimmin Decl. ¶ 51; *see also id.* ¶

32; Lackman Decl. ¶ 8, Ex. G [Supplemental Response to Interrogatory No. 14].

**Plaintiff's Response to 59:**   Disputed to the extent it implies Shutterstock had no prior

knowledge of its infringing conduct and that Shutterstock removed the infringing copies.

Burroughs Decl. ¶¶ 14, 21, 19; **Exs. 18, 19, 24** at MCG002031**.**

      60.     Upon removal of the Images, the thumbnails associated with the Images remained

in Shutterstock's back-end servers, but were not visible on Shutterstock's website and could not

be found by the general public (and, even if somehow found, could not be licensed).  Shimmin

Decl. ¶¶ 51-52; *see also* Heck Decl. ¶¶ 24, 28.

**Plaintiff's Response to 60:** Disputed. Shutterstock continued to make thumbnail and other

copies of the Infringing Copies available publicly on its API partner websites as of at least

August of 2022 and the date of this filing, February 17, 2023. Burroughs Decl. ¶ 19; **Exs. 24, 26;**

McGucken Decl. ¶13**, Ex. 50.**

      61.     On May 17 and 18, 2021, following a series of requests from plaintiff Itasca

Images, LLC that identified the thumbnails that the plaintiff wanted removed, Shutterstock

voluntarily removed all thumbnails associated with the Hane Street Images from its back-end

servers.  Shimmin Decl. ¶ 53.

**Plaintiff's Response to 61:** Disputed. Shutterstock continued to make thumbnail and other

copies of the Infringing Copies contributed by Hane Street available publicly until at least July

2022 and the date of this filing, February 17, 2023. Burroughs Decl. ¶ 19; **Exs. 24;** McGucken

Decl**. ¶ 13, Ex. 50.**

62.     On February 16, 2022, Shutterstock voluntarily removed all thumbnails associated with the Bishoi Image from its back-end servers.  *Id.* ¶ 54.

**Plaintiff's Response to 62:** Disputed. Shutterstock continued to make thumbnail copies of the Bishoi Image available on its API partners as of at least July 8, 2022. Burroughs Decl. ¶ 19; **Ex. 24,** MCG002081.

63.     On May 11, 2022, Shutterstock voluntarily removed all thumbnails associated with the Raza Images from its back-end servers.  *Id.* ¶ 55.

**Plaintiff's Response to 63:** Disputed. Shutterstock continued to make thumbnail and other copies of the Infringing Copies contributed by Raza available publicly on its API partner websites as of at least August of 2022. Burroughs Decl. ¶ 19; **Exs. 24, 26**. These copies are only available on Shutterstock's API partner websites when they are still stored on Shutterstock's own website and/or servers. Burroughs Decl. ¶ 4; **Ex. 38** at 137:10-24.

**J.      Licensing of the Images**

64.     With authority of the Contributors who placed the Images on the platform, Shutterstock issued a total of 938 licenses to third-party customers (collectively, "Licensees") for 165 of the Images and generated a total of $2,131.60 therefrom, a portion of which was paid to the Contributors.  *Id.* ¶ 56-57.

**Plaintiff's Response to 64:** Disputed to the extent that it implies the Contributors at issue had the right to authorize Shutterstock or anyone to license McGucken's images at issue. McGucken is the copyright owner for each of the images at issue, and accordingly has the exclusive right to license or authorize others to license or distribute said images. McGucken Decl. ¶ 5; **Ex. 5.** Not disputed that Shutterstock issue 938 licenses for the images and generated $2,131.60 as a result.

65.     Approximately 65 of the 938 licenses were licensed under a free trial subscription

and Shutterstock received no revenue therefrom.  *Id.*; Lackman Decl. ¶ 2, Ex. A [SSTK

Response to Interrogatory No. 13].

**Plaintiff's Response to 65:** Disputed to the extent that Shutterstock generated no revenue from

these images. Shutterstock uses images such as the Infringing Copies to advertise its

subscriptions and attract new customers to its website, which generates revenue for Shutterstock

attributable to the infringement of McGucken's works. Burroughs Decl. ¶¶ 7, 15; **Exs. 21;** RJN**,**

**Ex. 33**

66.      172 of the Images were never licensed and Shutterstock received no revenue

therefrom.  Shimmin Decl. ¶ 58.

**Plaintiff's Response to 66:** Disputed to the extent that Shutterstock asserts that it generated no

revenue from these images. Shutterstock uses images such as the Infringing Copies to advertise

its subscriptions and attract new customers to its website, which generates revenue for

Shutterstock attributable to the infringement of McGucken's works. Burroughs Decl. ¶¶ 4, 7 15,

19, 20; **Exs. 21, 27, 38** at 136:6-22, 139:8-140:6; RJN, **Ex. 33**

67.      The high-resolution, unwatermarked copies of the 172 Images were never

accessible or provided to anyone.  *Id.*; *see also* Heck Decl. ¶¶ 10, 13-14.

**Plaintiff's Response to 67:** Disputed. Shutterstock made available via download high resolution

and unwatermarked copies of the Infringing Copies to its licensees and partners. Burroughs Decl.

¶¶ 4, 14, 15, 16, 19, 20; **Exs. 20, 21, 22, 24, 25, 26, 27, 38** at 130:23-131:2.

68.      On June 3, 2022, after it was clear that McGucken did not intend to address the

matter amicably in a way that would avoid pulling in the licensees or interfering with their

unknowing license of an image claimed by a third party, Shutterstock sent "kill notices" to the

Licensees, informing them that a legal claim has been made in connection with the Images and

requesting that they cease all use.  Shimmin Decl. ¶ 59, Ex. P; Lackman Decl. ¶ 3, Ex. B [SSTK Response to RFA No. 30]; *see also* Heck Decl. ¶ 32.

**Plaintiff's Response to 68:** Disputed.  McGucken repeatedly attempted to resolve this dispute amicably, including through prior correspondence. Further disputed to the extent it implies that Shutterstock informed its licensees of the nature of McGucken's claims or his ownership of the images. Burroughs Decl. ¶¶ 13, 17; **Exs. 17, 23.** McGucken Decl. ¶ 11; **29.**

69.    Shutterstock does not have any right or ability to control the activities of its Licensees.  Shimmin Decl. ¶ 59.

**Plaintiff's Response to 69:** Disputed. Shutterstock has the right and ability to notify its licensees that any use of the Infringing Copies would violate McGucken's exclusive rights and has the ability to control its licensees continued access to the Infringing Copies by removing said copies from its platform. Burroughs Decl. ¶¶ 17, 18; **Exs. 17, 23**.

70.    Plaintiff has filed separate lawsuits against two of the Licensees claiming infringement of two of the Images at issue based on information provided in this case.  *See McGucken v. JJOK, LLC*, No. 2:22-cv-06095 (C.D. Cal. Aug. 26, 2022); *McGucken v. Lonely Planet USA, LLC*, No. 2:22-cv-05476 (C.D. Cal. Aug. 4, 2022); *see also* Lackman Decl. ¶ 9, Ex. H, p. 299:15-17 (acknowledging recent lawsuit filed against JJOK).

**Plaintiff's Response to 70:** Disputed to the extent the information was provided publicly or by third parties.

**K.    Shutterstock's API and The Third-Party Websites That Integrate It**

71.    Shutterstock offers an "API" (or "application programming interface") that automatically provides real-time access to Shutterstock's entire library of content, including millions of contributor-submitted images, and the ability to search, license, and/or download

such content.  Shimmin Decl. ¶ 60; *see also* Heck Decl. ¶¶ 17-18, 20.

**Plaintiff's Response to 71:** Not disputed.

72.     TinEye, StockFresh, and HelloRF are among the thousands of third-party websites that integrate Shutterstock's API (collectively, "API User Platforms").  Shimmin Decl. ¶ 61.

**Plaintiff's Response to 72:** Not disputed

73.     Shutterstock does not own or control TinEye, StockFresh, or HelloRF.  *Id.* ¶ 62.

**Plaintiff's Response to 73:** Disputed. Shutterstock owns HelloRF in part. Burroughs Decl. ¶ 26; **Ex. 34.** Further disputed to the extent that Shutterstock claims to now have any control over TinEye, StockFresh, or HelloRF. Each of these companies are partners of Shutterstock, and Shutterstock has partnership agreements with each of them dictating the way in which they may access Shutterstock's images, and dictating required terms and actions which the partner must comply with, including displaying images with Shutterstock's watermark and advertising for Shutterstock. Burroughs Decl. ¶¶ 19; **Exs. 24, 25, 26, 27.** Shutterstock also controls its partners access to the images in the Shutterstock library. **Ex. 38** at 137:10-24.

74.     The API automatically provides real-time access to the same content available on Shutterstock's website.  *Id.* ¶¶ 60, 63-66; *see also* Heck Decl. ¶¶ 19-20.

**Plaintiff's Response to 74:** Disputed to the extent that this process is entirely automatic. Shutterstock provides its API partners with access to the images on its websites and a link to copies of Shutterstock's computer files, and only does so after they have signed an API partnership agreement. Burroughs Decl ¶¶ 19, 20; **Exs. 24, 25, 26, 27, 28.**

75.     The Images at issue automatically became completely unavailable for license via the API User Platforms immediately upon being removed from Shutterstock's website.  Shimmin

Decl. ¶ 67; *see also* Heck Decl. ¶¶ 19, 28.

**Plaintiff's Response to 75:** Disputed. Shutterstock continued to exploit the Images on its API

partner websites until at least August and September 2022 and even February 17, 2023.

McGucken Decl. ¶ 13, Ex. 50; Burroughs Decl. ¶¶ 19, **Exs. 24, 25, 26**.

76.     Plaintiff has not sent takedown notices or otherwise notified TinEye, StockFresh,

or HelloRF regarding the allegedly infringing Images.  Shimmin Decl. ¶ 68; Lackman Decl. ¶ 9,

Ex. H, pp. 197:25-198:9, 213:5-13, 217:15-19.

**Plaintiff's Response to 76:** Not Disputed.

77.     Plaintiff has not sued TinEye, HelloRF, or StockFresh for copyright infringement.

Shimmin Decl. ¶ 68.

**Plaintiff's Response to 77:** Not disputed.

**L.     Copyright Registrations**

78.     44 of the Images are allegedly subject to U.S. Copyright Registration No.

VA0002089199, which was registered as a "Group Registration [of Published] Photos" and

contains "Approximately 20,358 Photos."  *See* Lackman Decl. ¶ 11, Ex. J.

**Plaintiff's Response to 78:** Not disputed.

79.     One of the Images is allegedly subject to U.S. Copyright Registration No.

VA0002089207, which was registered as a "Group Registration [of Published] Photos" and

contains "Approximately 14,842 Photos."  *Id.* ¶ 12, Ex. K.

**Plaintiff's Response to 79:** Not disputed.

80.     Two of the Images are allegedly subject to U.S. Copyright Registration No.

VA0002089215, which was registered as a "Group Registration [of Published] Photos" and

contains "Approximately 14,266 Photos." *Id.* ¶ 13, Ex. L.

**Plaintiff's Response to 80:** Not disputed.

81.     Plaintiff is sophisticated in copyright filings. *See id.* ¶ 9, Ex. H, p. 311:7-19.

**Plaintiff's Response to 81:** Disputed. Plaintiff is not "sophisticated" in copyright filings, and the cited evidence does not support this claim. Further disputed as to Shutterstock's definition of "sophisticated," as it is vague and ambiguous in this context.

82.     Plaintiff knew that the Copyright Office limits group registrations of published photographs to 750 photographs. *See id.*, p. 310:1-11.

**Plaintiff's Response to 82:** Disputed. This rule went into effect on February 20, 2018. See https://www.copyright.gov/rulemaking/group-photographs/, last visited Feb. 6, 2023. https://www.govinfo.gov/content/pkg/FR-2018-01-18/pdf/2018-00687.pdf, last visited Feb. 6, 2023. See also https://home.camerabits.com/2018/03/22/changes-to-group-photo-registration-from-the-u-s-copyright-office/, last visited Feb. 6, 2023. But the three registrations at issue are dated February 19, 2018. This limitation is thus irrelevant.

83.     The Images in the foregoing registrations are not listed among the first 750 image titles. *Id.* ¶ 14.

**Plaintiff's Response to 83:** Disputed to the extent it implies McGucken was required to list these images among the first 750 image titles. The Images in the foregoing registrations are not subject to the Copyright Office requirement in light of the February 20, 2018 effective date. Otherwise, undisputed.

**M.     Fair Use**

84.     The Images depict naturally-occurring scenes and landscapes.  *See* FAC, Exs. 1-2.

**Plaintiff's Response to 84:** Disputed. The Images depict McGucken's original perspective of naturally-occurring scenes and landscapes from a fine art perspective.

85.     The Images are substantially indistinguishable from others' works.  *See* Lackman Decl. ¶ 9, Ex. H, pp. 131:11-132:13, 133:16-18; *see also* Heck Decl. ¶ 22, Ex. A.

**Plaintiff's Response to 85:** Disputed. The cited evidence does not support this claim. This is a subjective and conjectural claim, not a statement of fact. The Images are each original photographs. This claim is further disputed by the fact that McGucken's work, including a number of the Images, have been recognized for the quality and been chosen for professional photography awards. McGucken Decl. ¶ 2; **Ex. 1**.

86.     Plaintiff first published the Images before they were displayed on Shutterstock's website.  *See* Lackman Decl. ¶ 9, Ex. H, pp. 308:11-309:7; *compare id.* ¶ 11, Ex. J (for 44 Images, claiming January 1, 2015 as date of first publication) *with* Shimmin Decl. ¶ 42, Ex. N (all Images uploaded on or after March 19, 2018).

**Plaintiff's Response to 86:** Disputed to the extent that it implies that the publication of the images is relevant to this case. Otherwise, undisputed.

87.     There is no evidence that Plaintiff has ever licensed any of the Images at issue. *See* Lackman Decl. ¶ 9, Ex. H, p. 243:6-14 ("I don't think I've licensed images from this case").

**Plaintiff's Response to 87:** Not disputed.

88.     Plaintiff has never licensed any of the Images where such license permits only use of thumbnail, watermarked, and/or low-resolution versions of such images.  *Id.* ¶ 10, Ex. I [Plaintiff's Supplemental Response to RFA Nos. 15-20].

     **Plaintiff's Response to 88:** Not disputed.

Respectfully submitted,

Respectfully submitted,

Dated: February 17, 2023          By:     */s/ Scott Alan Burroughs*
New York, New York                        Scott Alan Burroughs, Esq.
                                          Laura M. Zaharia, Esq.
                                          DONIGER / BURROUGHS
                                          247 Water Street, First Floor
                                          New York, New York 10038
                                          scott@donigerlawfirm.com
                                          lzaharia@donigerlawfirm.com
                                          (310) 590-1820
                                          Attorneys for Plaintiff
                                          Elliot McGucken