UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELLIOT MCGUCKEN,

               Plaintiff,

-against-

SHUTTERSTOCK, INC.,

               Defendant.

Case No. 1:22-cv-00905 (JHR)

**DEFENDANT SHUTTERSTOCK, INC.'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND SANCTIONS**

MITCHELL SILBERBERG & KNUPP LLP

Eleanor M. Lackman (eml@msk.com)
Marissa B. Lewis (mbl@msk.com)
Elaine Nguyen (eln@msk.com)
437 Madison Ave., 25th Floor
New York, New York 10022-7001
Telephone: (212) 509-3900
Facsimile: (212) 509-7239

*Attorneys for Defendant Shutterstock, Inc.*

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.     SHUTTERSTOCK IS ENTITLED TO RECOVER ITS ATTORNEYS' FEES .......................... 2

        A.     Plaintiff's Efforts to Deflect by Re-Casting and Re-Litigating the Case Underscore the Objective Unreasonableness of His Claim. ................................................................ 2

        B.     Plaintiff Does Not Dispute Shutterstock's Complete Success on the Merits. .................. 4

        C.     Attorneys' Fees Should Be Awarded to Encourage Copyright Owners to Enforce Their Rights Pursuant to the DMCA, Not by Litigation. ............................................... 5

        D.     Plaintiff Was Improperly Motivated by the Prospect Of Windfall Statutory Damages and Settlement, Not by Vindication of Legitimate Copyright Rights. .............. 6

II.     THE DONIGER FIRM SHOULD BE SANCTIONED AND HELD JOINTLY AND SEVERALLY LIABLE ............................................................................................................. 7

III.     SHUTTERSTOCK SHOULD BE AWARDED THE FULL AMOUNT REQUESTED ............ 9

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Barclays Cap. Inc. v. Theflyonthewall.com*,
   No. 06 Civ. 4908 (DLC), 2010 WL 2640095 (S.D.N.Y. June 30, 2010) ................................10

*Beastie Boys v. Monster Energy Co.*,
   112 F. Supp. 3d 31 (S.D.N.Y. 2015)......................................................................................10

*Clarke v. Frank*,
   960 F.2d 1146 (2d Cir. 1992)..................................................................................................9

*Farberware Licensing Co. LLC v. Meyer Mktg. Co.*,
   No. 09 Civ. 2570 (HB), 2009 WL 5173787 (S.D.N.Y. Dec. 30, 2009) ..................................10

*Johnson v. Kay*,
   742 F. Supp. 822 (S.D.N.Y. 1990) ..........................................................................................9

*Johnson v. Univ. College of Univ. of Ala. in Birmingham*,
   706 F.2d 1205 (11th Cir. 1983) ............................................................................................10

*Kanongataa v. Am. Broad. Cos., Inc.*,
   No. 16 Civ. 7382 (LAK), 2017 WL 4776981 (S.D.N.Y. Oct. 4, 2017) ...................................6

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   579 U.S. 197 (2016)................................................................................................................6

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
   No. 99 Civ. 10175 (KMW), 2022 WL 1026577 (S.D.N.Y. Apr. 6, 2022) .............................10

*Romanowicz v. Alister & Paine, Inc.*,
   No. 17 Civ. 8937 (PAE) (KHP), 2018 WL 4762980 (S.D.N.Y. Aug. 3, 2018) ........................4

*Star Fabrics, Inc. v. Millenium Clothing, Inc.*,
   No. 14 Civ. 826 (SVW) (SS), 2015 WL 12656947 (C.D. Cal. Mar. 31, 2015).........................8

*Steinmetz v. Shutterstock, Inc.*,
   629 F. Supp. 3d 74 (S.D.N.Y. 2022).............................................................................. *passim*

*Sygall v. Pitsicalis*,
   18 Civ. 2730 (VSB) (SN), 2022 WL 3044773 (S.D.N.Y. May 16, 2022) ...............................8

*Tuff 'N' Rumble Mgmt., Inc. v. Profile Records, Inc.*,
   No. 95 Civ. 0246 (SHS), 1997 WL 470114 (S.D.N.Y. Aug. 15, 1997) ...................................4

*Williams v. Crichton*,
   No. 93 Civ. 6829 (LMM), 1995 WL 449068 (S.D.N.Y. July 26, 1995) ................................10

**RULES & STATUTES**

17 U.S.C. § 504(c) ..................................................................................................................7

Fed. R. Civ. P. 11 ................................................................................................................2, 9

**OTHER AUTHORITIES**

H.R. Rep. No. 105–551, pt. 2 (1998) ......................................................................................6

S. Rep. No. 105–190 (1998) ....................................................................................................5

## PRELIMINARY STATEMENT[1]

Plaintiff's Opposition confirms his and counsel's true objective for this case: seed the internet with images, eliminate the notice provisions written in the DMCA, hold every platform strictly liable for acts of third parties, and sit back and profit endlessly with demands for allegedly "willful" infringement occurring due to an isolated few third-party bad actors' uploading of unauthorized material. Judge Hellerstein made it quite clear to Plaintiff and counsel that their scheme was full of holes, and this Court confirmed the same. Yet in opposition to Shutterstock's fees Motion, Plaintiff audaciously claims that only one case (*Steinmetz*) supported Shutterstock, re-asserts legions of already-rejected cases, and implies that fees cannot be awarded where a defendant wins on a defense. Worse, Plaintiff and his counsel ask for a perverse outcome where copyright owners should *not* cooperate with the terms of the DMCA; instead, they should freely allow infringing content to circulate, and then use this Court to repeatedly sue legitimate and good-faith platforms.

Congress made a policy decision 25 years ago that expressly guarded against this outcome. Despite this, the Doniger Firm has been using serial-litigant, mostly-hobbyist landscape photographers as a tool to force legitimate platforms to either litigate, or pay each client an unjustified multimillion-dollar settlement. Nowhere in their over-length and scattershot arguments do Plaintiff or counsel dispute this fundamental fact. They do not dispute that they also have sued innocent (and indemnified) licensees of the Images, in effort to obtain double recovery. They do not deny demanding $150,000 per Image, even though they never provided Shutterstock with any reason to know that of the 420-plus million contributor-submitted assets on its platform, 337 were

---

[1] As used herein, "Motion" and "Mot." refer to Shutterstock's brief in support of its Motion for Attorneys' Fees and Sanctions (Dkt. No. 142), and "Opposition" and "Opp." refer to Plaintiff's opposition (Dkt. No. 149). Capitalized terms used herein have the same meanings as in the Motion.

allegedly infringing. And, by the time they alleged it, the Images already had been removed.

The pattern here is clear, and the desire to use the courts to change the law has no place within Rule 11 or otherwise. The contortion of legal holdings and misrepresentations of the facts in Plaintiff's Opposition only serve to underscore that Shutterstock has paid enough for its successful defense against the repeated attacks of its platform—which is important to millions of legitimate photographers, and to an ecosystem that encourages licensing rather than infringement. The best way to deter these future suits and to encourage compliance with the instructions of the DMCA is to show that if a plaintiff seeks to try to change black-letter law through litigation, he should have to bear the cost when he fails. Shutterstock's Motion should be granted in full.

## ARGUMENT

### I. SHUTTERSTOCK IS ENTITLED TO RECOVER ITS ATTORNEYS' FEES

#### A. Plaintiff's Efforts to Deflect by Re-Casting and Re-Litigating the Case Underscore the Objective Unreasonableness of His Claim.

Nowhere in Plaintiff's over-length brief is there any contention that a platform that serves to host and transmit content at the instance and direction of third parties is not within the DMCA. Nor does Plaintiff address the facts that Shutterstock disabled the image Plaintiff identified, and that **Plaintiff** is responsible under the DMCA to send notices. Instead, Plaintiff seeks to re-litigate a reformulated version of the case, offering plainly off-point law and claiming that *Steinmetz v. Shutterstock, Inc.*, 629 F. Supp. 3d 74 (S.D.N.Y. 2022), is the only case analogous to this one.

Plaintiff's straw-man argument is not only improper, it is wrong. As set forth in Shutterstock's Motion (at 8-11), Plaintiff's pursuit of this lawsuit was objectively unreasonable at all times, and his Opposition only highlights the lengths to which Plaintiff will go to avoid the consequences of his unsupported strategy. For example, Plaintiff disingenuously claims that law pertaining to a well-defined, 25-year-old statute is "developing," "somewhat uncharted," "highly

2

technical," and "relatively novel." Opp. at 3, 8, 25. But as Judge Hellerstein and this Court recognized, the statute itself makes it very clear that Shutterstock is within the DMCA safe harbor and Plaintiff is obligated to send takedown notices, which he did not do. He even claims there is some sort of a "split of authority," citing the same off-point case (*Mavrix*) that he has cited before. *Compare* Opp. at 5 *with* Dkt. No. 106 at 26-27; *see also* Dkt. No. 118 at 12, n.9. Yet, as before, nowhere does Plaintiff dispute that, under decade-plus-old law in this Circuit and the Ninth Circuit, online service providers that operate a system that hosts user content and expeditiously remove allegedly infringing content are not liable for infringement. *See* Dkt. No. 138 ("Order") at 8-19; *see also Steinmetz*, 629 F. Supp. 3d at 81 ("courts have repeatedly held that defendants offering similar file-sharing based services qualify as [DMCA] 'service providers'") (collecting cases).

As must have been clear to Plaintiff, the point of Shutterstock's citation of *Steinmetz* is to show how ***exceptionally*** unreasonable Plaintiff's claims are in this case. Whereas none of the law justified the lawsuit before the *Steinmetz* decision, that ruling walked Plaintiff and his counsel—step-by-step—through how and why Plaintiff's positions were unfounded. *See id.* at 80-85. Judge Hellerstein found the challenge to Shutterstock's safe harbor eligibility so meritless that he even determined that two summary judgment briefs from each side was enough, awarded costs to Shutterstock, and invited Shutterstock to submit documentation of its attorneys' fees, which might have been granted had the appeal and fees motion not been withdrawn in resolution. *See Steinmetz v. Shutterstock, Inc.*, No. 21 Civ. 7100 (AKH), Dkt. Nos. 81, 96, 101 (S.D.N.Y.).

Plaintiff's election to lock onto Shutterstock's point and criticize the *Steinmetz* decision as non-binding misses the forest for a single tree. This is not a motion for reconsideration, and citing the same off-point cases confirms that Plaintiff either is willfully blind to black-letter law or believes that the Court will be duped by his complex rehashing of the merits. Shutterstock already

3

explained why these cases are off-point (*see* Dkt. No. 118 at 7-8, 12, 18, 32), and the Court agreed.

### B.     Plaintiff Does Not Dispute Shutterstock's Complete Success on the Merits.

Plaintiff does not dispute Shutterstock's complete success on the merits, which strongly favors an award of fees. *See Tuff 'N' Rumble Mgmt., Inc. v. Profile Records, Inc.*, No. 95 Civ. 0246 (SHS), 1997 WL 470114, at *1 (S.D.N.Y. Aug. 15, 1997). Instead, Plaintiff contends he too was successful, "at least partially," because (1) he "effectively obtained the injunctive relief he sought[;]" and (2) "liability would [have been] found barring [the DMCA]." Opp. at 12-13. Both contentions are false, further highlighting the objective unreasonableness of Plaintiff's claims.[2]

*First*, Plaintiff did ***not*** obtain any injunctive relief in this case. He lost. In fact, Plaintiff had no basis for an injunction, because Shutterstock had ***already removed*** all of the Images from its platform (and terminated the Contributors' accounts) before Plaintiff identified them for the first time in his pleadings. *See* Mot. at 3-4; *cf.* Opp. at 2 (misrepresenting that "this suit directly resulted in [] Shutterstock ceasing" use). And even if the Images had not been removed (as they were), Plaintiff could have and should have obtained the same relief by sending a DMCA takedown notice to Shutterstock, but chose not to do so (except as to the Noticed Image, which Shutterstock promptly removed). Dkt. No. 126 ¶¶ 40, 51. This calculated strategy runs counter to the DMCA.

*Second*, Plaintiff's assertion that he "adduced [ ] evidence [of certain facts]"[3] establishing he "could succeed on his copyright infringement claim but for the application of the DMCA" (Opp.

---

[2] The case Plaintiff cites is distinguishable and in no way supports his argument that he "did not act frivolously in filing this suit." Opp. at 12 (citing *Romanowicz v. Alister & Paine, Inc.*, No. 17 Civ. 8937 (PAE) (KHP), 2018 WL 4762980 (S.D.N.Y. Aug. 3, 2018), *report and recommendation adopted*, 2018 WL 4759768 (S.D.N.Y. Oct. 1, 2018)). The defendant in *Romanowicz* was not an online service provider entitled to the DMCA safe harbor. *Id.* at *6.

[3] Plaintiff did ***not*** establish these facts. *See, e.g.*, Opp. at 7 (claiming to have "adduced [ ] evidence" that licenses are "entered into directly between Shutterstock and its customers"); *contra* Dkt. No. 119 ¶ 23 (disputing that "Shutterstock 'contracts directly' with customers" and providing evidence that Shutterstock is merely an "intermediary in the licensing of contributor-submitted images").

at 7) is meritless and pointless. In fact, Plaintiff failed to establish essential elements of such claim. *See* Dkt. No. 118 at 21-24. Regardless, pursuing a claim for which liability may exist "***but for***" a decades-old, plainly-applicable affirmative defense is ***not*** a "success;" it is objectively unreasonable, particularly where certain points are presumed for the motion. Tellingly, Plaintiff does not claim any semblance of success (or even try to defend) his Section 1202 claim.

Plaintiff's efforts (Opp. at 10-11) to distinguish Shutterstock's cited cases awarding fees to defendants who successfully defended against copyright claims (Mot. at 8, n.7) do not pass the straight-face test. Indeed, the single-spaced recitation of cases expressly debunks Plaintiff's own theory (at 7) that fees cannot be awarded when the defendant prevails on a defense: the list includes scenarios where the defendant did prevail on defenses such as the statute of limitations and fair use. *See* Opp. at 10-11. In the aggregate, all Plaintiff achieves is showing there are limitless fact patterns that can lead to a fee award in service of the interests of the Copyright Act.

### C. Attorneys' Fees Should Be Awarded to Encourage Copyright Owners to Enforce Their Rights Pursuant to the DMCA, Not by Litigation.

As set forth in Shutterstock's Motion (at 11-13), fees should be awarded not only to compensate Shutterstock for once again vindicating its meritorious defense, but also to deter Plaintiff (and others) from similarly pursuing meritless claims in disregard of the DMCA. To be sure, Shutterstock has ***no interest*** in "deter[ring] [Plaintiff] and other artists from enforcing their copyrights" (Opp. at 16),[4] and awarding fees here would do nothing of the sort. To the contrary, such an award would encourage copyright owners to enforce their rights against online service providers in the way that Congress intended—that is, through the DMCA's notice-and-takedown provision, and not through litigation. *See* S. Rep. No. 105–190, at 20 (1998) (DMCA is intended

---

[4] It is well-established that Shutterstock has every incentive to keep infringing content off its platform and takes steps beyond what the law requires to avoid this. *See* Dkt. No. 96 ¶¶ 10-11, 30.

to create "strong incentives for service providers and copyright owners to cooperate to detect and deal with copyright infringements" through notice-and-takedown); H.R. Rep. No. 105–551, pt. 2, at 49-50 (1998). As Plaintiff's continued pursuit of this lawsuit after the *Steinmetz* decision makes clear, without any financial consequences, Plaintiff (and others) will not be discouraged from similarly hiring contingency-fee lawyers to misuse the court system in effort to obtain payments on claims that could and should have been resolved with a DMCA takedown notice.

Plaintiff points to the "relative finances of the parties," but this warrants no consideration because he "submitted **no evidence** at all as to his [own] financial circumstances." *Kanongataa v. Am. Broad. Cos., Inc.*, No. 16 Civ. 7382 (LAK), 2017 WL 4776981, at *2 (S.D.N.Y. Oct. 4, 2017) (emphasis added) (unsworn statement of counsel insufficient; full fees awarded). In any event, the purported "little guy"[5] should not be given carte blanche to pursue meritless claims against anyone at substantial cost, regardless of the purported reasonableness of the claim. *Cf. Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 209 (2016) (fees may be awarded to deter "overaggressive assertions of copyright claims, [ ] even if the losing position was reasonable") (citation omitted).

### D. Plaintiff Was Improperly Motivated by the Prospect Of Windfall Statutory Damages and Settlement, Not by Vindication of Legitimate Copyright Rights.

As set forth in Shutterstock's Motion (at 14-16), the record establishes that Plaintiff's motivation in bringing and perpetuating this lawsuit was not a bona fide desire to recover the relief he requested, but to obtain an unwarranted financial windfall from a perceived deep-pocketed defendant. Plaintiff does not deny that he sought nearly ***$60 million*** in damages for Images that

---

[5] Plaintiff describes himself as an "independent artist" who gives away his works in the interest of "brand building." Opp. at 15, 17. That said, the fact that Plaintiff's "livelihood" from his photographs (*id.* at 2) (following termination of his teaching job) is nearly entirely based on litigation settlements suggests he is capable of paying the fees that he forced Shutterstock to incur. *See* Declaration of Eleanor M. Lackman dated Nov. 30, 2023 ("Lackman Reply Decl."), ¶ 2, Ex. A at 32:22-35:8. It is further reason for holding the Doniger Firm jointly and severally liable.

he never licensed and for which Shutterstock generated only $2,131.60 in revenue.[6] He claims that he was "properly motivated to protect his work" (Opp. at 13), but the facts show he was motivated *not* to do so. Indeed, in this calculated action, Plaintiff admitted that he: (1) sent *one* takedown notice identifying *one* of the Images (Dkt. No. 126 ¶¶ 40, 51); (2) never sent takedown notices to the third-party websites that allegedly displayed his Images (*id.* ¶ 76); and (3) offers his images for free, unlimited downloads via the third-party website Flickr (Dkt. No. 122 ¶ 85).[7] Plaintiff's claim that he pursued this case to change the law for the benefit of other photographers fares no better. Not only is this an improper use of the court system, but Plaintiff fails to realize that judgment in his favor would injure the millions of photographers and artists who have made over *$1 billion* in royalties from licensing legitimate works on Shutterstock's platform. This is the sort of thriving ecosystem that the Copyright Act encourages and why the DMCA exists.

## II. THE DONIGER FIRM SHOULD BE SANCTIONED AND HELD JOINTLY AND SEVERALLY LIABLE

In Plaintiff's opposition papers, the truth comes out: all of these cases against Shutterstock that the Doniger Firm has pursued are driven by a desire for contingency-fee revenues via erasure of the notice-and-takedown provisions from the Copyright Act. Mot. at 3, n.3. Not only does the Doniger Firm fail to recognize that policy arguments are not for the courts, it obscures that there was nothing stopping Plaintiff—or any of the other parties—from sending DMCA notices. The papers do not dispute that Plaintiff (through the Doniger Firm) has sued licensees of the Images as

---

[6] Plaintiff claims (at 7) that he offered to settle for "only a fraction" of the $150,000 in statutory damages per work that the complaint demanded, but he never stood to recover anything close. He never pleaded any facts suggesting willfulness on Shutterstock's part. *Cf.* 17 U.S.C. § 504(c).

[7] Plaintiff ineffectively deflects his practice of putting hundreds of thousands of landscape photographs on social media sharing sites without standard protections, by saying that he registered his works with the Copyright Office. This is akin to saying that a nice car that is placed in a high-risk neighborhood, with the doors unlocked and the keys visibly placed on the front seat, is protected from theft because the car is registered with the DMV.

well, *see id.*, which means that the thrust of their arguments is that not only should the DMCA safe harbor be thrown out, but they (and counsel) should get ***double recovery***. This is plenty to show that the Doniger Firm is seeking to take their high-volume sue-and-settle practice to a new level.

The firm perfunctorily defends its specifically-identified improprieties (*see* Opp. at 17-20) on various grounds, none of which is availing nor diminishes its thirst for profit. For instance, counsel shrugs off the demand for willfulness damages, when the Doniger Firm evidently discouraged its client from sending DMCA notices to Shutterstock. Counsel makes no defense of its Section 1202 claim other than to point out that no other firm had the gall to bring a meritless claim with no hope of proving the double-scienter test. As noted above, counsel also falsely claims there is a "split of authority" as to whether the DMCA applies to an online service provider that connects sellers and buyers of works, advocates for the elimination of the DMCA notice requirement, parrots its losing positions, and leans into the discretion for fees when the Doniger Firm has made strident arguments to the contrary. *See, e.g.*, *Star Fabrics, Inc. v. Millenium Clothing, Inc.*, No. 14 Civ. 826 (SVW) (SS), 2015 WL 12656947, at *8 (C.D. Cal. Mar. 31, 2015); *Sygall v. Pitsicalis*, 18 Civ. 2730 (VSB) (SN), 2022 WL 3044773, at *5-6 (S.D.N.Y. May 16, 2022), *report and recommendation adopted*, 2022 WL 3044574 (S.D.N.Y. Aug. 2, 2022).[8]

Even while on the ropes, the papers assert already-refuted and demonstrably contorted facts, including claiming that identified Images were not disabled; casting Shutterstock's notice to users of a claim as some type of admission; claiming he made more than one settlement offer when he only made one for $3,180,000, after he was made aware of the $2,131.60 in revenues; asserting that Plaintiff "won" on facts that were ***conceded*** for purposes of Shutterstock's summary judgment

---

[8] The Doniger Firm's failure to follow simple rules is characteristic of its overreach: whereas Shutterstock limited its moving brief to 22 pages to accommodate its short single-spaced section, Plaintiff's Opposition contains extensive single-spacing (Opp. at 8-11) and is a full 25 pages.

motion; and obscuring procedural history that would be apparent to Judge Woods, including that Plaintiff was ordered to produce an updated privilege log as part of the referenced sanctions motion and refused to agree to a simple way to address the Section 1202 claim in a bifurcated motion. *See* Opp. at 14, 22, n.12; Lackman Reply Decl. ¶¶ 3-5, 6, 8. These statements are not be isolated errors; rather, they form part of an overall pattern of disregard for not just the law, but Rule 11.

### III. SHUTTERSTOCK SHOULD BE AWARDED THE FULL AMOUNT REQUESTED

Plaintiff repeats arguments that Shutterstock already has refuted in the *Steinmetz* case, including that every person who has worked on a case has to submit a separate affidavit—a case that Plaintiff's own authority belies. *See* Opp. at 20 (citing *Johnson v. Kay*, 742 F. Supp. 822, 837 (S.D.N.Y. 1990) (holding "contemporaneous time records" are alone sufficient). He claims that information such as the work and biographies of the team are not identified, when they plainly are. *See* Dkt. No. 143 (cited herein as "Lackman Mot. Decl.") ¶¶ 3-4, 6-11 & Ex. A.

Plaintiff complains that the number of hours (not the rate) is too high, even though they fall well within the range of what others have reasonably billed through summary judgment. *See* Mot. at 20. The fact that the number of hours is higher than those sought in *Steinmetz* (Opp. at 22) is irrelevant. It is well-settled that "attorney's fees are dependent on the unique facts of each case," *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) (citation omitted), and there are multiple reasons why this case required more work (Lackman Reply Decl. ¶¶ 7-8, including, for example, the fact that this case involved hundreds of Images which were uploaded to Shutterstock's platform by three different contributors over roughly a four-year period and removed at various points for reasons unrelated to Plaintiff. *See* Dkt. No. 96 ¶¶ 37, 42-43, 48. Plaintiff also complains about the hours spent on a sanctions motion—which Judge Woods asked Shutterstock to make (Dkt. No. 59)—and falsely says that such motion "failed" (Opp. at 22). While the Doniger Firm escaped

monetary sanctions, Plaintiff was ordered to prepare a revised privilege log. *See* Dkt. No. 80. Plaintiff nitpicks that a partner reviewed an associate's work and that there were multiple people on the team, but these arguments have been rejected repeatedly—not to mention that counsel's improper behavior required extra resources. *See Johnson v. Univ. College of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983); *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 55 (S.D.N.Y. 2015). Tellingly, Plaintiff does not point to any specific time records indicating inefficiencies. *See* Lackman Mot. Decl. ¶ 16 & Ex. A.

Plaintiff requests a reduction of the requested fees due to the parties' "relative financial strength," but as noted *supra*, he has waived this argument.[9] This is not "the rare case[] in which it is appropriate to [deviate from] the presumptively reasonable fee," *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, No. 99 Civ. 10175 (KMW), 2022 WL 1026577, at *5 (S.D.N.Y. Apr. 6, 2022), especially given Shutterstock obtained such excellent results. *See* Mot. at 21 (citing cases). Nor is it appropriate to reduce the requested costs for deposition materials and related services, which Shutterstock reasonably and necessarily purchased for use in this case. *See* Lackman Mot. Decl. ¶ 18; Dkt. No. 145 ¶¶ 4-6.[10]

## CONCLUSION

Accordingly, Shutterstock respectfully requests that the Court award attorneys' fees and costs in the full amount requested, plus the fees incurred for this Motion. *See* Mot. at 21 n.11.

---

[9] Plaintiff's cases do not support a fee reduction here. *See* Opp. at 24 (citing *Barclays Cap. Inc. v. Theflyonthewall.com*, No. 06 Civ. 4908 (DLC), 2010 WL 2640095, at *6 (S.D.N.Y. June 30, 2010) (significant evidence of its financial circumstances); *Williams v. Crichton*, No. 93 Civ. 6829 (LMM), 1995 WL 449068, at *1, n.1 (S.D.N.Y. July 26, 1995) (plaintiff submitted affidavit).

[10] The case that Plaintiff cites does not support a reduction of costs where, as here, the costs were reasonably and necessarily incurred. *See* Opp. at 24 (citing *Farberware Licensing Co. LLC v. Meyer Mktg. Co.*, No. 09 Civ. 2570 (HB), 2009 WL 5173787, at **5-6 (S.D.N.Y. Dec. 30, 2009), *aff'd*, 428 F. App'x 97 (2d Cir. 2011) (deducting unnecessary costs and awarding $30,994.54 for "costs associated with depositions")).

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: New York, New York<br>November 30, 2023 | MITCHELL SILBERBERG & KNUPP LLP<br><br>By: /s/ Eleanor M. Lackman<br>Eleanor M. Lackman (eml@msk.com)<br>Marissa B. Lewis (mbl@msk.com)<br>Elaine Nguyen (eln@msk.com)<br>437 Madison Avenue, 25th Floor<br>New York, New York 10022<br>Tel.: (212) 509-3900<br>Fax: (212) 509-7239<br><br>*Attorneys for Defendant Shutterstock, Inc.* |