UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELLIOT MCGUCKEN,<br><br>                Plaintiff,<br><br>-against-<br><br>SHUTTERSTOCK, INC.,<br><br>                Defendant. | Case No. 1:22-cv-00905 (JHR) |

### REPLY DECLARATION OF ELEANOR M. LACKMAN

ELEANOR M. LACKMAN declares as follows:

1. I am a partner at the law firm of Mitchell Silberberg & Knupp LLP ("MSK"), and lead counsel for defendant Shutterstock, Inc. ("Shutterstock") in the above-captioned matter. I submit this reply declaration in further support of Shutterstock's Motion for Attorneys' Fees and Sanctions.

2. Attached hereto as **Exhibit A** is an excerpt from the publicly-filed transcript of the deposition of plaintiff Elliot McGucken ("Plaintiff") taken on March 15, 2021 in another copyright infringement case. *See Elliot McGucken v. Newsweek, LLC*, No. 19 Civ. 09617 (KPF), Dkt. No. 67-1 (S.D.N.Y.). During the deposition, Plaintiff testified that his income from photography is based, at least in part, on his attorneys' copyright enforcement efforts and/or litigation settlements—which he "can't really differentiate" from his licensing income. *See id.* at 32:22-35:8.

3. Plaintiff made only *one* offer to settle this case, and it was for an amount that could not be squared with the facts of this case. In particular, on July 19, 2022, Plaintiff demanded *over $3 million* (*i.e.*, $3,180,000, which comes out to roughly $9,500 per Image at issue) to settle the

case, despite knowing that the Images generated very little revenue on Shutterstock's platform (*i.e.*, $2,131.60 in total, which was split between Shutterstock and the contributors), and that Plaintiff had no evidence of ever having licensed any of the Images himself.

4. Additionally, as evidenced in the Opposition, counsel for Plaintiff still maintains the position that the identified images at issue in this action were not disabled when they already had been. *See* Opp. at 14. Troublingly, the papers do so despite my making counsel aware of this directly, well prior to addressing it on summary judgment. On or about May 17, 2022, I sent a letter to counsel for Plaintiff, requesting that they address certain misrepresentations and misleading statements. *See* **Exhibit B**. For example, counsel for Plaintiff wrongly implied that Shutterstock deliberately failed to comply with the DMCA, had not taken down the images prior to the filing of the First Amended Complaint, and that notice was provided for the additional images when they were not. *See id.* Counsel for Plaintiff unsurprisingly ignored my letter.

5. Counsel for Plaintiff has made it a pattern and practice to play fast and loose with his words and representations. For instance, counsel for Plaintiff points the finger at Shutterstock, accusing Shutterstock of not mitigating attorneys' fees because "Shutterstock's counsel refused and demanded that all issues be aggregately briefed." Opp. at 22, n.12. Not so. Shutterstock merely disagreed with waiving the ability to move on the Section 1202 claim on summary judgment (as counsel for Plaintiff seemed to want, understandably but improperly so). Shutterstock nonetheless offered simple ways to effectively address the Section 1202 claim in a bifurcated summary judgment motion.

6. Counsel for Plaintiff also has a habit of omitting information when it does not serve him. For example, while counsel for Plaintiff appears to claim he avoided sanctions scot free and that Judge Woods denied Shutterstock's motions for sanctions relating to Plaintiff's privilege log

"in its entirety" (Opp. at 20) he fails to mention that in that same motion (which Judge Woods invited Shutterstock to file *sua sponte* during a court hearing on the dispute), Plaintiff's privilege log was deemed insufficient and he was ordered to produce an updated privilege log that complied with the rules. *See* Dkt. No. 80. Counsel was only able to avoid monetary sanctions based upon the coy claim that counsel for the parties supposedly agreed to produce privilege logs after Plaintiff produced all documents (which conveniently occurred after the close of discovery, and Plaintiff unsurprisingly only produced his initial privilege log after the Court required its production, which was *still* deficient), when Plaintiff and Shutterstock had understood that privilege logs would be exchanged upon a date certain following a forthcoming production and supplemented thereafter, as evidenced by Shutterstock's production of its log on that date.

7. As Plaintiff points out in his Opposition, the number of hours requested by Shutterstock in this case exceeds those requested in the *Steinmetz* case. As stated in Shutterstock's reply brief, this is irrelevant. In any event, it is easy to see why Shutterstock's counsel spent more time on this case as compared to the *Steinmetz* case, and as I noted previously, I reviewed and reduced time where I thought—based on my dozen-plus years as a law firm partner—reductions were merited. As an initial matter, the facts of this case are more complicated. While the basic facts regarding Shutterstock's eligibility for the DMCA safe harbor are the same in both cases, this case involved hundreds of images (and discovery involving those hundreds of images), which were uploaded to Shutterstock's platforms by three different contributors over roughly a four-year period. Some of the images were licensed, and all of them were expeditiously removed by Shutterstock at various points over roughly a three-year period for various reasons unrelated to Plaintiff (except for the one Noticed Image, which Shutterstock expeditiously removed in response to Plaintiff's takedown notice). (In contrast, the *Steinmetz* case involved one image, which was

uploaded by a single contributor and expeditiously removed by Shutterstock in response to Plaintiff's takedown notice before any licenses had been issued.) Had Plaintiff agreed that the failure to submit DMCA notices was fatal to his claims, the cost might have been lower, but he would not, necessitating some bandwidth to be spent on each image. Plaintiff is quick to point out that five paragraphs of Shutterstock's 35-page brief overlap with its summary judgment motion in *Steinmetz* (*see* Declaration of Scott Alan Burroughs, dated November 15, 2023, ¶ 7 & Ex. 2), but this only underscores that the cases are substantially different, even if equally doomed on legally analogous grounds (indeed, in a case where nearly all of the images, unlike in *Steinmetz*, were not even subject to so much as notice before suit), and pales in comparison to the cookie-cutter briefing submitted by Plaintiff's counsel. Indeed, one of the overlapping paragraphs in Shutterstock's briefing is the legal standard on a motion for summary judgment, which applies in any case. Furthermore, unlike in *Steinmetz*, Shutterstock's counsel was required in this case to prepare briefing on the parties' motions to exclude expert witnesses and a reply brief in further support of Shutterstock's summary judgment motion. These activities significantly increased the number of hours expended in this case.

8. The number of hours expended by Shutterstock's counsel in this case also is due, in large part, to the conduct of Plaintiff and his counsel over the course of this litigation. For example, Plaintiff propounded overly broad discovery demands that led to multiple disputes and meet and confers. Plaintiff also served Rule 30(b)(6) deposition topics (which were identical to those in *Steinmetz*), but maintained unreasonable positions in bad faith while on one occasion enlisting the partner on the case to sandbag one of my colleagues with incivility and misrepresentations; this required a re-do of the meet and confer with my supervision and my insistence that the conference be audio-recorded to keep Mr. Burroughs in line. These various

shenanigans led to detailed discovery motion practice that involved hearings before Judge Woods, whereas there were no hearings and extremely limited discovery procedures before Judge Hellerstein in the *Steinmetz* matter. Plaintiff also sought (and Shutterstock had to defend against) the production of voluminous Shutterstock documents from another action (which led to a dispute and the Court ultimately denied), and sought to depose former in-house counsel for Shutterstock. Plaintiff's counsel also failed to provide a privilege log or redaction log (even though it made redactions in produced documents), which forced Shutterstock to not only repeatedly demand the logs, but also seek judicial intervention.[1]

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
November 30, 2023

_____
ELEANOR M. LACKMAN

---

[1] While The Doniger Firm escaped monetary sanctions with its eleventh hour argument that the parties supposedly agreed to produce privilege logs after the complete production of documents (which conveniently occurred after the close of discovery), not once in the *seven times* Shutterstock demanded the logs, did counsel for Plaintiff reference that supposed "agreement" or state when he intended to produce the logs.