# Exhibit A

```
1              UNITED STATES DISTRICT COURT FOR THE

2                  SOUTHERN DISTRICT OF NEW YORK

3

4      ELLIOT MCGUCKEN,

5                       Plaintiff,

6           vs.                              Case No.
                                             1:19-cv-09617 (KPF)
7      NEWSWEEK, LLC,

8                       Defendant.
       _____
9

10

11

12      CONFIDENTIAL DEPOSITION OF ELLIOT McGUCKEN, Ph.D.

13                   APPEARING REMOTELY FROM

14                    VENICE, CALIFORNIA

15

16                     March 15, 2021

                         9:35 a.m.
17

18

19

20

21

22     REPORTED BY:

23     Sheree L. Spencer

24     CSR No. 11073

25     APPEARING REMOTELY FROM LOS ANGELES COUNTY, CALIFORNIA
```

```
 1   REMOTE APPEARANCES:

 2

 3        For Plaintiff:

 4             DONIGER / BURROUGHS
               By:  STEPHEN DONIGER
 5                  SCOTT ALAN BURROUGHS
                    LAURA M. ZAHARIA
 6                  Attorneys at Law
               231 Norman Avenue, Suite 413
 7             Brooklyn, New York  11222
               stephen@donigerlawfirm.com
 8             scott@donigerlawfirm.com
               lzaharia@donigerlawfirm.com

 9

10        For Newsweek Digital, LLC:

11             COWAN, DeBAETS, ABRAHAMS & SHEPPARD LLP
               By:  NANCY E. WOLFF
12                  SARA GATES
                    Attorneys at Law
13             41 Madison Avenue, 38th Floor
               New York, New York  10010
14             212.974.7474
               212.974.8474  Fax
15             nwolff@cdas.com
               sgates@cdas.com

16

17

18

19

20

21

22

23

24

25
```

1 was the only one to get those lake shots, so and there's
2 like, a lot of prestige in that throughout community and
3 things like that. So that's what you're all aiming for
4 and building that up over time.
5     Q.   So is there -- do you ever work with a company
6 or a publication regularly?
7     A.   No, I don't.
8     Q.   So would you say that photography is your
9 full-time job?
10    A.   Yes.
11    Q.   Do you list photographer as your profession on
12 a tax return?
13    A.   Yes.  "Fine art photographer."
14    Q.   And regarding enforcement of your copyright,
15 how much time do you spend doing that?
16    A.   Not a whole lot.  I mean, in the past month,
17 I've probably done it not at all.  I've been out in
18 Utah, Yosemite, and Yellowstone.  A week ago today I was
19 photographing wolves at Yellowstone.  So, yeah, I
20 devoted myself to being on the road just pushing limits
21 and getting -- getting really great shots.
22    Q.   So from enforcement, do you receive any profit
23 or incomes from -- from that?
24         MS. ZAHARIA:  I'm going to object to the extent
25 this calls for attorney-client communications.

Case 1:22-cv-00915-KJH Document 67-1 Filed 06/21/23 Page 5 of 9
Case 1:22-cv-00915-JHR Document 61-12 Filed 11/30/23 Page 34 of 79
Elliot McGucken, Ph.D.
March 15, 2021                                                    33

```
 1   BY MS. GATES:
 2      Q.   You can answer to the extent it doesn't get
 3   into any privileged communication.
 4           THE WITNESS:  Yes.  In various forms, yes.
 5   BY MS. GATES:
 6      Q.   When you refer to "various forms," what do you
 7   mean?
 8      A.   Well, relying on the expertise of attorneys,
 9   sometimes it's license, sometimes it's taken down,
10   sometimes it's used, sometimes they pay.  So basically
11   I'm an expert in photography, but I'm not an expert in
12   copyright infringement, so I leave that up to my
13   attorneys pretty much a hundred percent.
14      Q.   So you rely on your attorneys to enforce your
15   copyright; is that correct?
16      A.   Yes.
17      Q.   And would you say that you generate any income
18   from your attorneys' enforcement efforts?
19      A.   Yes.
20      Q.   And about how much income a month do you
21   generate from enforcement?
22      A.   Well, I consider it the same as the licensing.
23   So basically somewhere -- I mean, in the ballpark
24   figures -- I mean, it varies so much from case to case,
25   from use to use.  It's so hard to put, like, a monthly
```

Case 1:22-cv-00905-JHR Document 67-12 Filed 06/21/23 Page 6 of 9
Case 1:22-cv-00905-KPF Document 75-1 Filed 11/30/23 Page 35 of 79
Elliot McGucken, Ph.D.
March 15, 2021                                                    34

```
 1    estimate.
 2        Q.   Can you estimate what a good month would be for
 3    receiving income from enforcement?
 4        A.   5-, 6-, $7,000.
 5        Q.   So is that the same number you referred to
 6    earlier regarding good months for licensing?
 7        A.   Yeah.  Because I -- well, it's the same -- it's
 8    a similar thing as to licensing, because some of it is
 9    more akin to licensing, some of is more akin to -- I
10    mean, a lot of it is confidential, so all the details
11    and nuts and bolts.  There are many varied different
12    ways that it works, so those numbers are kind of like
13    part of the same pie.  So, yeah, that's -- that's
14    around -- I mean, it's very differentiated depending so
15    much on who's using it, how they -- you know, how they
16    used it and all that.  But yeah, a hundred percent I
17    rely on the expertise of my attorneys.
18        Q.   And when you referred to 5-, 6-, 7,000 for
19    licensing and enforcement, is that the same number for
20    each where it would be 5-, 6-, 7,000 for licensing and
21    enforcement, or are you considering those -- those two
22    concepts separately?
23        A.   I'm combining those two concepts.  I can't
24    really differentiate them because the way that all the
25    deals are worked out, it's all this varies, like,
```

```
 1   whether some combination of licensing enforcement or
 2   licensing and enforcement.  So I don't fully understand
 3   all the details all the time, but I rely on my
 4   attorneys.
 5        Q.   So in a good month when you say you probably
 6   receive 5-, 6-, $7,000, that's from both licensing and
 7   enforcement together?
 8        A.   Yes.
 9        Q.   Now, aside from your attorneys, who are
10   representing you here today, do you work with any other
11   attorneys?
12        A.   Yes.
13        Q.   Could you provide the names of those attorneys?
14        A.   Yes.  I've worked with Higbee & Associates and
15   Steve Vondran.
16        Q.   And do your attorneys represent you on a
17   contingency basis?
18        A.   Yes.
19        Q.   Do you receive any income from litigation
20   settlements?
21             MS. ZAHARIA:  Objection.
22   BY MS. GATES:
23        Q.   You can answer.
24        A.   Yes.
25        Q.   About how much income a month, on a good month,
```

```
 1   do you receive from litigation, a settlement?
 2       A.   Oh, I put that all as part of the copyright
 3   enforcement and licensing.
 4       Q.   So about 5-, 6-, or $7,000 on a good month,
 5   that is attributed to licensing enforcement and
 6   litigation income?
 7       A.   Yes.
 8            MS. ZAHARIA:  Counsel, I'm going to ask to take
 9   a quick break.
10            Before we go off the record, we want to
11   designate this transcript as "confidential."
12            MS. GATES:  We can do the temporary designation
13   and then, you know, go through it portion by portion
14   within the 30 days as allotted by the protective order.
15            MS. ZAHARIA:  That's fine.
16            MS. GATES:  How many -- how much time do you
17   need?
18            MS. ZAHARIA:  About five minutes.
19            MS. GATES:  Okay.
20            (Recess)
21            MS. GATES:  Okay.  We are back on the record
22   now.
23   BY MS. GATES:
24       Q.   I'll remind you that you're still under oath.
25            Did anyone else come back into the room with
```

```
1    UNITED STATES DISTRICT COURT              )
                                                )
2    FOR THE CENTRAL DISTRICT OF CALIFORNIA    )

3

4              I, SHEREE L. SPENCER, CSR No. 11073, Certified

5    Shorthand Reporter, certify:

6              That the foregoing proceedings were taken

7    before me at the time and place therein set forth, at

8    which time the witness was put under oath by me;

9              That the testimony of the witness, the

10   questions propounded, and all objections and statements

11   made at the time of the examination were recorded

12   stenographically by me and were thereafter transcribed;

13             That a review of the transcript by the deponent

14   was requested;

15             That the foregoing is a true and correct

16   transcript of my shorthand notes so taken.

17             I further certify that I am not a relative or

18   employee of any attorney of the parties, nor financially

19   interested in the action.

20             I declare under penalty of perjury under the

21   laws of California that the foregoing is true and

22   correct.

23             Dated this 1st day of April, 2021.

24   _____
     SHEREE L. SPENCER
25   CSR No. 11073
```